ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
DEC 29 2006
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE AK-CHIN INDIAN COMMUNITY,<br>*Plaintiff,*<br>v.<br>THE UNITED STATES,<br>*Defendant.* | No. 06-932 L |

**COMPLAINT FOR DAMAGES FOR BREACH OF TRUST OBLIGATIONS**

I. GENERAL NATURE OF THE ACTION

1. This action is an action for money damages against the United States, brought to redress gross breaches of trust by the United States, acting by and through Dirk Kempthorne, Secretary of the Interior ("Kempthorne"), Ross Swimmer, Special Trustee for American Indians ("Swimmer"), and Henry M. Paulson, Secretary of the Treasury ("Paulson"), and their predecessors in office and subordinates, as trustees and trustee-delegates of land, mineral resources, and other assets held by them for the benefit of the Ak-Chin Indian Community. As set forth more fully below, this case arises out of Defendant's continuing material breaches of statutory, regulatory, and fiduciary duties owed to the Ak-Chin Indian Community and the Ak-Chin Indian Community seeks damages for Defendant's mismanagement of the Ak-Chin Indian Community's trust property.

II. THE PARTIES

2. Plaintiff Ak-Chin Indian Community is a federally recognized Indian tribe with approximately 700 members, located south of Phoenix, Arizona. It is the beneficiary of real property held by the United States as trustee.

3. Defendant United States acts as trustee for certain tribal lands, monies, and other assets belonging to the Ak-Chin Indian Community. The United States has delegated its trust responsibilities to the Secretary of the Interior and the Secretary of the Treasury.

4. Mr. Kempthorne is the Secretary of the Interior, and chief officer of the Department of the Interior. As such, Secretary Kempthorne is charged by law with, *inter alia*, carrying out the duties and responsibilities of the United States as trustee for the plaintiff.

5. Mr. Swimmer is the Special Trustee for American Indians, a sub-cabinet level officer appointed by the President of the United States with the advice and consent of the Senate, who reports directly to the Secretary of the Interior. Some of Mr. Swimmer's duties are delineated in the Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 4041-46 (2000).

6. Mr. Paulson is the Secretary of the Treasury, and as such is the custodian of trust funds. Secretary Paulson is, *inter alia*, responsible for maintaining records in connection with such funds.

## III. JURISDICTION

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1491 and 1505.

8. The United States has waived its sovereign immunity under 28 U.S.C. §§ 1491 and 1505. *See United States v. Mitchell*, 463 U.S. 206, 228 (1983) ("*Mitchell II*").

## IV. THE TRUST OBLIGATIONS OF THE UNITED STATES WITH RESPECT TO THE AK-CHIN INDIAN COMMUNITY

9. The tribal lands of the Ak-Chin Indian Community were established by Executive Order of May 28, 1912, by President W. Howard Taft, which allocated 47,600 acres to the Ak-

Chin ("Ak-Chin Reservation"). In 1913, President Taft reduced the size of the Ak-Chin Reservation to 21,840 acres.

10. In 1961, the Ak-Chin Indian Community became an organized and self-governing tribe pursuant to 25 U.S.C. § 476. At all times material to this complaint, the Ak-Chin Indian Community's assets have been under the control and management of the United States.

11. The Ak-Chin Reservation is primarily agricultural, despite its desert location. The Ak-Chin Indian Community's water rights were initially secured by the Act of July 28, 1978, Pub. L. No. 95-328, 92 Stat. 409 (1978) (settling the Ak-Chin Indian Community's water claims against the United States, and providing for an interim supply of water to the Ak-Chin Indian Community pending a more permanent solution installed by the United States). The United States leases land on the Ak-Chin Reservation under the authority of relevant statutes and regulations discussed more fully below.

12. Over the years, the Ak-Chin Reservation has produced valuable natural resources and has been leased to third parties and/or the federal and state governments for rights-of-way, business uses, and other purposes. Commercial entities and business also use the Ak-Chin Reservation, including, but not limited to, a 109 acre industrial park created in 1971, and a proposed 260 acre retail center. The Secretary of Interior has, from time to time, approved the creation of rights-of-way in favor of state or local government entities or private individuals without the prior consent of the Ak-Chin Indian Community, and has approved the transfer of such rights of way without such prior consent and approval.

13. In 1981, the Ak-Chin Indian Community obtained a judgment against the United States for mismanagement of its tribal trust assets prior to 1946. *Am. Indians Residing on the Maricopa-Ak Chin Reservation v. United States*, 667 F.2d 980 (Ct. Cl. 1981). The Ak-Chin

Indian Community was awarded approximately $161,203.49 for damages caused by the United States' mismanagement of tribal assets, including the United States' "failure to render a proper accounting" because of its "failure to keep adequate records." *Id.* at 1005.

