# EXHIBIT A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE AK-CHIN INDIAN COMMUNITY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 06-932L<br>Judge Emily C. Hewitt |

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to RCFC 26 and 33, Plaintiff the Ak-Chin Indian Community ("Ak-Chin"), by its attorneys, hereby responds to Defendant's First Set of Interrogatories as follows:

## I. GENERAL OBJECTIONS

A. Ak-Chin objects to General Instruction No. VI to the extent it seeks to require Ak-Chin to supplement responses to Interrogatories which have not been propounded by Defendant, such as "the identity of and location of persons having knowledge of these matters" and "the identity, subject matter and testimony of experts who may be called as witnesses at trial or otherwise relied upon by plaintiff."

B. Ak-Chin objects to the Interrogatories to the extent they purport to seek information protected by privilege or the attorney work product doctrine.

C. Ak-Chin objects to Interrogatories No. 2 and 6 on the ground that they seek information outside the scope of this Court's May 30, 2007 Order directing Defendant to serve written requests for discovery "of information relevant to the factual dispute

concerning the impact of 28 U.S.C. § 1500 on plaintiff's case." May 30, 2007 Order, at ¶ 2(a). To determine whether Section 1500 applies to this action, this Court must examine whether Ak-Chin, when it "filed in this court, had 'pending in any other court any suit or process against the United States.'" *Breneman v. U.S.*, 57 Fed. C. 571, 575 (2003) (quoting 28 U.S.C. § 1500). Thus, the scope of the factual dispute is a very narrow one -- whether Ak-Chin's action in the United States District Court (styled *Ak-Chin Indian Community v. Dirk Kempthorne, Ross O. Swimmer and Henry M. Paulson*, Case No. 1:06-cv-02245-JR ("Ak-Chin District Court Action")) was "pending" at the time Ak-Chin filed the instant action. Defendant acknowledged as much during the May 30, 2007 Hearing by saying that it would require "fairly limited discovery regarding the timing of the filings in the District Court and in the Court of Federal Claims" and would only seek e-mails and correspondence "of the particular paralegal who was to file the pleadings" through "a request for production" and "a couple limited interrogatories." May 30, 2007 Hearing Transcript ("Hearing Transcript"), at pp. 8-10.

Notwithstanding the Court's May 30, 2007 Order and Defendant's representations regarding the anticipated narrow scope of discovery, Interrogatories No. 2 and 6 request that Ak-Chin describe each and every step it or its attorneys and other legal representatives took in connection with filing the instant action and the Ak-Chin District Court Action. Each and every action performed by Ak-Chin or its attorneys to initiate these actions is not relevant to the narrow issue of whether Ak-Chin's District Court Action was pending at the time Ak-

Chin filed the instant action. Interrogatories No. 2 and 6 thus seek information outside the scope of permissible discovery.

These interrogatories also seek information protected from discovery by the attorney-client privilege and/or fall under the "core" or "opinion" "tier" of attorney work product because they seek information that would reveal the mental impressions, conclusions, opinion or legal theories of the attorneys or other representatives of Ak-Chin concerning this litigation. *See Desert Management v. U.S.*, 76 Fed. Cl. 88, 93 (2007) (citing *In re Cendant Corp. Litig.* 343 F.3d 658, 663 (3d Cir. 2003)). This information is afforded "near absolute protection of discovery" and Ak-Chin is not obligated to disclose it to Defendant. *Id.*

These general objections are expressly incorporated by reference into Ak-Chin's response to each individual interrogatory below.

## II. SPECIFIC RESPONSES

**Interrogatory No 1:** Please state the name, address, telephone number, position and employer of the Person(s) answering these interrogatories, and identify any and all Persons who provided any information used in preparing your responses to [for the purpose of answering] these interrogatories.

**Response:** In answering these interrogatories, Ak-Chin is relying upon information provided to it by Kilpatrick Stockton LLP ("Kilpatrick Stockton"), Ak-Chin's counsel responsible for filing the instant action and the Ak-Chin District Court Action. The following individuals from Kilpatrick Stockton provided information used to prepare the

responses to the interrogatories: Keith M. Harper, Esq., G. William Austin, Esq., David Smith, Esq., Mark Reeves, Esq., Raymond Bennett, Esq., Justin Guilder, Esq., Katherine Bosken, Esq., Alexis Applegate and Sandy Roy. Edward Roybal, Esq. of Strickland & Strickland, 4400 East Broadway, Suite 700, Tucson, AZ 85711 also provided information used to prepare the responses to the interrogatories.

**Interrogatory No 2.** Please describe, in detail, the steps taken by you to file the Complaints in the D.D.C. and the C.F.C. respectively.

**Response:** As explained in more detail above in paragraph C of Ak-Chin's General Objections, Ak-Chin objects to Interrogatory No. 2 on the ground that it is overly broad and seeks information outside the scope of permissible discovery because such information is not relevant to the factual dispute of whether the Ak-Chin District Court Action was pending at the time Ak-Chin filed the instant action. Ak-Chin objects to Interrogatory No. 2 on the additional grounds that it seeks information protected by the attorney-client privilege and the attorney-work product doctrine, including the mental impressions, conclusions, opinion or legal theories of Ak-Chin's attorneys concerning this litigation.

Subject to and without waiving the foregoing objections, Ak-Chin states that it relied upon Kilpatrick Stockton to file the instant action and the District Court Action. Kilpatrick Stockton states that prior to filing the instant action and the Ak-Chin District Court Action, attorneys and support personnel at Kilpatrick Stockton drafted the Complaints and prepared

accompanying materials, including cover sheets, checks to cover the filing costs, a notice of designation for related cases and a summons.

To file the instant action, on December 29, 2006, Alexis Applegate, a paralegal employed by Kilpatrick Stockton, walked to the Court of Federal Claims and handed the clerk the requisite number of copies of the Complaint, as well as a civil cover sheet and a check to cover the accompanying filing fees. Ms. Applegate walked back to the office with a file-stamped copy of the Complaint.

Later that same day, to file the Ak-Chin District Court Action, Ms. Applegate took a cab to the District Court. The clerk at the District Court who handled the filing of the Complaints told Ms. Applegate that she was too busy to process Ms. Applegate's Complaint while Ms. Applegate waited. The clerk instructed Ms. Applegate to leave Ak-Chin's District Court Complaint and accompanying materials with the clerk and told Ms. Applegate that she would call Ms. Applegate to tell her when the clerk was ready for Ms. Applegate to come back to the District Court to complete the filing and retrieve the summons.

