IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AK-CHIN<br>INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-0932L-ECH<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | **Electronically filed September 21, 2007** |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO 28 U.S.C. § 1500

RONALD J. TENPAS
ACTING ASSISTANT ATTORNEY GENERAL

Laura M.L. Maroldy
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 514-4565
Fax: (202) 353-2021

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Plaintiff Failed to Establish that Its District Court Case Was Not "Pending" When Its Complaint Was Filed in this Court . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. Plaintiff's Pending District Court and Court of Federal Claims Actions are Based on the Same Underlying Operative Facts . . . 5

1. The District Court Complaint . . . . . . . . . . . . . . . . . 7

2. The Court of Federal Claims Complaint . . . . . . . . . . 9

3. The Plaintiff Misapplies Relevant Case Law Pertaining to "Operative Facts" . . . . . . . . . . . . . . . . . . . . . . 9

C. Plaintiff's Pending District Court and Court of Federal Claims Actions Seek the Same Form of Monetary Relief Against the Government . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1. Plaintiff's Distinction Between "Money Damages" and "Monetary Relief" is Ill-founded . . . . . . . . . . . 13

2. Plaintiff's Claims for Relief are not Distinctly Different . . 15

3. Plaintiff Seeks Monetary Compensation in both Courts for the Difference Between what the Government Actually Collected, Deposited and Invested and what the Government Should have Collected, Deposited and Invested . . . . . . 17

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791 (Fed. Cir. 1993) . . . . . . . . . . 14

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) . . . . . . . . . . . . . . . . . . 15

*Casanova v. Dubois*, 304 F.3d 75 (1st Cir. 2002) . . . . . . . . . . . . . . . . . 5

*Casman v. United States*, 135 Ct. Cl. 647 (1956) . . . . . . . . . . . . . . . 2, 12, 16

*Chavez v. United States*, 14 Cl. Ct. 212 (Cl. Ct. 1988) . . . . . . . . . . . . . 6, 19

*City of Santa Clara v. United States*, 215 Ct. Cl. 890 (1977) . . . . . . . . . . 19

*Cooke v. United States*, 77 Fed. Cl. 173 (Fed. Cl. 2007) . . . . . . . . . . . *passim*

*Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C. Cir. 1995) . . . . . . . . 14

*Fire-Trol Holdings, LLC v. United States*, 65 Fed. Cl. 32 (2005) . . . . . . . 10, 11

*Gaubert v. United States*, 28 Fed. Cl. 597 (1993) . . . . . . . . . . . . . . 6, 7, 17

*Harbuck v. United States*, 378 F.3d 1324 (Fed. Cir. 2004) . . . . . . . 7, 13, 14, 15

*Harbuck v. United States*, 58 Fed. Cl. 266 (2003) . . . . . . . . . . . . . . *passim*

*Heritage Minerals, Inc. v. United States*, 71 Fed. Cl. 710 (2006) . . . . . . . 10

*Hill v. United States*, 8 Ct. Cl. 382 (1985) . . . . . . . . . . . . . . . . . . 17, 18

*Johns-Manville Corp. v. United States*, 855 F.2d 1556 (Fed. Cir. 1988) . . 6, 13, 18

*Keene Corp. v. United States*, 508 U.S. 200 (1993) . . . . . . . . . . . . . 13, 14

*Kidwell v. Dep't of Army*, 56 F.3d 279 (D.C. Cir. 1995) . . . . . . . . . . . . 19

*Klamath & Modoc Tribes & Yashookin Bank of Snake Indians v. United States*, 174 Ct. Cl. 483 (1966) . . . . . . . . . . . . . . . . . . . . . 18

*Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545 (Fed. Cir. 1994) . 12, 13, 16

*Lucas v. United States*, 25 Cl. Ct. 298 (1992) . . . . . . . . . . . . . . . . . . 11

*Lyons v. Goodson*, 787 F.2d 411 (8th Cir. 1986) . . . . . . . . . . . . . . . . . . 5

*Matson Navigation Co. v. United States*, 284 U.S. 325 (1932) . . . . . . . . . . . 18

*Nonella v. United States*, 16 Ct. Cl. 290 (1989) . . . . . . . . . . . . . . . . 2, 12, 19

*OSI, Inc. v. United States*, 73 Fed. Cl. 39 (2006) . . . . . . . . . . . . . . . . . 17

*Parissi v. Telechron, Inc.*, 349 U.S. 46 (1995) . . . . . . . . . . . . . . . . . . 5

*Rodgers on Behalf of Jones v. Bowen*, 790 F.2d 1550 (11th Cir. 1986) . . . . . . 5

*Scott Aviation v. United States*, 23 Cl. Ct. 573 (1991) . . . . . . . . . . . . . . 18

*UNR Indus. v. United States*, 962 F.2d 1013 (Fed. Cir. 1992) . . . . . . . . . . 13

*Vaizburd v. United States*, 46 Fed. Cl. 309 (2000) . . . . . . . . . . . . . . . . . 6

*Weber v. United States*, 1995 U.S. App. LEXIS 32084 *3 (Fed. Cir. 1995) . 13, 14

*Williams v. United States*, 71 Fed. Cl. 194 (2006) . . . . . . . . . . . . . . . . 11

*Wrenn v. American Cast Iron Pipe Co.*, 575 F.2d 544 (5th Cir. 1978) . . . . . . 5