14. The Ak-Chin Reservation is held in trust by the United States for the benefit of the Ak-Chin Indian Community, and it is managed by the Department of the Interior.

15. A substantial portion of the funds held by the United States in trust for the Ak-Chin Indian Community is derived from income from tribal lands. Title to the land comprising the Ak-Chin Reservation is held in trust by the United States, with the Ak-Chin Indian Community as beneficial owner of the land and associated natural resources.

16. Income is derived from, *inter alia*, the sale of the natural resources and the conveyance of certain interests in the Ak-Chin Indian Community's tribal trust land, including leases, easements, and rights-of-way. These assets, and the income they produce, form the core of the Ak-Chin Indian Community's tribal trust assets.

17. Because the United States engages in pervasive management and control of the Ak-Chin Indian Community's tribal assets pursuant to federal statutes and regulations, as more fully described below, the government has assumed the fiduciary obligations of a trustee. *Mitchell II*, 463 U.S. at 225. As a trustee, the United States is charged with "'moral obligations of the highest responsibility and trust' . . . and its conduct 'should therefore be judged by the most exacting fiduciary standards.'" *Cobell v. Norton*, 240 F.3d 1081, 1099 (D.C. Cir. 2001) (quoting *Seminole Nation v. United States*, 316 U.S. 286, 296 (1942)) ("*Cobell VI*").

18. The nearly century-long trust relationship between the United States and the Ak-Chin Indian Community, and the resultant fiduciary responsibilities incumbent on the United States, are rooted in and derived from a number of statutes, regulations, and executive orders.

*See, e.g.*, Nonintercourse Act, 25 U.S.C. § 177; Indian Long-Term Leasing Act, 25 U.S.C. § 396; Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a-96g; Indian Mineral Development Act of 1982, 25 U.S.C. §§ 2101 – 08; Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 161a, 162a, 4001-61; 25 U.S.C. § 152; 25 U.S.C. §§ 157-58, 160; 25 U.S.C. §§ 155-55b; 25 U.S.C. §§ 161a, 161b, 162a, 413; 25 U.S.C. §§ 311, 312, 318a, 319, 321, 323-28; 25 U.S.C. § 397; 25 U.S.C. § 398, 398a-98e; 25 U.S.C. § 399; 25 U.S.C. § 415-15d; 31 U.S.C. § 1312(a); 25 C.F.R. pt. 87; 25 C.F.R. pts. 150-51; 25 C.F.R. pt. 162; 25 C.F.R. pt. 166; 25 C.F.R. pt. 169; 25 C.F.R. pt. 211; 25 C.F.R. pt. 216; 30 C.F.R. pt. 206, and 43 C.F.R. 3590.2. The foregoing list is representative only, and does not exhaust the potential sources of fiduciary duties owed to the Ak-Chin Indian Community by the United States, as trustee for the Ak-Chin Indian Community's tribal resources.

19. Among other things, the Indian Trust Fund Management Reform Act of 1994 ("Trust Reform Act") created the Office of the Special Trustee for American Indians and reaffirmed and clarified the United States' preexisting fiduciary duties as derived from the relevant statutes and treaties. *Cobell VI*, 240 F.3d at 1090, 1096. The Trust Reform Act was implemented to "'provide more effective management of, and accountability for the proper discharge of, the Secretary's trust responsibilities,' and [to] ensure proper reform measures are implemented." *Id.* at 1090 (quoting 25 U.S.C. § 4042(b)(1)). It was "a remedial statute designed to ensure more diligent fulfillment of the government's obligations. It recognized and reaffirmed what should be beyond dispute – that the government has longstanding and substantial trust obligations to Indians . . . ." *Id.* at 1098. The Trust Reform Act did not create the United States' fiduciary duties, and it does not, and was not intended to, serve as the sole source of those duties or of the Ak-Chin Indian Community's rights. *Id.* at 1100.

20. The statutes, regulations, and executive orders giving rise to the United States' fiduciary duties provide the "general contours" of those duties, but the details are filled in through reference to general trust law. *Id.* at 1098-99; *Mitchell II*, 463 U.S. at 226. Where Congress has used terms of art in defining the federal government's responsibilities with respect to tribal trust assets, "[c]ourts 'must infer that Congress intended to impose on trustees traditional fiduciary duties unless Congress has unequivocally expressed an intent to the contrary.'" *Cobell VI*, 240 F.3d at 1099 (quoting *NLRB v. Amax Coal Co.*, 453 U.S. 322, 330 (1981)).