Ms. Applegate took a cab back to the office and waited for the clerk to call her. Ms. Applegate does not remember whether the clerk called her or if Ms. Applegate decided on her own to go down to the District Court to check on the Complaint. Ms. Applegate took a cab from the office back to the District Court to complete the filing of the Ak-Chin District Court Action. During this trip to the District Court, Ms. Applegate retrieved the file-stamped copy of the Complaint and other materials, including the summons, from the clerk and

brought those materials and a check to the District Court's cashier. Ms. Applegate submitted a check to the cashier, received a receipt from the District Court's cashier and took a cab back to the office with a file-stamped copy of the Complaint, an executed summons and a receipt.

**Interrogatory No 3.** Please identify the persons employed at Kilpatrick Stockton, L.L.P. that performed the filing of Plaintiff's D.D.C. Complaint.

**Response:** Alexis Applegate.

**Interrogatory No 4.** Please identify the persons employed at Kilpatrick Stockton, L.L.P. that performed the filing of Plaintiff's C.F.C. Complaint.

**Response:** Alexis Applegate.

**Interrogatory No 5.** Did you use, employ, retain, otherwise engage the services of, or compensate any person, third-party contractor, courier service or company that was not an employee of the law firm Kilpatrick Stockton, L.L.P. to file or assist with filing Plaintiff's D.D.C. and C.F.C. Complaints? If the answer to this interrogatory is "yes," please identify such person(s), third-party contractor, or courier service.

**Response:** Ak-Chin relied upon Kilpatrick Stockton to complete the filing of the Complaint in the instant action and the Ak-Chin District Court Action. Kilpatrick Stockton did not use a third-party to assist with these filings. As explained in response to Interrogatory No. 2, on December 29, 2006, Ms. Applegate took cabs from Kilpatrick Stockton's offices to the District Court and to return to Kilpatrick Stockton's office. Ms.

Applegate does not remember which cab company she used for the trips to and from the District Court and the receipts she received from each of the cabs do not identify the cab companies. Kilpatrick Stockton used Capitol Process Services, 1827 18th Street, N.W., Washington, D.C. to serve the Complaint in the Ak-Chin District Court Action.

**Interrogatory No 6.** For each person identified in response to Interrogatory Nos. 3 or 4, and for each person, third-party contractor, or courier service identified in response to Interrogatory No. 5, please explain in detail what tasks that person or entity performed in connection with filing Plaintiff's D.D.C. and C.F.C. Complaints.

**Response:** As explained in more detail above in paragraph C of Ak-Chin's General Objections, Ak-Chin objects to Interrogatory No. 6 on the grounds that it is overly broad and seeks information outside the scope of permissible discovery which is not relevant to the factual dispute of whether the Ak-Chin District Court Action was pending at the time Ak-Chin filed the instant action. Ak-Chin objects to Interrogatory No. 6 on the additional grounds that it seeks information protected by the attorney-client privilege and the attorney work product doctrine, including the mental impressions, conclusions, opinion or legal theories of Ak-Chin's attorneys concerning this litigation. Subject to and without waiving the foregoing objections, the actions Ms. Applegate took to file the Complaint in the instant action and the Ak-Chin District Court Action are set forth in Ak-Chin's response to Interrogatory No. 2. Ak-Chin states as a further response: *see* Response to Interrogatory No. 5.

**Interrogatory No 7.** On, or after December 29, 2006, did you receive any document from any person confirming or stating that the Plaintiff's complaints were successfully filed with the D.D.C. and the C.F.C.? If the answer to Interrogatory No. 7 is "yes," please identify any and all documentation you received and from whom you received it.

**Response:** Plaintiff objects to Interrogatory No. 7 on the grounds that it is overly broad and seeks information outside the scope of permissible discovery which is not relevant to the factual dispute of whether the Ak-Chin District Court Action was pending at the time Ak-Chin filed the instant action. Subject to and without waiving the foregoing objection, Kilpatrick Stockton received receipts from the Court of Federal Claims and the District Court, as well as file stamped copies of the Complaints filed in each action. In addition, Ms. Applegate sent an e-mail to G. William Austin on December 29, 2006 at 12:41 p.m. telling Mr. Austin that all the Complaints had been filed, but that she was waiting for the summons. Ms. Applegate then sent Mr. Austin a subsequent e-mail on December 29, 2006 at 2:23 p.m. telling Mr. Austin that she had just returned from the Court and was completing her time before she left for the day. Kilpatrick Stockton also received Affidavits of Service from Capitol Process Services indicating that the Complaints in the Ak-Chin District Court Action had been served.

**Interrogatory No 8.** Please identify any and all documents in your possession, custody or control that state, evidence or reflect the times of day that the Plaintiff's complaints were filed with the D.D.C. and the C.F.C., respectively, on December 29, 2006.

**Response:** Ak-Chin is aware of no documents which state, evidence or reflect the exact times of day that Ak-Chin's Complaints were filed in the instant action or in the District Court. The following documents evidence the approximate time that Ak-Chin filed the instant action and the District Court Action:

- Ms. Applegate sent an e-mail to G. William Austin on December 29, 2006 at 12:41 p.m. telling Mr. Austin that all the Complaints had been filed, but that she was waiting for the summons. Thus, at that time, the instant action had been filed, but as explained in response to Interrogatory No. 2, Ms. Applegate had not yet completed the filing of the Ak-Chin District Court Action because she had to return to the District Court to complete the filing, retrieve a summons and pay the filing fees, all of which she completed in a later trip to the District Court. Ms. Applegate sent Mr. Austin a subsequent e-mail on December 29, 2006 at 2:23 p.m. telling Mr. Austin that she had just returned from the Court and was completing her time before she left for the day. These e-mails evidence that the instant action was filed before 12:41 p.m. and that the filing of the Ak-Chin District Court Action was completed between 12:41 p.m. and 2:23 p.m.

- Mr. Guilder, an attorney at Kilpatrick Stockton who assisted with the preparation of Ak-Chin's Complaint filed in the instant action, sent an e-mail on December 29, 2006 at 11:41 a.m. to Edward Roybal, Ak-Chin's counsel with the law firm Strickland & Strickland, requesting information to be included in the Complaint filed in this action. This e-mail evidences that the instant action had not been filed as of 11:41 a.m. (Mr. Roybal did not respond to this e-mail until after Mr. Guilder already had obtained the requested information on his own).
- Ms. Applegate sent an e-mail to Mr. Harper on December 29, 2006 at 3:36 p.m. stating that she would let Mr. Harper know when she heard back from the process servers thus confirming that Ms. Applegate already had retrieved the summons from the District Court and the Ak-Chin District Court Action already had been filed at that time.
- Ms. Applegate sent an e-mail to Mr. Austin on December 29, 2006 at 4:17 p.m. stating that all Complaints in each court had been filed and that she was waiting to hear if the Complaints had been served.
- Affidavits of Service show that Kempthorne and Swimmer were served with the District Court Complaint at 3:14 p.m. on December 29, 2006, confirming that the District Court Action had been filed by 3:14 p.m.