**PENDING CASES**

*Ak-Chin Indian Community v. Kempthorne*, No. 06-cv-02245
(D.D.C. Dec. 29, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**FEDERAL STATUTES AND RULES**

28 U.S.C. § 1500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## I. INTRODUCTION

Defendant hereby replies to Plaintiff's Brief in Response To Defendant's Motion To Dismiss pursuant to 28 U.S.C. § 1500. As Defendant explained in its opening brief, Plaintiff's claims in this Court are jurisdictionally-barred because Plaintiff failed to establish that when it filed its lawsuit in this Court its District Court lawsuit had not yet been filed, and it is presently prosecuting the same claim for monetary relief based upon the same underlying operative facts against the United States in two different fora.[1/]

Plaintiff's District Court action asks the court specifically to declare the scope of fiduciary duties applicable to the trust relationship between it and the United States with respect to the government's management and accounting of trust assets, including funds and lands; to subsequently compel the government to provide a "full and complete accounting" of all of its trust assets and funds; and to issue a post-accounting order correcting the cash balances of its trust fund accounts (by way of restitution, disgorgement or other means). *See* Plf's. District Court Compl. ¶¶ 1, 39, 42-43; Prayer for Relief ¶¶ 4, 6.

Similarly, in this Court, Plaintiff seeks money damages against the United States as the result of purported gross breaches of trust related to the Government's conduct as trustee for the land, mineral resources and other assets held for Plaintiff's benefit. *See* Court of Federal Claims Complaint (CFC Compl.) (Dkt. No. 1) ¶ 1. In sum, the underlying operative facts of Plaintiff's claims arise from the Defendant's alleged breach of duties related to its management and accounting of Plaintiff's trust assets and funds. Likewise, the monetary relief sought by Plaintiff in both fora is based upon the same grievance, namely, the management of the very same tribal assets and

---

[1/] In addition to the instant action, Plaintiff is pursuing claims against agents of the United States in *Ak-Chin Indian Community v. Kempthone, et al.*, Civ. No. 06-CV-02245 (JR) (D.D.C.).

moneys held in trust commonly referenced by both complaints.

To defend effectively against Plaintiff's monetary claims, the Government will be required to litigate the same underlying operative facts related to its management and accounting of Plaintiff's trust funds and assets. "Such a result is exactly what section 1500 seeks to avoid: duplicitous, potentially vexatious litigation." *See Nonella v. United States*, 16 Cl. Ct. 290, 293 (1989)(citing *Casman v. Untied States*, 135 Ct. Cl. 647, 649 (1956)).

Plaintiff argues at length in its opposition brief that § 1500 is inapplicable because Plaintiff's claim seeking monetary relief in the form of a restatement of its account balances, equitable restitution or disgorgement does not constitute "money damages" *per se*, but rather is a claim for strictly equitable relief. *See* Plf's Brief at 2. But that is not the test for dismissal pursuant to 28 U.S.C. § 1500. Dismissal is required when a claim pending in another court arises from the same operative facts and seeks the same form of relief, *i.e.* equitable, declaratory or monetary. Here, both of Plaintiff's pending actions seek an award of monetary relief against the Government based on its alleged mismanagement of the Plaintiff's trust assets and funds. As such, this Court lacks jurisdiction over the above-captioned matter.

## II. ARGUMENT

### A. Plaintiff Failed To Establish That Its District Court Case Was Not "Pending" When Its Complaint Was Filed In This Court

As Defendant noted in its motion, it is Plaintiff's burden to establish that this Court has jurisdiction over the action it purports to bring in this Court (Def. Br. at 7), and Plaintiff has failed to do so. Furthermore (without conceding Defendants's position that same-day filings should be deemed "already pending" for section 1500 purposes), the evidence indicates that the District Court Complaint in this case was filed in the morning of December 29, 2006, among the first filings of the day, while the Complaint in this Court was not filed until after 11:41 a.m. that day, after the morning

was over.

Plaintiff's timing argument relies on paralegal Alexis Applegate's professed "certainty" that she filed the Court of Federal claims action before she filed the District Court Complaint; and the assertion that Plaintiff's District Court filing was not "complete" or "perfected" until after the summonses had been issued and the filing fee paid, sometime in the afternoon of December 29. Neither of those grounds has merit. As explained below, the facts contravene Ms. Applegate's "certainty" about the sequence of filing; and neither the facts nor the law support Plaintiff's "perfection" argument.

Plaintiff claims that Ms. Applegate, who performed the filing of Plaintiff's District Court Complaint and its CFC Complaint, made three trips to the District Court on December 29, 2006, the date of filing; that is was not until her third trip that the filing of Plaintiff's District Court Complaint was "completed;" and that the "completion" of the District Court filing occurred after the filing of Plaintiff's Complaint in the Court of Federal Claims. This argument should fail, for several reasons. For one, it is unpersuasive in view of Plaintiff's written discovery responses and certain undisputed facts.[2/] Most importantly, even if there were three trips to the District Court, Plaintiff acknowledges that its District Court Complaint already had been file-stamped when Ms. Applegate returned to the Court to obtain the summonses. In other words, regardless whether Ms.