21. As trustee of the Ak-Chin Indian Community's tribal trust assets, the Defendant owes, and has owed, since the inception of the tribal trust program, certain traditional fiduciary duties and responsibilities to Indian tribes as trust beneficiaries. The duties Defendant owes to the Ak-Chin Indian Community, include, but are not limited to, the duty to:

a. Properly administer the trust;

b. Administer the trust solely in the interest of the Ak-Chin Indian Community;

c. Keep and render clear and accurate accounts with respect to the administration of the trust, by maintaining adequate books and records with respect to the trust property, including, but not limited to, records of leases and other contractual arrangements giving rise to income from the trust property and records of the investment of tribal trust assets;

d. Furnish complete and accurate information to the Ak-Chin Indian Community as to the nature and amount of trust assets, by performing a complete, accurate, and adequate historical accounting of all the trust property, with such accounting containing sufficient information to enable the Ak-Chin Indian Community to readily ascertain whether the trust has been and is being faithfully carried out;

e. Exercise the "highest responsibility," care, and skill in the administration of the trust;

f. Preserve the trust assets and protect them from loss, theft, or damage;

g. Keep the trust assets of the Ak-Chin Indian Community separate from other property not subject to the trust;

h. Properly collect and deposit the trust funds of the Ak-Chin Indian Community;

i. Make the assets of the trust productive for the benefit of the Ak-Chin Indian Community, by using reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law; and

j. Refrain from self-dealing or otherwise benefiting from management of trust property.

## V. BREACHES OF TRUST BY THE DEFENDANT

22. The United States has consistently and egregiously failed to comply with these and other fiduciary duties incumbent on a trustee, and it continues to violate the Ak-Chin Indian Community's rights as beneficiary of the trust. These breaches of trust include, but are not limited to:

a. Failure to properly administer the trust for the benefit of the Ak-Chin Indian Community;

b. Failure to administer the trust solely in the interest of the Ak-Chin Indian Community;

c. Failure to keep and render clear and accurate accounts with respect to the administration of the trust;

d. Failure to furnish complete and accurate information to the Ak-Chin Indian Community as to the nature and amount of trust assets;

e. Failure to exercise the "highest responsibility," care, and skill in the administration of the trust;

f. Failure to preserve the trust assets and protect them from loss, theft, or damage;

g. Failure to keep the trust assets of the Ak-Chin Indian Community separate from other property not subject to the trust;

h. Failure to properly collect and deposit the trust funds of the Ak-Chin Indian Community;

i. Failure to make the assets of the trust productive for the benefit of the Ak-Chin Indian Community;

j. Failure to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law; and

k. Failure to refrain from self-dealing or otherwise benefiting from management of trust property.

23. By reason of the Defendant's egregious breaches of its fiduciary duties owed to the Ak-Chin Indian Community, the Plaintiff has been damaged in such amounts as may be proven at trial plus interest as allowed by law.

## <u>COUNT I</u>

### Damages Resulting from the United States' Breach of Fiduciary Duty with Respect to the Management of the Ak-Chin Indian Community's Land And Natural Resources.

24. All allegations set forth in paragraphs 1-23 of this Complaint are incorporated by reference as if fully set forth herein.

25. The United States has maintained a comprehensive regulatory framework for the pervasive control over the management of the natural resources, including agricultural uses, on the Ak-Chin Indian Community's land held in trust by Defendant. Likewise, the United States has maintained pervasive control over the management of leases and agreements for interests in land on the Ak-Chin Reservation held in trust by Defendant. This includes, but is not limited to, the negotiation of easements, rights of way, and land and building leases. *See Mitchell II,* 463 U.S. at 223.

26. As trustee, the United States has entered into and approved leases, easements and rights-of-way, and issued leases and permits to third parties for agricultural purposes and the use of natural resources from the Ak-Chin Indian Community's trust property. Compensation for these interests and payments for the use of such resources are to be paid to the United States as trustee for the Ak-Chin Indian Community. Such funds are required to be collected and deposited in the United States Treasury in trust for the benefit of the Ak-Chin Indian Community. The United States may continue to hold funds belonging to the Ak-Chin Indian Community, including funds derived from such leases, easements, rights of way and permits, in trust for the benefit of the Ak-Chin Indian Community.

27. The United States, as trustee, has never provided the Ak-Chin Indian Community a complete and accurate accounting of the revenue the United States collected or was required to collect, by reason of such agreements, leases and permits. Nor has it provided the Ak-Chin Indian Community complete records of such agreements, leases and permits which it is required to maintain as trustee.

28. As trustee, the United States was required to enter into and approve leases, easements and rights-of-way and issue leases and permits for use of the Ak-Chin Indian Community's natural resources, including agricultural resources, for not less than fair market value. However, upon information and belief, Defendant breached its fiduciary duty by failing to negotiate such property interests for fair market value and failing to collect fair and reasonable compensation for the benefit of the Ak-Chin Indian Community. The Ak-Chin Indian Community has been damaged by the failure of Defendant to obtain for the benefit of the Ak-Chin Indian Community fair and reasonable compensation for its land interests and agricultural and other resources.