**Interrogatory No 9.** State the exact time and date the Complaint in the Court of Federal Claims was filed. If you do not know the exact time of filing, please state your best approximation of the time, based on the information available to you.

**Response:** Ms. Applegate filed the instant action on December 29, 2006 between 11:41 a.m. and 12:41 p.m.

**Interrogatory No 10.** State the exact time and date the Complaint in the D.D.C. was filed. If you do not know the exact time of filing, please state your best approximation of the time, based upon all the information available to you.

**Response:** Ms. Applegate completed the filing of the Ak-Chin District Court Action on December 29, 2006 between 12:41 p.m. and 2:23 p.m.

**Interrogatory No 11.** Set forth in detail all facts upon which your responses to Interrogatory Numbers 9 and 10, above, are based.

**Response:** Ms. Applegate filed seven Complaints on December 29, 2006. In addition to the instant action, Ms. Applegate filed Complaints in the United States Court of Federal Claims styled *Passamaquoddy Tribe v. United States*, No. 06-942L; *Salt River Pima-Maricopa Indian Community v. United States*, No. 06-943L; and *Tohono O'odham Nation v. United States*, 06-944L (collectively, the "Court of Federal Claims Actions"). Ms. Applegate also filed Complaints in the District Court initiating the actions styled *Ak-Chin Indian Community v. Dirk Kempthorne, Ross O. Swimmer and Henry M. Paulson*, Case No. 1:06-cv-02245-JR, *Passamaquoddy Tribe of Maine v. Dirk Kempthorne, Ross O. Swimmer*

*and Henry M. Paulson*, Case No. 1:06-cv-02240-JR and *Salt River Pima-Maricopa Indian Community v. Dirk Kempthorne, Ross O. Swimmer and Henry M. Paulson*, Case No. 1:06-cv-02241-JR (collectively, "District Court Actions").

Ms. Applegate recalls that on December 29, 2006, the last trip she made to a court in connection with filing a complaint was to the District Court. Ms. Applegate specifically recalls giving a security guard at the District Court a "high-five" when she had completed all of the filings on December 29, 2006. Because the District Court assigned the Ak-Chin District Court Action the highest civil action number of all of the District Court Actions Ms. Applegate filed that day, and the District Court assigns civil action numbers based upon the time that the Complaints in the District Court are filed, Ms. Applegate is certain that the Complaint initiating the Ak-Chin District Court Action was the last Complaint she filed that day.

In addition, Mr. Harper recalls that he orally instructed Ms. Applegate to file the Complaints initiating the Court of Federal Claims Actions at the earliest possible time on December 29, 2006, and prior to filing the Complaint initiating the District Court Actions. Mr. Harper did not give the instruction to file the Court of Federal Claims Actions prior to filing the District Court Actions out of a concern for issues related to 28 U.S.C. § 1500. Rather, because Kilpatrick Stockton had successfully filed a Complaint in the action styled, *Tohono O'odham Nation v. Dirk Kempthorne, Ross O. Swimmer and Henry M. Paulson*, Case No. 1:06-cv-02236-JR in the District Court on December 28, 2006, and Mr. Harper

practiced more regularly in the District Court, Mr. Harper was comfortable that he and Ms. Applegate understood the necessary procedures to perfect the filing of a Complaint in the District Court. Because Mr. Harper and Ms. Applegate had not yet filed any Complaints initiating actions in the Court of Federal Claims and Mr. Harper was not as familiar with the filing procedures in this Court, Mr. Harper instructed Ms. Applegate that she should file the Complaints initiating the Court of Federal Claims Actions as early as possible and before filing the Complaints she was planning to file in the District Court that day so that Mr. Harper and Ms. Applegate would have sufficient time to cure any potential problems occurring in connection with filing the Complaints in the Court of Federal Claims Actions. Ms. Applegate recalls Mr. Harper expressing this concern to her and wanting to file the Complaints in the Court of Federal Claims Actions as soon as possible.

Mr. Harper remembers making this instruction in spite of an e-mail Mr. Harper sent to Ms. Applegate at 8:59 a.m. on December 29, 2006, instructing her that she would have to file the Complaints in the District Court Actions while he made changes to the Complaints in the Court of Federal Claims Actions. In light of the impending holiday, late in the evening of December 28, 2006, Mr. Harper had asked Ms. Applegate to call the District Court and the Court of Federal Claims to determine if either of the Courts were closing early on December 29, 2006. Mr. Harper recalls that on the morning of December 29, 2006, likely after he sent Ms. Applegate the 8:59 a.m. e-mail, Ms. Applegate was unable to determine the hours for the Court of Federal Claims. This additional uncertainty prompted Mr. Harper to instruct Ms.

Applegate to file the Court of Federal Claims Actions before filing the District Court Actions. Ms. Applegate is certain that she followed Mr. Harper's instructions and filed the Complaint in the instant action prior to filing the Complaint in the Ak-Chin District Court Action. Ak-Chin states as a further response, *see* Responses to Interrogatories No. 2 and 8.

This the 9th day of July, 2007.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 508-5800
Fax: (202) 505-5858

*Attorneys for Plaintiff*
Ak-Chin Indian Community

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 06-932L<br>Judge Emily C. Hewitt |

**CERTIFICATE OF SERVICE**

I hereby certify that I have served the foregoing Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories by delivering a copy thereof addressed to:

Laura M.L. Maroldy, Esq.
Trial Attorney
United States Department of Justice
Environmental and Natural Resources Division
P.O. Box 663
Washington, D.C., 20044-0633

by United States Mail, with sufficient postage paid.

This the 9th day of July, 2007.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.

US2000 10135529.1

Washington, D.C. 20005
Tel: (202) 508-5800
Fax: (202) 505-5858

*Attorneys for Plaintiff*
Ak-Chin Indian Community

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-932L<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**VERIFICATION OF AK-CHIN INDIAN COMMUNITY**

Personally appeared before me, the undersigned Notary Public duly authorized to administer oaths, KEITH M. HARPER, ESQ., who after being duly sworn deposes and says that he is an attorney for Kilpatrick Stockton LLP and that he represents the Ak-Chin Indian Community in the above-styled action and that he is authorized to make this verification on its behalf and that under penalty of perjury, he certifies that the foregoing responses to interrogatories are true and correct.