---

[2/] Plaintiff's responses to Defendant's interrogatories never mentioned a third trip to the Court. (This is so even in response to Defendant's interrogatory requiring Plaintiff to state all facts that support its responses to Defendant's interrogatories regarding the time the District Court and Court of Federal Claims Complaints, respectively, were filed. *See* Exh. 2 to Def. Br, Dkt. 23-3, at p. 11.)) Likewise, Ms. Applegate's affidavit in support of Plaintiff's opposition does not refer to her making three trips to the District Court on December 29, 2006, nor to her supposedly filing the Ak-Chin Complaint during the last of three trips. Instead, the responses to interrogatories referred to two trips to the District Court, and the affidavit asserted merely that the Court of Federal Claims Complaint was filed first, and the District Court Complaint after that. (A copy of that Affidavit is attached to Plaintiff's brief as Exh. D).

Applegate's return trip to pick up the summonses was her second or third trip to the Court, and regardless of when that trip occurred, Plaintiff's District Court Complaint already had been filed (and assigned a case number) before Ms. Applegate picked up the summons.

In addition, Plaintiff's District Court Complaint was only the sixth Complaint filed in the District Court on December 29, 2006, out of a total of thirty-six Complaints. (Def. Br. (Dkt No. 23) at 3.) That, too, indicates Plaintiff's District Court Complaint was filed early in the day, long before the 12:41 p.m. to 2:23 p.m. time frame during which Plaintiff claims the "completion" of the filing occurred. It contravenes common sense to claim that in the time that elapsed between Ms. Applegate's filing the first two Complaints filed in the District Court that day (by any party), and her supposed third trip to the Court to file Plaintiff's District Court Complaint, only four other Complaints were filed, yet thirty more were filed by various parties, *after* Plaintiff's Complaint supposedly was filed in the afternoon. More fundamentally, given Ms. Applegate's 12:41 p.m. e-mail to her colleague G. William Austin, Esquire, asserting that all the Complaints had been filed and she was just waiting for the summonses, Plaintiff's contradictory claim that Plaintiff's District Court Complaint was not filed until after 12:41 p.m. lacks force.[3/]

Plaintiff's assertion that the filing was not "complete" for the purpose of § 1500 until the filing fee was paid also has no merit. First, there is no dispute that the District Court had already assigned a case number to the Complaint, and file-stamped it, and issued the summonses, by the time Ms. Applegate returned to the Court to pick up those summonses. (*E.g.*, Pl. Br., at 5.) It defies logic to claim that a Complaint to which the Court assigned a case number, and *for which the Court*

[3/] Even weaker is the claim that the time frame during which the District Court filing occurred extends as late as 2:23 p.m., particularly because the documentary evidence shows that the process server had served the summonses and Complaints by 3:14 p.m., less than one hour later (*see* Exh. 10 to Defendant's Brief).

*had issued summonses compelling Defendants to respond,* was not "filed" for the purpose of 28 U.S.C. § 1500 by the time the number was assigned and summonses issued, at the latest. Furthermore, various federal appellate courts have rejected the notion that a Complaint or other paper is not deemed filed until after the filing fee is paid. *See, e.g., Rodgers on Behalf of Jones v. Bowen,* 790 F. 2d 1550, 1551-52 (11th Cir. 1986); *Wrenn v. American Cast Iron Pipe Co.*, 575 F.2d 544, 547 (5th Cir.1978)(*implied overruling on other grounds recognized by Casanova v. Dubois,* 304 F.3d 75 (1st Cir. 2002)); *Parissi v. Telechron, Inc*., 349 U.S. 46 (1955)(per curiam)(holding, with respect to 28 U.S.C. § 1917, that untimely payment of a filing fee does not render a notice of appeal invalid); *see also Lyons v. Goodson,* 787 F.2d 411, 412 (8th Cir.1986)(holding that for purposes of the statute of limitations, a complaint is "filed" when it is lodged with the court even though it is technically deficient under local rules).

**B. Plaintiff's Pending District Court and Court of Federal Claims Actions are Based on the Same Underlying Operative Facts**

Plaintiff argues that the facts cited in its District Court Complaint pertaining to the Government's purported mismanagement and administration of its trust property and trust funds are merely "background facts" in support of its ultimate claim for an "equitable accounting" in the District Court. *See* Plf's Brief at 20. An analysis of the District Court Complaint and the Plaintiff's associated proposed case management plan in that action reveals that this is not so. [4/] It is clear that

---

[4/] In the parties' Joint Status Report submitted to the District Court pursuant to Fed. R. Civ. P. 26(f) (attached as Exhibit A), Plaintiff proposes the District Court will first issue declaratory relief in the form of a determination regarding nature and scope of the fiduciary duties applicable to the trust. (*see* Joint Status Report at 6, 10-11). Next, Plaintiff seeks an accounting, to be followed by a decree from the District Court directing a restatement and correction of its trust account balances as reflected by the results of the accounting. *See id.* at 6. Plaintiff anticipates that the results of the District Court accounting will necessarily identify monetary amounts that *should have been* collected, invested or deposited. *See* District Court Compl. ¶¶ 2, 4(d), 21, 43, Prayer for Relief paras. 4, 6**.**

the accounting sought by this Plaintiff in the District Court is merely the vehicle by which the Government's alleged mismanagement will be exposed. Specifically, Plaintiff anticipates the accounting will identify uncollected receipts and deposits as well as under-invested monies derived from the Government's management of Plaintiff's trust property and trust funds. *See* Exh. A at 6, 9; District Court Compl. ¶¶ 2, 4(d), 21, 43. The District Court accounting is intended by Plaintiff to provide the basis to *restate* Plaintiff's trust fund account balances. *See* District Court Compl. ¶¶ 1-2, 43, Prayer for Relief ¶ 6. Thus, the Plaintiff's accounting claim and its supporting operative facts are merely ancillary to the ultimate claim for monetary relief. It is the operative facts surrounding the Government's conduct in managing Plaintiff's trust property that are central to the parties' dispute in both the District Court and this Court.