29. The Ak-Chin Indian Community is entitled to a money damage award against the United States arising from its mismanagement of the Ak-Chin Indian Community's land, agricultural and other resources in an amount to be proven at trial plus interest as allowed by law.

## COUNT II

### Damages Arising from the United States' Breach of Fiduciary Duty with Respect to Deposit and Investment of Trust Funds.

30. All allegations set forth in paragraphs 1 through 29 of this Complaint are incorporated by reference as if fully set forth herein.

31. The United States, as trustee, maintains pervasive control over the management and investment of funds held in trust for the benefit of the Ak-Chin Indian Community, including proceeds from leases, permits, easements and rights of way, and other general tribal funds. The United States, accordingly, has undertaken the highest fiduciary obligations to invest trust funds with the care and skill that a prudent investor would exercise under the circumstances. In addition, it is and has been under an obligation to comply with federal statutes governing the investment of tribal trust assets, *see* 25 U.S.C. §§ 161a, 161b and 162a, applicable regulations,

case law and the common law. *See Osage Tribes of Okla. v. United States,* 72 Fed. Cl. 629, 662 (2006).

32. The United States breached its fiduciary duty to the Ak-Chin Indian Community by holding amounts of trust funds in cash, in excess of liquidity needs. As a result of that breach, the Ak-Chin Indian Community has been damaged by reason of the loss of investment of trust funds at a higher rate of return.

33. The United States breached its fiduciary duty to the Ak-Chin Indian Community by failing to maximize trust income by prudent investment. *Cheyenne-Arapaho Tribes v. United States*, 512 F.2d 1390, 1394 (1975). The United States has, at times relevant herein, invested the Ak-Chin Indian Community's trust funds at a low rate of interest. There were other investment vehicles available as permitted under 25 U.S.C. §§ 161a and 162a, including public-debt obligations of the United States and bonds, notes and other unconditionally guaranteed obligations, paying a higher rate of return. The United States was under a strict fiduciary duty to place trust funds in eligible investments maintaining higher yields. By reason of this breach of fiduciary duty, the Ak-Chin Indian Community has been damaged in an amount representing the difference between what interest the United States paid for such funds and the maximum the funds could have legally and practically earned if properly invested.

34. By reason of the United States' breach of fiduciary duty in its management and investment of trust funds, the Ak-Chin Indian Community is entitled to recover from the United States such damages as may be proven at trial plus interest as allowed by law.

## COUNT III

**Damages Arising from the United States' Breach of Fiduciary Duty with Respect to the Management of Judgment Funds.**

35. All allegations set forth in paragraphs 1 through 34 of this Complaint are incorporated by reference as if fully set forth herein.

36. Judgments obtained against the United States have been held in trust by the United States for the benefit of the Ak-Chin Indian Community. The United States, through statutes and regulations, maintains pervasive control over the management, distribution and investment of those funds. The United States is charged with exercising the highest fiduciary duty in managing these trust assets. *See Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States,* 69 Fed. Cl. 639, 656 (2006).

37. At no time has the United States provided the Ak-Chin Indian Community a complete and accurate accounting of judgment funds held in trust for its benefit.

38. In breach of its fiduciary duty owed to the Ak-Chin Indian Community, the United States has failed to invest, and continues to fail to invest, the principal and earnings of judgment funds held in trust, in a timely manner. In addition, the United States has failed to invest trust funds to obtain the maximum investment returns possible, consistent with its obligations as a fiduciary.

39. These breaches of fiduciary duty owed by the United States to the Ak-Chin Indian Community has caused and continues to cause damage to the Ak-Chin Indian Community in an amount to be proven at trial plus interest as allowed by law.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the Ak-Chin Indian Community, prays the Court as follows:

1. For a determination that the Defendant is liable to the Ak-Chin Indian Community in damages for the injuries and losses caused as a result of Defendant's breaches of fiduciary duty;

2. For a determination of the amount of damages due the Ak-Chin Indian Community, plus interest as allowed by law;

3. That the costs of this action, including reasonable attorneys fees, be awarded to the Ak-Chin Indian Community;

4. For such other and further relief as the Court deems just and appropriate.

This the 29th day of December, 2006.

Respectfully submitted,

Keith Harper
Admitted to Practice in the Court of Federal Claims
Kilpatrick Stockton, LLP
607 14th Street, N.W.
Suite 900
Washington, DC 20005
(202)-508-5800
Fax: (202) 585-0007

Attorney for Plaintiff
Ak-Chin Indian Community