This 9th day of July, 2007.

AK-CHIN INDIAN COMMUNITY

By: Keith M. Harper, Esq.
Its: Attorney

Sworn to and subscribed before
me this 9th day of July 2007.

Sandra L. Roy
Notary Public

Commission Expires: 12/14/2008

# EXHIBIT B

**PETTY CASH**

**CASH SLIP - CLIENT/FIRM EXPENSE**

Date 12/29/06

Received from:
**KILPATRICK STOCKTON LLP** $ 16.00

Sixteen Dollars

**Charge to:**

☐ FIRM (Description of expenditure must be shown)
☒ CLIENT

Client 57831 Number

Matter 338240 Number

DESCRIPTION: taxis to/from courthouse

SIGNED [signature]

**(FORM TO BE FULLY COMPLETED AND SUPPORTING VOUCHER, IF ANY, SHOULD BE ATTACHED.)**

## Taxi Cab Receipts

DATE: 12/29/06 TIME:

TRIP ORIGIN: 333 Constitution

DESTINATION: 607 14th St

FARE: $ 800 SIGNATURE

A[signature]

## TAXICAB RECEIPT

Time: 12/29/06

Date:

Origin of trip: 607 14th St

Destination: 333 Constitution

Fare: 800 Sign:

Ak-Chin

AKCHIN00030

PETTY CASH
CASH SLIP - CLIENT / FIRM EXPENSE

Date 12/29/06

Received from:
KILPATRICK STOCKTON LLP $ 16.00

Sixteen Dollars

Charge to:
☐ FIRM (Description of expenditure must be shown)
☑ CLIENT

Client ____ Number 57870

Matter ____ Number 338789

DESCRIPTION: taxis to/from courthouse

SIGNED Alexis Applegate

(FORM TO BE FULLY COMPLETED AND SUPPORTING VOUCHER, IF ANY, SHOULD BE ATTACHED.)

## TAXI CAB RECEIPT

DATE: 12-29-06 a.m.

CAB FARE FROM: 607 14th St

TO: 333 Constitution Ave

NO. OF PASSENGERS: 1 TOTAL FARE: $ 8.00

CAB CO. & NO.: 966 DRIVER: [signature]

## TAXICAB RECEIPT

Time: 12/29/06

Date: a.m.

Origin of trip: 333 Constitution

Destination: 607 14th St.

Fare: 8.00 Sign: [signature]

AKCHIN00031

**PETTY CASH**

**CASH SLIP - CLIENT/FIRM EXPENSE**

Date 12/29/06

Received from:
**KILPATRICK STOCKTON LLP** $ 16.00

Sixteen Dollars

**Charge to:**

☐ FIRM (Description of expenditure must be shown)

☒ CLIENT

Client 57847 Number

Matter 338587 Number

DESCRIPTION: taxis to/from courthouse

SIGNED Chris Applegate

**(FORM TO BE FULLY COMPLETED AND SUPPORTING VOUCHER, IF ANY, SHOULD BE ATTACHED.)**

BARBADOS

## Taxi- Receipt

Driver# ________ Cab# ________

To: 807 14th Street

From: 333 Constitution

Date: 12/29/06 Amount:$ 8.00

Signature: ________

visit www.visitbarbados.org/taxibdos to win a trip to Barbados



## TAXI CAB RECEIPT

DATE: 12/29/06 TIME: 2:00 pm

TRIP ORIGIN: 607 14th St

DESTINATION: 333 Constitution

FARE: $ 8.00 SIGNATURE: ________

AKCHIN00032

# EXHIBIT C

**Applegate, Alexis**

---

**From:** Applegate, Alexis
**Sent:** Friday, December 29, 2006 2:23 PM
**To:** Austin, Bill
**Subject:** RE: The Tribal Trust Case Filings

Just got back from the court... leaving soon- have to get my time in before I leave.

---

**From:** Austin, Bill
**Sent:** Friday, December 29, 2006 1:49 PM
**To:** Applegate, Alexis
**Subject:** RE: The Tribal Trust Case Filings

Thanks for the update.

When are you leaving the office?

Bill A.

---

**From:** Applegate, Alexis
**Sent:** Friday, December 29, 2006 12:41 PM
**To:** Austin, Bill
**Subject:** RE: The Tribal Trust Case Filings

sorry - we have filed them but I am waiting for the summons- we filed most of them today.

---

**From:** Austin, Bill
**Sent:** Friday, December 29, 2006 11:43 AM
**To:** Applegate, Alexis
**Subject:** The Tribal Trust Case Filings

Alexis--If you've not yet departed for Jekyll Island and the weekend of celebration and merriment to be hosted by Vance, would it be possible for you to e-mail me the complaints filed on Thursday in the district court and the court of federal claims?

And please convey my best wishes to Vance--tell him he's greatly missed.

Bill A.

# EXHIBIT D

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, *Plaintiff,* v. THE UNITED STATES, *Defendant.* | ) | No. 06-932-L |

**AFFIDAVIT OF ALEXIS APPLEGATE**

The undersigned, Alexis Applegate, deposes and states as an affidavit the following:

1.

I am over eighteen years of age and am competent to testify to the facts stated herein. I have personal knowledge of and state that the facts set forth herein are true and correct.

2.

I am a paralegal at Kilpatrick Stockton LLP and have been working at Kilpatrick Stockton LLP since 2000. In my capacity as a paralegal at Kilpatrick Stockton LLP, I am responsible for filing pleadings in various courts, including the United States Court of Federal Claims and the United States District Court for the District of Columbia.

3.

On December 29, 2006, I filed Complaints initiating the following actions in the United States Court of Federal Claims: *Ak-Chin Indian Community v. United States*, 06-932L; *Passamaquoddy Tribe v. United States*, No. 06-942L; *Salt River Pima-Maricopa*

*Indian Community v. United States,* No. 06-943L; and *Tohono O'odham Nation v. United States*, 06-944L (collectively, "Court of Federal Claims Actions").

4.

Later, that same day, I filed a Complaint in the United States District Court for the District of Columbia initiating the action styled *Ak-Chin Indian Community v. Dirk Kempthorne, Ross O. Swimmer and Henry M. Paulson*, Case No. 1:06-cv-02245-JR ("Ak-Chin District Court Action").

5.

I am certain that on December 29, 2006, I filed the Complaints initiating the Court of Federal Claims Actions prior to filing the Complaint in the Ak-Chin District Court Action. The Complaint I filed in the Ak-Chin District Court Action was the last Complaint that I filed on December 29, 2006.

FURTHER AFFIANT SAYETH NOT.