28 U.S.C. § 1500 divests the Court of Federal Claims of jurisdiction over any previously-filed action if both suits are based on the same claims. *Gaubert v. United States*, 28 Fed. Cl. 597, 599 (1993). When examining whether cases contain the same operative facts, the focus of a court's inquiry should not be on the legal theory of plaintiff's proceedings, but upon the existence of a cause of action arising out of a set of operative facts. *Chavez v. United States*, 14 Cl. Ct. 212, 215 (Cl. Ct. 1988). "'Sameness' is based therefore on the basic underlying events causing the litigation, rather than on the theories of recovery asserted, the identity of the defendants, or the portion of the facts litigated." *Gaubert*, 28 Fed. Cl. at 599. A party cannot separate the same operative facts into two different legal theories which seek the same relief. *See Vaizburd v. United States*, 46 Fed. Cl. 309, 311 (2000). "Claims are the same when they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court." *Harbuck v. United States*, 378 F.3d 1324, 1329 (Fed. Cir. 2004); (citing *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1567 (Fed. Cir. 1988). "In assessing the similarity of claims under section

1500, 'the operative facts need not be identical. It is sufficient that they are substantially the same.'" *Cooke v. United States*, 77 Fed. Cl. 173, 176-77 (Fed. Cl. 2007)(quoting *Harbuck*, 58 Fed. Cl. 266, 269 (2003)). "To pursue a case against the United States in the Court of Federal Claims and another federal court is to pursue simultaneous, dual litigation of a single claim disallowed under section 1500 . . ." *Gaubert*, 28 Fed. Cl. at 600. Here, the operative facts in the Plaintiff's District Court and Court of Federal Claims actions, namely, the Government's alleged breach of fiduciary duties related to its management of Plaintiff's trust property and funds, "are common, interlinked and ultimately unseverable." *See id.* Put another way, the operative facts in both actions require the courts to analyze the same Government conduct related to its management and administration (collection, deposit, investments and disbursement) of monies as well as the management of the Plaintiff's non-monetary trust assets, *e.g.*, leases for mineral rights and non-mineral interests in land (easements, rights-of-way, and building leases derived from Plaintiff's trust property and trust funds).

1. <u>The District Court Complaint</u>

The District Court Complaint seeks redress "of breaches of trust by the United States . . . in the management and accounting of trust assets, including funds and lands belonging to the plaintiff . . ." District Court Compl. ¶ 1. At issue "are funds and other assets, including approximately 21,840 acres of land, held in trust by the United States for the benefit of the Community." District Court Compl. ¶ 2. "[T]he trust funds are comprised of both judgment funds held in trust pursuant to federal law and funds that receive their trust character as proceeds of trust property, specifically the lease and sale of resources or lands that are held in trust." *Id.* Plaintiff asserts that over the years its approximately 21,840 acres of trust land "have produced valuable natural resources and have been leased to third parties and/or to the government for rights-of-way, business uses, and other

purposes." District Court Compl. ¶ 3. Plaintiff's "[t]ribal lands, associated resources, and the income derived therefrom constitute a substantial portion of the assets held by the United States in trust for the Community's benefit." *Id.* at ¶ 13.

The Complaint alleges breaches of trust by the Government with respect to its management of Plaintiff's trust property and trust funds. *See id.* at ¶ 20. It contends that the Government has "grossly mismanaged and continue[s] to grossly mismanage the trust and [has] failed for over a century to carry out the most basic and fundamental trust duties owed to the Community." District Court Compl. ¶ 4. Specific allegations of mismanagement include the Government's failure to provide an adequate accounting of the trust assets, including funds, lands, and resources, *see id.* at ¶¶ 4(a); 20(a)*;* the failure properly to collect, invest, and disburse trust funds belonging the Community, *see id.* at ¶¶ 4(d); 14; the failure to use reasonable skill and care to invest and deposit trust funds in such a way as to *maximize the productivity* of trust property, District Court Compl. at ¶¶ 4(c); 20(f) (emphasis added); and the failure to ensure that trust assets are used for their highest and best use. *Id.* at ¶ 20(g).

At its core, the Plaintiff's District Court case seeks: (1) a declaration as to the Government's fiduciary obligations pertaining to its management and administration of Plaintiff's trust assets, including property and funds (*See* District Court Compl., Prayer for Relief ¶ 4); (2) a judicially-defined accounting, and upon its completion; and (3) an order *restating* the Plaintiff's trust fund account balances in conformity with the results of the accounting. *See id.* at ¶ 6. The District Court accounting will purportedly reveal "what amounts should have been credited to the Community and deposited in these accounts; how much of the Community's property has been diverted or converted to other uses; to what extent the United States failed to maximize profits; or whether the United States has attained fair market value for leases and sale of trust assets." *See* District Court Compl.,

Prayer for Relief ¶ 21.

2. The Court of Federal Claims Complaint

Like the District Court Complaint, Plaintiff's Court of Federal Claims action seeks monetary relief against the United States to redress its allegedly gross breaches of trust as trustee of land, mineral resources and other assets, including trust and judgment funds held for Plaintiff's benefit. CFC Compl. ¶ 1, 31 and 36. The Complaint seeks damages for Defendant's mismanagement of the Community's trust property. *Id.* ¶¶ 1, 29, 34, 39; Prayer for Relief. The mismanagement claims pending here concern the very same assets, such as "natural resources;" interests in tribal land, leases, easements and rights of ways; and trust funds, including settlement and judgment monies that are implicated in Plaintiff's District Court Complaint. *Compare* CFC Compl. ¶¶ 15-17 *with* District Court Compl. ¶¶ 2-3, 13.