Alexis E. Applegate
Alexis Applegate

Sworn to and subscribed before me this
1st day of May, 2007, to certify
which, witness my hand and official seal.

Sandra L. Roy
Notary Public

My commission expires:
12/14/08

US2000 9953070.1

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TOHONO O'ODHAM NATION
P.O. Box 837
Sells, Arizona 85634,

Plaintiff,

v.

DIRK KEMPTHORNE
Secretary of the Interior
1849 C Street N.W.
Washington, D.C. 20240,

ROSS O. SWIMMER
Special Trustee
Office of Special Trustee for
American Indians
Department of the Interior
1849 C Street N.W.
Washington, D.C. 20240,

HENRY M. PAULSON
Secretary of the Treasury
1500 Pennsylvania Avenue N.W.
Washington, D.C. 20220

Defendants.

Civil Action No. ______________

# COMPLAINT

## I. GENERAL NATURE OF THE ACTION

1. This is an action to seek redress of breaches of trust by the United States, acting by and through the defendants, in the management and accounting of trust assets, including funds and lands, belonging to the plaintiff, the Tohono O'odham Nation ("the Nation"), and to compel the defendants to provide a full and complete accounting of all trust

assets belonging to the Nation and to correct the balances of the Nation's trust fund accounts to reflect accurate balances.

2. Involved in this action are funds and other assets, including approximately 2,900,000 acres of land, held in trust by the United States for the benefit of the Nation. As is more fully set forth herein below, the trust funds are comprised of both judgment funds held in trust pursuant to federal law and funds that receive their trust character as proceeds of trust property, specifically the lease and sale of resources or lands that are held in trust. The trust funds involved are substantial; by its own estimates, as provided by government contractor Arthur Andersen LLP, the United States handled $2.1 billion ($2,100,000,000.00) in transactions for the Nation between 1972 and 1992. The United States has never fulfilled its duty to provide a full and adequate accounting of the trust funds belonging to the Nation. Accordingly, the true balances of the Nation's trust accounts are unknown and on information and belief would be far greater but for the breaches of trust complained of herein.

3. Pursuant to federal law, the defendants also have substantial fiduciary responsibilities with respect to and are charged with managing and accounting for the 2.9 million acres of land held in trust and the resources from such trust lands. These lands comprise a reservation located in the southern most part of the State of Arizona, and the Nation shares a seventy mile border with Mexico. Over the years, these lands have produced, *inter alia*, copper, other minerals, sand, and gravel, and such trust lands have been leased to third parties and to the government for rights-of-way, business uses, and other

purposes. Despite the longstanding fiduciary responsibilities owed, the United States has never provided an accounting of its management of these trust assets as required by law.

4. The defendants are government officers and trustee-delegates charged with carrying out the trust obligations of the United States. The record indicates that they have grossly mismanaged and continue to grossly mismanage the trust and have failed for over a century to carry out the most basic and fundamental trust duties owed to the Nation. The trust has been mismanaged in the following aspects, among others:

(a) The defendants have failed to provide an adequate accounting of the trust assets, including funds, lands, and resources belonging to and beneficially owned by the Nation;

(b) The defendants have breached their trust obligation to maintain adequate records and to put in place adequate accounting systems in order to properly carry out their fiduciary obligations, including their duty to account;

(c) The defendants have failed to fulfill their duty to ensure that tribal trust property and trust funds are protected, preserved, and managed so as to produce a maximum return to the Nation consistent with the trust character of the property;

(d) The defendants have failed to properly collect, invest, and disburse trust funds belonging to the Nation in compliance with their fiduciary responsibilities and other federal statutory and regulatory law;

(e) The defendants have breached their trust responsibility to preserve and protect adequate records of the trust and have spoliated irreplaceable trust records bearing upon their breaches of trust complained of herein; and

(f) The defendants have failed to properly state the Nation's account balances and have converted to their own use trust funds belonging to the Nation, including, but not limited to, Indian moneys, proceeds of labor, 25 U.S.C. § 155.

## II. THE PARTIES

5. The Plaintiff is the Tohono O'odham Nation, a federally recognized Indian tribe that is the beneficial owner of funds and other assets that are held in trust on the Nation's behalf by the United States and for which the Nation has never received an adequate accounting as required by law.

6. Defendant Dirk Kempthorne is the Secretary of the Interior and chief officer of the Department of the Interior, and as such is charged by law with carrying out the duties and responsibilities of the United States as trustee for the Nation. He and his subordinates have custody and control of trust assets, including trust funds, belonging to the Nation.

7. Defendant Ross O. Swimmer is the Special Trustee for American Indians, a sub-cabinet level officer appointed by the President of the United States with the advice and consent of the Senate and reporting directly to the Secretary of the Interior. A number of Defendant Swimmer's duties are delineated in the Indian Trust Fund Management Reform Act of October 25, 1994, Pub. L. No. 103-412, 25 U.S.C. §§ 4042, et seq. ("the 1994 Act").

8. Defendant Henry M. Paulson is the Secretary of the Treasury, and as such is the custodian of the tribal trust funds and is responsible for administering those funds and for preparing and maintaining certain records in connection therewith.

## III. JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1362, as the Nation is a federally recognized Indian tribe and its claims arise under the Constitution and laws of the United States, including, but not limited to, the numerous statutes and regulations giving rise to the trust relationship between the United States and the Nation. This Court also has jurisdiction over this action under 28 U.S.C. § 1361 and 5 U.S.C. § 706, as this is an action to compel federal officials to perform a duty owed to the Nation.

10. The United States has waived its immunity from suit under § 702 of the Administrative Procedure Act ("the APA"), 5 U.S.C. § 702. Section 702 waives sovereign immunity for all claims for relief other than money damages, including all forms of equitable relief, involving a federal official's action or failure to act. See, e.g., Bowen v. Mass., 487 U.S. 879, 893-95, 108 S. Ct. 2722 (1988); Schnapper v. Foley, 667 F.2d 102, 107-08 (D.C. Cir. 1981) (noting that § 702 is "intended to eliminate the defense of sovereign immunity with respect to any action ... seeking relief other than money damages and based on the assertion of unlawful action by a federal officer"). The APA's waiver of sovereign immunity applies to any such suit, regardless of whether the suit is brought under the APA. See, e.g., Cobell v. Norton ("Cobell VI"), 240 F.3d 1081, 1095-96 (D.C. Cir. 2001); Chamber of Commerce v. Reich, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

11. Venue in this Court is proper under 28 U.S.C. § 1391(e), as the defendants are officers and employees of the United States acting in an official capacity and a substantial part of the acts or omissions giving rise to the Nation's claim occurred within this judicial district.