Plaintiff's Complaint contains a list of purported fiduciary duties that the United States allegedly breached with respect to the management and administration of its tribal trust property and trust funds. See CFC Compl. ¶¶ 21-22. Specifically, the Plaintiff asserts that the United States breached duties to properly administer the trust (*see* ¶ 22(a)); failed to provide the Plaintiff with a complete and accurate historical accounting of trust assets (*see* ¶¶ 21(d), 22(d)); failed to properly collect and deposit Plaintiff's trust funds (*see* ¶ 22(h)); and failed to invest and deposit trust funds in such a way as to maximize the productivity of the trust property within the constraints of the law (*see* ¶ 21(i) and 22(i)).

3. Plaintiff misapplies relevant case law pertaining to "operative facts"

The Plaintiff argues that the facts pled in support of its District Court case and its Court of Federal Claims case are not sufficiently similar to be considered the "same operative facts" under section 1500. *See* Plf's Brief 8-10. Principally, Plaintiff contends that the facts alleged in its two

complaints are merely "background" facts without a sufficient link to the elements of its claims. *See id.* at 19-21. Plaintiff cites several cases in support of its contentions, all of which-as explained below- are inapposite and distinguishable from the present analysis.

The Government's section 1500 motions to dismiss were denied by this Court in *Heritage Minerals, Inc. v. United States,* 71 Fed. Cl. 710 (2006), and *Cooke v. United States*, 77 Fed. Cl. 173 (Fed. Cl. 2007), because the operative facts implicated "later and different conduct" by the Government. Specifically, in *Heritage Minerals,* this Court denied the Government's motion to dismiss because the underlying facts supporting plaintiff's claims in its District Court action and in the Court of Federal Claims case were temporally distinct from one another. *See* 71 Fed. Cl. 710 at 716 (the operative facts underlying plaintiff's district court claim began in 1958, while the operative facts underlying the Court of Federal Claims action stemmed from subsequent Government conduct beginning in 2001). Similarly, in *Cooke*, the facts underlying the plaintiff's Fair Labor Standards Act (FLSA) claim in the district court action implicated "later and different" conduct than her Equal Pay Act (EPA) claim in the Court of Federal Claims. *See* 77 Fed. Cl. 173 at 177 (plaintiff's "EPA and FLSA claims involve[d] distinct time periods and distinct government conduct").

In *Fire-Trol Holdings, LLC v. United States,* 65 Fed. Cl. 32 (2005), plaintiff challenged the legality of United States Forest Service (USFS) fire retardant procurement regulations in the district court. *See* 65 Fed. Cl. 32 at 33. The plaintiff's complaint in the Court of Federal Claims challenged the invitation for bids and requests for proposals procedures by the USFS for long-term fire retardant. *Fire-Trol Holdings.* 65 Fed. Cl. at 34. The underlying facts in the plaintiff's two actions were not deemed to be substantially the same for purposes of section 1500 because the operative facts in the District Court were based on the facts related to plaintiff's challenge to the USFS's

rulemaking, while those underlying the Court of Federal Claims action were rooted in the substantive challenge to contract procurement. *Id.* at 35. In *Williams v. United States*, 71 Fed. Cl. 194 (2006), a military pay case, the Court denied the Government's section 1500 motion because the plaintiff pled underlying facts in the district court that were "demonstrably different" from those pled in the Court of Federal Claims. 71 Fed. Cl. at 200. Finally, Plaintiff's citation to *Lucas v. United States*, 25 Cl. Ct. 298 (1992) is inapposite because the facts in that case involved "two entirely separate contracts with distinct terms and purposes." 25 Cl. Ct. at 305.

Here, the Court is not presented with temporally-distinct or unrelated Government conduct. Nor is this a situation implicating demonstrably different underlying facts between Plaintiff's two cases. Instead the operative facts, that is, what the Government did with respect to managing Plaintiff's trust property and funds, are the same in either case. In the District Court, Plaintiff seeks an accounting that will identify the uncollected, under-collected and under-invested receipts and investments, followed by *restatement* of its trust fund account balances to reflect those uncollected, under-collected or under-invested receipts and investments. *See* Plf's Brief at 8-9; District Court Compl. ¶¶ 1, 43, Prayer for Relief ¶ 6. Here, Plaintiff seeks monetary damages derived from those very same allegedly uncollected, under-collected and under-invested receipts and investments. *See e,g.*, Complaint, ¶¶ 26, 28-29, 31-34, 38-39. To arrive at an accurate *restatement*, or *damages* amount, both Courts must consider and analyze the same set of operative facts, specifically, the nature of the receipts and other transactions evidencing collections, deposits and investments related to Plaintiff's trust property and funds. Both Courts must analyze what the Government did, how the Government did it, and what, if anything, the Government should have done differently. Moreover, in support of its defense, in each of these cases the Government must present evidence relevant to these very same operative facts. This is precisely the situation section 1500 aims to

prevent. *See Cooke*, 77 Fed. Cl. 173, 175 (Fed. Cl. 2007); *and Nonella*, 16 Cl. Ct. 290, 293 (1989).