US2000 9659502.1

## IV. THE TRUST OBLIGATIONS OF THE UNITED STATES AND OF THE DEFENDANTS WITH RESPECT TO TRIBAL TRUST ASSETS

12. The United States unquestionably owes substantial fiduciary obligations to the Nation with respect to the management and administration of the Nation's trust funds and other trust assets. See Cobell VI, 240 F.3d at 1098 (citing numerous cases).

13. Tribal lands, associated resources, and the income derived therefrom constitute a substantial portion of the assets held by the United States in trust for the Nation's benefit. Title to the land constituting the Nation's reservation is held in trust by the United States, with the Nation as the beneficial owner of the land and associated natural resources. Income is derived from, *inter alia*, the sale of these natural resources and the conveyance of certain interests in the Nation's tribal trust land, including leases, easements, and rights of way. These assets and the income they produce form the core of the Nation's tribal trust assets.

14. Additional assets held in trust by the United States for the Nation's benefit are derived from judgments entered by federal courts on various claims brought by the Nation against the United States. This includes claims brought under the Indian Claims Commission Act of August 13, 1946, 60 Stat. 1049 (covering claims accruing before August 13, 1946). Specifically, the Nation's claims for (1) aboriginal title to, loss of subsurface rights within, and trespass upon some 6,338,113 acres of tribal land in the present-day State of Arizona and (2) a general accounting resulted in a $26 million ($26,000,000.00) judgment from the Indian Claims Commission. 38 Ind. Cl. Comm. 542, 542-43 (July 21, 1976). According to government records, of this amount, $11,698,253.28 was retained in trust by the United States for the benefit of the Nation. See Pub. L. No. 97-408; Letter from the Area Director,

Phoenix Area Office, Bureau of Indian Affairs, U.S. Department of the Interior to Sylvester Listo and Kate Hoover, Tohono O'odham Nation (July 23, 1993). As trustee, the United States undertook to manage, invest, and distribute these judgment funds as trust assets for the benefit of the Nation.

15. Because the United States holds the Nation's tribal lands and other assets in trust, it has assumed the fiduciary obligations of a trustee. As a trustee, the United States is charged with "'moral obligations of the highest responsibility and trust' … and its conduct 'should therefore be judged by the most exacting fiduciary standards.'" Cobell VI, 240 F.3d at 1099 (quoting Seminole Nation v. United States, 316 U.S. 286, 296, 62 S. Ct. 1049 (1942)). Because Congress established this trust by statute, "[c]ourts 'must infer that Congress intended to impose on trustees traditional fiduciary duties unless Congress unequivocally expressed an intent to the contrary.'" Cobell VI, 240 F.3d at 1099 (quoting NLRB v. Amax Coal Co., 453 U.S. 322, 330, 101 S. Ct. 2789 (1981)).

16. The longstanding trust relationship between the United States and the Nation and the United States' resulting fiduciary duties are rooted in and derived from numerous statutes and regulations. See, e.g., Indian Nonintercourse Act, 25 U.S.C. § 177; Indian Long-Term Leasing Act, 25 U.S.C. § 396; Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a-396g; Federal Oil & Gas Royalty Management Act, 30 U.S.C. §§ 1701, et seq.; Indian Mineral Development Act of 1982, 25 U.S.C. §§ 2101, et seq.; Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 4001, et seq.; 25 U.S.C. § 152; 25 U.S.C. §§ 157-58, 160; 25 U.S.C. §§ 155, 155b; 25 U.S.C. §§ 161a, 161b, 162 (repealed in 1938), 162a, 413; 25 U.S.C. §§ 311, 312, 318a, 319, 321, 323-28; 25 U.S.C. § 397; 25 U.S.C. §§

398, et seq.; 25 U.S.C. § 399; 25 U.S.C. §§ 415-415d; 31 U.S.C. § 1321(a); 25 C.F.R. pt. 87; 25 C.F.R. pts. 150-51; 25 C.F.R. pt. 162; 25 C.F.R. pt. 166; 25 C.F.R. pt. 169; 25 C.F.R. pt. 211; 25 C.F.R. pt. 216; 25 C.F.R. pt. 225; 30 C.F.R. pt. 206; 43 C.F.R. § 3590.2(i).

17. The 1994 Act, which, among other things, created the Office of the Special Trustee for American Indians, served to recognize, reaffirm, and clarify the United States' preexisting fiduciary duties as derived from the relevant statutes and regulations, including the duty to account. Cobell VI, 240 F.3d at 1090, 1096. It was designed to "help rectify the government's longstanding failure" to fulfill its trust obligations. Id. The 1994 Act did not create the United States' fiduciary duties, nor did it "define and limit the extent of [the defendants'] obligations. Id. at 1100. Moreover, the 1994 Act does not, and was not intended to, serve as the sole source of those duties or of the Nation's attendant rights. Id. at 1099.

18. The statutes, regulations, and executive orders giving rise to the United States' fiduciary duties provide the "general contours" of those duties, but the specific details are filled in through reference to general trust law and "defined in traditional equitable terms." Id. Accordingly, the defendants' "actions must not merely meet the minimal requirements of administrative law, but must also pass scrutiny under the more stringent standards demanded of a fiduciary." Id. (citations and internal quotations omitted).

19. As trustee of the Nation's tribal trust assets, the United States owes, and continuously since the inception of the tribal trust program has owed, certain traditional fiduciary duties and responsibilities to the Nation as a trust beneficiary. These duties include, but are not limited to, the duty to:



US2000 9659502.1

(a) Perform a complete, accurate, and adequate historical accounting of all the trust property, with such accounting containing sufficient information to enable the Nation to readily ascertain whether the trust has been and is being faithfully carried out;

(b) Maintain adequate books and records with respect to the trust property, including, but not limited to, records of leases and other contractual arrangements giving rise to income from the trust property and records of the investment of tribal trust assets;

(c) Refrain from self-dealing or otherwise benefiting from management of the trust property;

(d) Take reasonable steps to preserve and protect trust property;

(e) Take reasonable steps to bring and enforce claims held by the trust;

(f) Use reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law and prudence; and

(g) Take reasonable steps to ensure that trust property is used for its highest and best use.

## V. BREACHES OF TRUST BY THE DEFENDANTS

20. The United States, acting by and through the defendants, has consistently and egregiously failed to comply with these and other fiduciary obligations and continues to do so. Its breaches of trust include, but are not limited to:

(a) Failure to provide and unconscionably delaying the performance of a complete, accurate, and adequate accounting of trust property;

(b) Failure to maintain adequate books and records with respect to the trust property, including, but not limited to, records of leases and other contractual arrangements giving rise to income from the trust property and records of the investment of tribal trust assets;

(c) Failure to refrain from self-dealing or otherwise benefiting from management of the trust property;

(d) Failure to take reasonable steps to preserve and protect trust property;

(e) Failure to take reasonable steps to bring and enforce claims held by the trust;

(f) Failure to use reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law and prudence; and

(g) Failure to ensure that trust assets are used for their highest and best use.