### C. Plaintiff's Pending District Court and Court of Federal Claims Actions Seek the Same Form of Monetary Relief Against the Government

Plaintiff argues that its claims in the District Court are not the same as those in this Court because it seeks strictly equitable relief in the District Court, and only money damages here. *See* Plf's Brief at 24-25 (citing *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545 (Fed. Cir. 1994), and *Casman v. United States*, 135 Ct. Cl. 647 (1956)). Yet all of Plaintiff's District Court pleadings and supporting papers request an accounting *plus* a *restatement* of trust account balances. *See* District Court Compl. ¶¶ 1, 4(f), 21, 42-44; Prayer for Relief ¶ 6; *see* Exh. A at 6, 10-11.

Nor can Plaintiff deny that it seeks an accounting in the District Court that will identify, in the first instance, uncollected, under-collected or under-invested income. Plaintiff seeks an accounting that would be tailored to District Court specifications regarding the nature and scope of fiduciary duties owed by the Government to Plaintiff from the management of its trust property, followed by an award of monetary relief. Plaintiff's Complaints each seek the same *monetary* relief arising out of the *same* Government conduct. Nothing more is required to trigger the application of section 1500's jurisdictional bar.

For purposes of § 1500 a claim is defined by the operative facts of the case, not the legal theory on which recovery is sought. *Keene Corp. v. United States*, 508 U.S. 200, 212 (1993); *Harbuck v. United States*, 378 F.3d 1324, 1329 (Fed. Cir. 2004); and *Weber v. United States*, 1995 U.S. App. LEXIS 32084 *3 (Fed. Cir. 1995). As discussed *infra*, "[d]eciding if claims are the same or distinctively different 'requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit.'" *Harbuck* , 58 Fed. Cl. at 269 (quoting *Loveladies*, 27 F.3d at 1549). "In analyzing a claim, the court looks to the set of operative facts alleged and not the legal theory that is argued." *Id.* (quoting *Johns-Manville*, 855 F.2d at 1563). "Just as the operative facts

need not be identical for a claim to be the same, neither does the relief sought. The relief must be merely the same in nature: monetary, injunctive, or declaratory." *Harbuck,* 58 Fed. Cl. at 269*; see also Cooke*, 77 Fed. Cl. at 178. "It is enough that there is some overlap in the relief requested." *Id.* (citing *Keene*, 508 U.S. at 201). Section 1500 thus requires the plaintiff to choose only one judicial forum in which to press its claim against the United States. *See Harbuck*, 378 F.3d at 1328 (citing *UNR Indus. v. United States*, 962 F.2d 1013, 1018, 1021 (Fed. Cir. 1992). "The purpose of section 1500's requirements is to 'force an election where both forums could grant the same relief, arising from the same operative facts,' and thus prevent the Government from having to defend two separate lawsuits based on the same claim.[5/] *Cooke*, 77 Fed. Cl. 173, 178 (quoting *Johns-Manville*, 855 F.2d at 1564). "Similarly, the requirement of distinct relief prevents the Government from having to pay twice for the same alleged wrong." *Id*. Thus, the Court of Federal Claims is barred by § 1500 from entertaining the action if a claim pending in another court arises from the same operative facts and seeks the same form of relief." *Weber*, 1995 U.S. App. LEXIS 32084, *4.

1. Plaintiff's distinction between "money damages" and "monetary relief" is ill-founded

Despite assertions in its brief that its District Court action merely seeks "a general accounting of all assets in trust" (Plf's Brief at 24), and that it pursues "strictly money damages in the CFC" (*Id.*), the Plaintiff's pleadings expose that its true intention is to receive monetary compensation for the Government's alleged shortcomings related to the management of Plaintiff's trust property and funds. *See* Plf's Brief 34 (Plaintiff admits that it seeks restatement of the trust fund account balances and that principles of equitable restitution would involve a payment or "return" of specific monies

[5/] As set forth in the Government's opening brief, the Government does not concede that the District Court has jurisdiction to award the monetary relief Plaintiff seeks in that Court. The validity of Plaintiff's monetary claim in that forum is not relevant to this Court's determination of its own jurisdiction. *See* Government's Motion to Dismiss (Dkt. No. 23) at n.1.

to the Tribe). Plaintiff nevertheless argues that because this request for so-called "equitable" monetary "relief" is not the same as "money damages," section 1500 is inapplicable. *Id.* at 33-34. (citing *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 797 (Fed. Cir. 1993); *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 747 (D.C. Cir. 1995). Plaintiff is mistaken. Section 1500 does not turn on a narrow definition of "money damages." "Congress did not intend the statute to be rendered useless by a narrow concept of identity providing a correspondingly liberal opportunity to maintain two suits arising from the same factual foundation." *Keene Corp.*, 508 U.S. at 213; *Weber*, 1995 U.S. App. LEXIS 32084, * 5. Instead, the statute was enacted to protect the Government from having to defend against the same claim with the risk of duplicate liability. *See Harbuck*, 378 F.3d at 1328; *Weber*, 1995 U.S. App. LEXIS 32084, *4-5; *Cooke*, 77 Fed. Cl. at 178; *Harbuck*, 58 Fed. Cl. at 270. It is the form of relief that matters. *See Cooke*, 77 Fed. Cl. at 178; *Harbuck*, 58 Fed. Cl. at 269.