21. Due to these and other breaches of the fiduciary duties owed by the United States, the Nation does not know, and has no way of ascertaining, the true state of its trust assets, including funds and related accounts holding such funds; what amounts should have been credited to the Nation and deposited in these accounts; what amounts should have been paid to the Nation; how much of the Nation's property has been diverted or converted to other uses; to what extent the United States failed to maximize profits; or whether the United States has attained fair market value for leases and sale of trust assets.

22. The United States' breaches of its fiduciary obligations with respect to Indian trust assets have been repeatedly recognized and routinely condemned by the United States

General Accounting Office, the United States Inspector General for the Interior Department, and the United States Office of Management and Budget, among others. See Cobell VI, 240 F.3d at 1090-91 (citing reports criticizing the mismanagement of Indian trust assets).

23. The United States' breaches of its fiduciary obligations with respect to Indian trust assets have also been recognized and condemned by Congress. After a series of oversight hearings, Congress issued a report entitled "Misplaced Trust: The Bureau of Indian Affairs' Mismanagement of the Indian Trust Fund," H.R. Rep. No. 102-499 (1992). In this report, Congress noted "significant, habitual problems in BIA's ability to fully and accurately account for trust fund moneys, to properly discharge its fiduciary responsibilities, and to prudently manage the trust funds." Id. at 2. Congress further concluded that the defendants had "utterly failed to grasp the human impact of [their] financial mismanagement of the Indian trust fund." Id. at 5. While the Interior Department pledged reforms in response to this report, it did little to improve its mismanagement of Indian trust assets. Cobell VI, 240 F.3d at 1090.

24. The 1994 Act sought to remedy the United States' long-standing failure to discharge its trust obligations. It "reaffirmed and clarified preexisting [trust] duties; it did not create them." Id. at 1100. Nor did it alter the nature or the scope of the fiduciary duties that the defendants owe to the Nation and to other tribal trust beneficiaries. Id.

25. Among the duties enumerated in the 1994 Act, section 102 makes clear that the Nation and other tribal trust beneficiaries are owed an accounting for "all funds held in trust by the United States for the benefit of an Indian tribe ... which are deposited or invested pursuant to the Act of June 24, 1938." 25 U.S.C. § 4011(a). The 1994 Act thus "reaffirms

the government's preexisting fiduciary duty to perform a complete historical accounting of trust fund accounts." Cobell VI, 240 F.3d at 1102.

26. The 1994 Act also created the Office of Special Trustee for American Indians. 25 U.S.C. § 4042. Congress' stated purposes in creating this office were, inter alia, "to provide for more effective management of, and accountability for the proper discharge of, the Secretary's trust responsibilities," and to "ensure the implementation of all reforms necessary for the proper discharge of the Secretary's trust responsibilities ... ." 25 U.S.C. § 4041.

27. The statutory responsibilities of the Special Trustee conferred under the 1994 Act include, *inter alia*:

(a) To "oversee all reform efforts ... to ensure the establishment of policies, procedures, systems and practices to allow the [Interior] Secretary to discharge his trust responsibilities ... ." 25 U.S.C. § 4043(b)(1);

(b) To "monitor the reconciliation of tribal trust accounts ... to ensure that the Bureau [of Indian Affairs] provides the account holders with a fair and accurate accounting of all trust accounts," 25 U.S.C. § 4043(b)(2)(A); and

(c) To "ensure that the Bureau establishes appropriate policies and procedures, and develops necessary systems, that will allow it ... properly to account for and invest, as well as maximize," subject to requirements of law, "the return on the investment of all trust fund monies," and "to prepare accurate and timely reports to account holders ... on a periodic basis regarding all collections, disbursements, investments and returns on investments related to their accounts." 25 U.S.C. § 4043(b)(2)(B).



US2000 9659502.1

28. Notwithstanding the remedial purpose of the foregoing legislation, the mandates of the 1994 Act – like the government's longstanding fiduciary duties – have not been carried out, and the defendants remain in violation of their accounting and other fiduciary obligations. In addition to the breaches of trust duties recited in paragraphs 4 and 19-23 above, the defendants have failed to comply with the enumerated duties listed in the 1994 Act. Furthermore, Defendant Swimmer has failed to discharge his responsibilities as Special Trustee or to take any meaningful steps to fix a trust management system that remains broken after more than a century of defendants' malfeasance, recalcitrance, and neglect.

29. The defendants also have failed to comply with other statutory directives intended to address their ongoing breaches of preexisting trust duties. By the Act of December 22, 1987, Pub. L. No. 100-202 (101 Stat. 1329), Congress directed that the defendants (1) audit and reconcile tribal trust funds and (2) provide the tribal trust beneficiaries with an accounting of such funds. Congress reaffirmed the mandates of the 1987 Act in subsequent statutes, namely, the Act of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, and the Act of November 3, 1991, Pub. L. No. 102-154, 105 Stat. 990. These acts, like the 1994 Act, are reaffirmations of preexisting obligations rather than sources of new obligations. Even after nearly twenty years, these statutory requirements have never been met, and the defendants remain in derogation of their trust duties.

30. The reports produced by government contractor Arthur Andersen LLP (the "AA Reports") and provided to the Nation and other tribal trust beneficiaries fall far short of

satisfying the defendants' fiduciary duty to provide a complete, accurate, and adequate accounting. Even the Bureau of Indian Affairs ("BIA") within the Interior Department has admitted that the AA Reports were not full and complete accountings. See Bureau of Indian Affairs' Proposed Legislative Options in Response to Tribal Trust Fund Reconciliation Project Results at 12 (Dec. 1996) ("Despite five years of effort and the expenditure of $21 million, the [AA] Project provides a less than complete accounting of the state of the Tribal trust funds."). Shortcomings of the AA Reports include, but are not limited to, the fact that the Reports:

(a) Analyzed trust fund accounts only for the limited time period of Fiscal Years 1973-1991;

(b) Were not based on or prepared in accordance with generally accepted accounting and auditing standards;

(c) Were premised on the erroneous assumption that complete, accurate, and adequate accountings could be conducted based on unverified information provided by the BIA; and

(d) Were based on accounts for which records and information were non-existent or could not be located.