Plaintiff's claim for monetary relief in the District Court implicates money that was not, but should have been, collected. *See* District Court Compl. ¶¶ 2, 4(d), 21, 43. The Federal Circuit affirmed the section 1500 dismissal of the plaintiff's claim for monetary relief involving similar circumstances in *Harbuck*. 378 F.3d 1324. There, the plaintiff's claims in the district court and in the Court of Federal Claims sought monetary relief in the form of the difference between what the plaintiff actually earned and what she would have earned at the GS-12 level from January 1990 until she was restored to her proper and correct grade. *Id.* at 1329. The fact that the plaintiff in *Harbuck* sought "back wages" to reflect monies that should have been hers all along was not dispositive as to whether section 1500 applied. Rather, section 1500 was violated in that case because the plaintiff's claims for money under the Federal Claims Equal Pay Act and Title VII each arose out of the same operative facts, specifically, the Air Force's allegedly discriminatory employment

practices (based on gender). *Id.* at 1328. Dismissal in *Harbuck*, as should be the case here, did not turn on a narrow interpretation of the concept of "money damages." It is sufficient that there is overlap in the requested *form* of relief, "monetary, injunctive or declaratory." *Harbuck*, 58 Fed. Cl. at 269; *Cooke*, 77 Fed. Cl. at 178.

Plaintiff's reliance on *Bowen v. Massachusetts*, 487 U.S. 879 (1988) undercuts, rather than supports, its arguments in the context of section 1500. *Bowen* specifically affirmed an award of money to the State of Maryland arising out of a suit wherein Maryland argued that it was already entitled to the funds. 487 U.S. 879 (district court has jurisdiction to award specific equitable relief, including, for example, an order providing for the reinstatement of an employee with back pay, or for the recovery of specific property or monies). It matters not whether the award sought by the Plaintiff in this case is "money damages" *per se*. Instead, the inquiry must be whether Plaintiff has asserted a claim seeking *monetary* relief in the District Court, and whether such claim is based upon the *same* operative facts as those asserted here. *See Harbuck*, 58 Fed. Cl. at 269. The correction of Plaintiff's trust fund account balances involves more than simply correcting a mathematical error on an account ledger; it involves a cash infusion, and it involves monetary relief.

2. Plaintiff's claims for relief are not distinctly different

Plaintiff also argues that its claims are not the same because it seeks "strictly equitable relief in the District Court-a general accounting of all assets held in trust for the Tribe . . . and strictly money damages in the CFC." *See* Plf's Brief at 24. Plaintiff offers *Loveladies* and *Casman* in support of the proposition that its claims are distinctly different for purposes of section 1500. *Id.* Plaintiff's reliance on these decisions is misplaced. *Loveladies* involved an Administrative Procedure Act (APA) challenge in District Court to the denial of its request for a fill permit pursuant to § 404 of the Clean Water Act from the Army Corps of Engineers. *See* 27 F.3d at 1547. By

contrast, its Court of Federal Claims action implicated a taking of private property, seeking monetary damages pursuant to the Fifth Amendment to the United States Constitution. *Id.* The Court held that the plaintiff's District Court claim seeking invalidation of the Government's permitting decision was distinctly different from its claim in the Court of Federal Claims for monetary damages related to a taking of its property. *Id.* at 1554.

Similarly, in *Casman*, the Court held that the plaintiff's District Court claim demanding reinstatement of employment was distinctly different from his claim in this Court seeking back pay owed as the result of the wrongful separation from that position. *See* 135 Ct. Cl. at 648. "In *Casman* only injunctive relief was sought in a district court and only monetary relief was sought at the United States Court of Claims." *Harbuck*, 58 Fed. Cl. at 269 n.6. Here, unlike the situations in *Loveladies* and *Casman*, Plaintiff does not seek entirely different relief in the two fora. Plaintiff anticipates recovery of monetary relief in the District Court based on the results of the District Court accounting. *See* District Court Compl. ¶¶ 1, 42-43; Prayer for Relief ¶ 6. Plaintiff's demand for "equitable restatement" of its trust fund account balances will not implicate monetary relief in different form or amount from its request in the Court of Federal Claims. *Cf. Cooke*, 77 Fed. Cl. at 178 (the Government is not subjected to the risk of double liability when both courts can grant the full amount of requested relief in different form and measure.); *see also OSI, Inc., v. United States*, 73 Fed. Cl. 39, 45 (2006) (Plaintiff's district court action for response costs allowable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") did not authorize the form and measure of takings damages sought by plaintiff in the Court of Federal Claims). Rather, the monetary relief sought in both fora by this Plaintiff depends upon and is rooted in an examination of precisely the same underlying operative facts, namely how the Government managed the Plaintiff's trust property and trust funds and whether the Government's conduct should

yield monetary relief in the Plaintiff's favor. These underlying facts are "diffuse and intricately woven throughout each of plaintiff's claims." *Gaubert*, 28 Fed. Cl. at 600.