See, e.g., U.S. General Accounting Office, Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA's Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 (May 1996); U.S. General Accounting Office, Testimony before the Committee on Indian Affairs, U.S. Senate, Indian Trust Funds, Tribal Account Balances, GAO-02-420T at 2 (Feb. 7, 2002).

31. Congressional recognition of the defendants' continued and ongoing failure to satisfy their fiduciary duty to render a complete, accurate, and adequate accounting is evidenced by the inclusion, in each Interior Department Appropriations Act since 1990, of a provision stating that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe ... has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." See, e.g., Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. No. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. No. 104-134, 110 Stat. 1321; Act of September 30, 1996, Pub. L. No. 104-208, 110 Stat. 3009; Act of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. No. 105-277, 112 Stat. 2681; Act of November 29, 1999, Pub. L. No. 106-114, 113 Stat. 1501; Act of October 11, 2000, Pub. L. No. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. No. 107-63.

COUNT ONE

32. The Nation restates and incorporates herein the allegations of paragraphs 1 through 31 above.

33. The United States, acting through the defendants, owes to the Nation fiduciary duties of the highest responsibility and trust with respect to property that it holds in trust for the Nation's benefit. These statutorily-derived duties, which may be either express or implied in law, are akin to those stated under the common law of trusts.

34. Among the duties that the defendants owe is the duty to provide the Nation with a complete, accurate, and adequate accounting of all property held in trust by the United States for the Nation's benefit. The accounting obligation that the defendants owe to the Nation requires, *inter alia*, an accounting report that "contain[s] sufficient information for the [Nation] readily to ascertain whether the trust has been faithfully carried out." Cobell VI, 240 F.3d at 1103 (internal quotation omitted).

35. The defendants have, from the inception of the trust to the present, failed to fulfill these fiduciary obligations, and this failure constitutes a breach of the defendants' fiduciary duties to the Nation and a violation of federal law.

36. Specifically, the defendants have, *inter alia*, failed to provide the Nation with a complete, accurate, and adequate accounting of the Nation's trust assets, and this failure constitutes a breach of the defendants' fiduciary duties to the Nation and a violation of federal law.

37. The Nation is entitled to a declaration that the AA Report prepared by the defendants' contractors does not constitute the complete, accurate, and adequate accounting required by federal law.

38. The Nation is entitled to a further declaration that the defendants have breached the fiduciary duties they owe to the Nation by, *inter alia*, failing to provide the Nation with a complete, accurate, and adequate accounting of the Nation's trust assets as required by law.

39. The Nation is entitled to a further declaration (1) delineating the defendants' fiduciary duties to, among other things, enable proper discharge of their accounting obligation and (2) finding that the defendants have breached their duties so declared.

COUNT TWO

40. The Nation restates and incorporates herein the allegations of paragraphs 1 through 39 above.

41. There is no indication that the defendants will, of their own accord, depart from their longstanding and continuing pattern of failure to comply with their fiduciary duties to the Nation.

42. The Nation is entitled to injunctive relief directing the defendants to provide a complete, accurate, and adequate accounting of the Nation's trust assets, including, but not limited to, funds under the custody and control of the United States, and to comply with all other fiduciary duties as determined by this Court.

43. The Nation is further entitled to make exceptions and objections to the accounting provided, to a restatement of their trust fund account balances in conformity with the ultimate and complete accounting, and to any additional equitable relief that may be appropriate (e.g., disgorgement, equitable restitution, or an injunction directing the trustee to take action against third parties).

44. The Nation is entitled to further injunctive relief directing the defendants to bring themselves into conformity with their fiduciary obligations and otherwise address breaches of trust found by the Court.

WHEREFORE, THESE PREMISES CONSIDERED, THE PLAINTIFF PRAYS:

1. For a decree construing the trust obligations of the defendants to the Nation, including, but not limited to, the duty to provide a complete, accurate, and adequate accounting of all trust assets belonging to the Nation and held in trust by the defendants.

2. For a decree that the United States, acting through the defendants, has been in breach of its trust obligations since the inception of this trust and continues to be in breach of those duties today, specifically including, *inter alia*, its fiduciary duty to provide a complete, accurate, and adequate accounting of all trust assets belonging to the Nation and held in trust by the United States.

3. For a decree that the AA Reports do not constitute the complete, accurate, and adequate accounting that the defendants are obligated to provide to the Nation.

4. For a decree delineating the fiduciary duties owed by the defendants to the Nation with respect to the management and administration of the trust assets belonging to the Nation.

5. For a decree directing the defendants (1) to provide a complete, accurate, and adequate accounting of the Nation's trust assets, including, but not limited to, funds under the custody and control of the United States and (2) to comply with all other fiduciary duties as determined by this Court.

6. For a decree providing for the restatement of the Nation's trust fund account balances in conformity with this accounting, as well as any additional equitable relief that may be appropriate (e.g., disgorgement, equitable restitution, or an injunction directing the trustee to take action against third parties).



US2000 9659502.1

7. For a decree requiring the defendants to provide to the Nation all material information regarding the management and administration of the trust assets belonging to the Nation and held in trust for its benefit by the defendants.

8. For an award of the Nation's costs of suit, including, without limitation, attorneys' fees under the Equal Access to Justice Act and other statutes as well as general equitable principles, and the fees and costs of expert assistance.

9. For such other and further relief as the Court, as a Chancellor sitting in equity, may deem just and proper.

December 28, 2006

Respectfully submitted,

KEITH HARPER
D.C. Bar No. 451956
G. WILLIAM AUSTIN
D.C. Bar No. 478417
Kilpatrick Stockton LLP
607 14th Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 508-5800

Attorneys for Plaintiff
Tohono O'odham Nation



US2000 9659502.1

# EXHIBIT F

**Teschemaker, James**

**From:** Smith, David
**Sent:** Thursday, December 28, 2006 9:57 PM
**To:** Harper, Keith; Bosken, Katherine; Guilder, Justin; Reeves, Mark; Applegate, Alexis; Roy, Sandy; Austin, Bill
**Subject:**

**REDACTED**

-----Original Message-----
From: Harper, Keith
To: Smith, David; Bosken, Katherine; Guilder, Justin; Reeves, Mark; Applegate, Alexis; Roy, Sandy; Austin, Bill
Sent: Thu Dec 28 21:43:54 2006
Subject:

**REDACTED**

Alexis - can you make sure the two courts are noit closing early.

David - Anythings else?

I'll be chacking my blackberry for a while.

-----Original Message-----
From: Smith, David
To: Harper, Keith; Bosken, Katherine; Guilder, Justin
Sent: Thu Dec 28 19:12:20 2006
Subject:

**REDACTED**



AKCHIN00042