3. Plaintiff seeks monetary compensation in both courts for the difference between what the Government actually collected, deposited and invested and what the Government should have collected, deposited and invested

As set forth in Section B, above, Plaintiff's District Court Complaint seeks an order *restating* its trust fund account balances correctly to reflect amounts that should be in the account had the Government properly managed, collected, deposited and invested monies derived from the corpus of its trust property. That determination is to be made at the completion of the District Court accounting. *See* District Court Compl. ¶¶ 42-43; Prayer for Relief ¶ 6. Plaintiff's claim for a *restatement* of its account balances in the District Court and its money damages claim here each arise out of and depend upon an adjudication of the Government's management, collection, deposit and investment of Plaintiff's trust receipts. Plaintiff's District Court claim seeking a restatement of its trust fund account balances embodies *not only* a request for affirmative relief (*i.e.*, an accounting) but also necessarily seeks *all* of the monetary relief requested in the Court of Federal Claims Complaint. *See Hill v. United States*, 8 Ct. Cl. 382, 387 (1985). Plaintiff anticipates the District Court accounting will reveal Government mismanagement of its trust property and trust fund accounts (the very same mismanagement alleged in this Court) followed by an order for a monetary infusion to correct its account balances.

Plaintiff argues that the application of section 1500 in this case would be unfair because it would force the Plaintiff to choose between seeking its equitable accounting in the District Court, and seeking money damages in compensation for Government mismanagement of its trust property and trust funds here. Plf's Brief at 24-25 (citing *Klamath & Modoc Tribes & Yashookin Bank of*

*Snake Indians v. United States*, 174 Ct. Cl. 483, at *3 (1966). It asserts that only the District Court has authority to perform a general equitable accounting regardless of any determination as to the Government's liability. Plf's Brief at 26-27.

Yet the principle that this Court lacks the power to order a general accounting (consistent with *Klamath*, *supra*), does not alter the fact that Plaintiff seeks in both Courts monetary relief based on the same operative facts. Moreover, the application of section 1500 follows as a result of Plaintiff's own decisions as to the claims it wishes to pursue and the Complaints it chose to file. Plaintiff finds itself in a situation entirely of its own making. "The purpose of the statute [section 1500] includes avoiding '[t]he possibility of inconsistent judicial resolution of similar legal issues[,] . . . unfair burden to the defendant, and unnecessary crowding of this Court's docket and general administrative chaos.'" *Scott Aviation v. United States* 23 Cl. Ct. 573, 575 (1991) (citing *Johns-Manville Corp.*, 855 F.2d at 1563, quoting *City of Santa Clara v. United States*, 215 Ct. Cl. 890, 893 (1977)). "The Supreme Court has concluded that § 1500's restriction on Claims Court jurisdiction requires 'an election between a suit in the [Claims Court] and one brought in another court. . . ." *Id.* (quoting *Matson Navigation Co. v. United States*, 284 U.S. 325, 356 (1932)); *see also Hill*, 8 Cl. Ct. at 385 ("The purpose of this section [1500] is to require the plaintiff to make an election between a suit filed in the Claims Court and one brought in another court when the same basic 'claim' is prosecuted against the United States, or an agent of the United States, in both courts simultaneously"). Plaintiff *elected* to pursue its claim for monetary relief in the District Court as a companion to its claim for the so-called "equitable accounting." Plaintiff cannot now be heard to complain that its own election has deprived itself of an additional forum to air its grievances.

In an apparent attempt to save itself from the constraints of section 1500, Plaintiff argues that its claim seeking a restatement of its trust fund account balances is really more akin to a contingent

future claim for monetary relief. Plf's Brief at 28 (citing *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir 1995)). *Kidwell* is distinguishable from the case at hand because, unlike Plaintiff's District Court Complaint here, plaintiff's complaint there did not seek any monetary relief. "Instead, it asked that 'the defendant be required to correct plaintiff's army records to reflect a military retirement in pay grade E-4." *Kidwell*, 56 F.3d at 283. The Plaintiff's District Court Complaint here does not simply "hint" at a future monetary reward, it specifically requests a *restatement* of its trust fund account balances to reflect the balance that should be there, including monies that the Government failed to, but should have, collected, deposited and invested. *See* District Court Compl. ¶¶ 1, 42-43; Prayer for Relief ¶ 6.

Plaintiff's claims in the District Court seek monetary relief arising out of the same Government conduct at issue in this Court. *See Nonella*, 16 Cl. Ct. 290 (1989) (monetary claims made in the District Court against the United States in tort arising from low-level supersonic Navy overflights was the same as Fifth Amendment taking claim in the Court of Federal Claims because they implicated the same Government conduct); *and Chavez*, 14 Cl. Ct. 212 (1988) (monetary claims made in the District Court against the United States in tort arising from the construction of underground pipeline were the same as breach of contract claim in Court of Federal Claims for purposes of section 1500 because they implicated the same Government conduct). As such, Plaintiff must prosecute to its conclusion its election to seek monetary relief in the District Court, and forgo its claim here.

## III. CONCLUSION

In sum, in the District Court case, which appears to be first filed, the Plaintiff seeks a *restatement* of its trust fund account balances to compensate for purported mismanagement by the Government regarding its trust property and trust funds. Plaintiff intends to use its District Court

case to identify and define the Government's mismanagement of its trust property and trust funds, followed by an accounting and award of monetary relief. Plaintiff seeks the same results and relief here. Both cases require analysis of the *same* operative facts. Because Plaintiff ultimately seeks monetary relief from the Government in both these cases, section 1500 applies and as such this Court should grant Defendant's motion and dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted this 21st day of September, 2007

RONALD J. TENPAS
Acting Assistant Attorney General

*s/ Laura M. L. Maroldy*
LAURA MAROLDY
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 514-4565
Fax: (202) 353-2021

Attorney of Record for Defendant

OF COUNSEL:

TERESA DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington D.C. 2007

ELISABETH BRANDON
Office of the Solicitor
United States Department of the Interior
Washington, DC 20240