IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AK-CHIN INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-0932L-ECH |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA | ) | **Electronically filed November 21, 2007** |
| Defendant. | ) | |

**DEFENDANT'S POST-EVIDENTIARY HEARING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

RONALD J. TENPAS
ACTING ASSISTANT ATTORNEY GENERAL

Laura M. L. Maroldy
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 514-4565
Fax: (202) 353-2021

Attorneys for Defendant

OF COUNSEL

ELISABETH BRANDON
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

# TABLE OF CONTENTS

I. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 1

II. PERTINENT UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . 2

III. MS. APPLEGATE'S TESTIMONY ABOUT THE SEQUENCE OF FILING AND RELATED EVENTS WAS NOT PERSUASIVE, IN LIGHT OF THE OTHER EVIDENCE . . . . . . . . . . . . . . . . . . 8

A. The Statements that Plaintiff's District Court Filing Was Not "Complete" Until the Retrieval of the Summonses, and Related Testimony About the Course of Events Relating to the December 29th Filings, Contradicts the Witness's Previous Statements . . . . . 8

B. Additional Discrepancies Exist Between the Witness's October 24th Testimony and Her Previous Statements About the Matters As Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

C. The Evidence as a Whole Does Not Support Plaintiff's Assertions That Its District Court Complaint Was Not "Filed" Until Ms. Applegate's "Final" Trip to the Court to Pick Up the Summonses . . 25

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Pursuant to this Court's Order of October 24, 2007, Defendant submits this supplemental brief regarding the order and time of filing of Plaintiff's District Court and Court of Federal Claims (at times hereinafter "CFC") Complaints, respectively, on December 29, 2006. As the facts set forth below establish, Plaintiff has not carried its burden to show that its Court of Federal Claims Complaint was filed before it filed its District Court Complaint on December 29. For all of the reasons set forth in Defendant's motion to dismiss pursuant to 28 U.S.C. § 1500, Plaintiff cannot establish that this Court has jurisdiction over its claims, and its Complaint should be dismissed.

## I. PROCEDURAL BACKGROUND

Defendant submitted its motion to dismiss pursuant to Section 1500 on August 6, 2007. After additional briefing by both parties, this Court held a evidentiary hearing on October 24, 2007, regarding the order and timing of the Ak-Chin Indian Community's District Court and CFC December 29, 2006, filings. The evidentiary hearing was immediately followed by oral argument on Defendant's motion to dismiss. At the conclusion of the October 24, 2007, proceeding, this Court ordered the parties to submit, by November 9, 2007, their respective briefs regarding the timing and sequence of the Ak-Chin filings, in light of the additional evidence received at the hearing. Both parties were to submit reply briefs by November 14.

Following a motion by Defendant seeking an extension of time due to an emergency that prevented undersigned counsel from finalizing and filing Defendant's opening brief on November 9 (Dkt. No. 38), the Court modified the briefing schedule. The Court directed Defendant to file its opening brief, combined with its reply to Plaintiff's opening brief, by November 21, 2007; and Plaintiff to file its reply to Defendant's filing by November 29.

Accordingly, this paper constitutes Defendant's opening post-hearing brief, combined with its reply to Plaintiff's opening post-hearing brief.

## II. PERTINENT UNDISPUTED FACTS

On December 29, 2006, Alexis Applegate, a paralegal employed by the Kilpatrick Stockton, LLP law firm, filed three Complaints in the District Court for the District of Columbia ("the District Court"), on behalf of the Passamaquoddy Tribe of Maine, the Salt River Pima-Maricopa Indian Community, and the Ak-Chin Indian Community ("Ak-Chin" or "the Ak-Chin"). All of those tribal clients are represented by Ms. Applegate's employer, the Kilpatrick Stockton firm. Also on December 29, 2006, Ms. Applegate filed four Complaints in the Court of Federal Claims, on behalf of, respectively, the three tribal litigants identified above in this paragraph, and a fourth tribal client, the Tohono O'Odham Nation. (*See, e.g.*, Plaintiff's Hearing Exhibit N, Plaintiff's Responses to Interrogatories, Response No. 11, at 11.)

There is no dispute that both of Plaintiff Ak-Chin's Complaints were filed on the same day. There is no dispute that the Court of Federal Claims does not track the time of filing of papers filed during the hours the Clerk's office is open on a given day, and that the case numbers assigned by the Clerk do not necessarily correspond to the order in which Complaints were filed on a given day.

In contrast, the District Court assigns case numbers to new Complaints in the order in

which the Complaints are filed. This too, is undisputed.[1/] The District Court's docket for December 29, 2006, the date of filing, shows that Plaintiff's Complaint filed in the District of Columbia was only the sixth Complaint filed there that day by any party, out of a total of more than thirty-five Complaints filed in the District Court that day. *See* Exhibit 3 to Defendant's Motion To Dismiss (Dkt. No. 23); *also see* Defendant's Hearing Exhibit 1.[2/]

---

[1/]Alexis Applegate testified that she and other members of her "team" at Kilpatrick Stockton had telephone conversations with District Court personnel, who informed them that the District Court assigns case numbers to Complaints in the order in which they are filed.. HT 17:12-17:15. Counsel and former counsel for the United States in Plaintiff's District Court action were told the same thing, in their (separate) telephone conversations with District Court personnel. In addition, undersigned counsel spoke by telephone with the Chief Deputy for Operations, Greg Hughes, on October 22, 2007, regarding the assignment of case numbers. In that telephone conversation, Mr. Hughes confirmed that the case numbers assigned on a given day are assigned sequentially in the order in which the Complaints are filed. Mr. Hughes also stated that that had been the Court's practice since at least 1975.

[2/]In accordance with the Court's instructions at the conclusion of the October 24th hearing, Defendant does not attach duplicate copies of either of those documents here. Defendant notes that Defendant's Hearing Exhibit 1, generated from the District Court's PACER system on October 23, 2007, and admitted into evidence October 24, does not include the case styled *Verner v. Office of Personnel Management*, which was Case No. 06-cv-02244, filed December 29, 2006. The reason the case appears in the docket listing submitted as Exhibit 3 to Defendant's Motion To Dismiss (Dkt. 23), but does not appear on Defendant's Hearing Exhibit 1, is that it was voluntarily dismissed with prejudice on June 21, 2007, according to the online PACER docket for the *Verner* case. (See Exhibit A hereto, a copy of that docket.). As a result of that case being dropped from the list, the *Ak-Chin* case, Case No. 06-cv-02245, appears in the fifth position on the page in Defendant's Hearing Exhibit 1, instead of the sixth position, as in Exhibit 3 to Defendant's Motion To Dismiss. Contrary to what Plaintiff claims in its opening post-hearing brief, the dismissal of the *Verner* case, assigned number 06–cv- 02244, does not alter the fact that the *Ak-Chin* case, to which the District Court assigned case number 06–cv-02245, was only the sixth Complaint filed in the District Court on December 29, 2006, for the reasons Defendant explains above in the body of this brief.

Also contrary to Plaintiff's assertion in its post-hearing brief, the United States has not argued that "the filing of Complaints in the District Court [was] distributed evenly throughout the day" on December 29, but simply that the fact that so many Complaints were filed on December 29th after the Ak-Chin Complaint was filed suggests the Ak-Chin Complaint was filed earlier in the day, rather than later. (*See* Exhibit 3 to Defendant's Motion To Dismiss.) What is clear, as Defendant explains in this brief, is that the Ak-Chin Complaint was among the very first

Complaints filed on behalf of the Passamaquoddy Indian Tribe of Maine and the Salt River Pima-Maricopa Indian Community, respectively, were the first and second Complaints filed on December 29, 2006, in the District Court, by any party, and were assigned Case Nos. 06-cv-02240 and 06-cv-02241, respectively. (*See* Ex. 3 to Defendant's Motion To Dismiss; *see also* Defendant's Hearing Ex. 1). One day earlier, December 28, 2006, Plaintiff's lawyers filed a Complaint in the District Court against various federal parties, on behalf of another tribal client, the Tohono O'Odham Nation, styled *Tohono O'Odham v. Kempthorne*, *et al.* HT 44:5-7. That case was assigned case number 06-cv-02236. *(See, e.g.,* Exhibit B hereto, a copy of the Civil Cover Sheet for the District Court Complaint filed on behalf of the Tohono O'Odham Nation, bearing the Court's date-stamp and the case number.)

Plaintiff claims for the first time in its opening post-hearing brief that the District Court's dockets showing the order of filing and case numbers assigned to the cases filed December 29, 2006, should be disregarded, with respect to the Ak-Chin Complaint, because the document generated from the Court's PACER system on October 23, 2007, ten months after the filing date in question, and admitted to evidence as Defendant's Hearing Exhibit 1, lists fewer cases than the listing submitted with Defendant's motion to dismiss as Exhibit 3 thereto. However, the fact that the listing of open cases was reduced simply reflects the fact that certain cases have been disposed of between December 29, 2006, and October 23, 2007. (*See* footnote 2, above.). It does not alter the pertinent facts about the order of filing, the case numbers assigned, or the number of cases filed.

More importantly, Plaintiff has adduced no evidence whatsoever to refute the fact that the

---

Complaints filed in the District Court on December 29.

Passamaquoddy and Salt River Complaints were the first filed in the District Court on December 29, or that the Ak-Chin Complaint, likewise, was among the first filed (and was in fact the sixth filed). It is undisputed that Plaintiff's December 29, 2006 filing on behalf of the Passamaquoddy Tribe of Maine was assigned Case No. 06-cv-02240. The case to which the immediately preceding number, Case No. 06-cv-02239, was assigned, was filed one day earlier, December 28, 2006. That case is styled *Nez Perce Tribe, et al. v. Kempthorne, et al.* (A photocopy of the docket for that case, from the District Court's PACER system, showing the case number and date of filing, is attached hereto as Exhibit C. The information about the date of filing for that case also is available via the PACER system on the District Court's website, www.dcd.uscourts.gov.)

Likewise, the case filed by Plaintiff's counsel on behalf of the Tohono O'Odham Nation on December 28, the date before the filings in question here, was assigned Case No. 06-cv-02236, just four numbers lower than Plaintiff's counsel's filing in the District Court on behalf of the Passamaquoddy Tribe the next day, December 29. Neither the date of filing, nor the case number assigned to the Tohono O'Odham District Court case, are in dispute.

In other words, since the Passamaquoddy case filed on December 29 was assigned a number just one number higher than a case filed on December 28 (and just four numbers higher than a case Plaintiff's counsel themselves filed on December 28), there can be no question that it was the first case filed in the District Court on December 29, and that the Ak-Chin Complaint, to which the District Court assigned a case number just five numbers higher than Passamaquoddy's on December 29, 2006, was also among the first filed in the District Court on that day.

Similarly, the District Court cashier's receipt for the filing of the Ak-Chin Complaint in the District Court bears a serial number (4616001258) only seven numbers higher than the

receipt issued on December 29 for the Passamaquoddy's filing fee (4616001251); and only six numbers higher than the receipt issued for the Salt River Pima-Maricopa's filing fee (4616001252). *See* Defendant's Hearing Exhibit 8; and HT 66:15-69:18. (The receipt numbers are also set forth in the electronically-available PACER dockets for these cases, respectively, as part of the "Docket Text" corresponding to the first entry for each Complaint, which describes the respective Complaints. As an example, a copy of the pertinent portion of the docket for Plaintiff's District Court Complaint (pages 1-3), showing the receipt number in the docket text for the first docket entry, is attached hereto as Exhibit D.)

In addition to the undisputed facts summarized above and established by District Court records, the following additional pertinent undisputed facts are established by Plaintiff's contemporaneous e-mail communications, and by the affidavit of service relating to Plaintiff's District Court Complaint.

At 8:59 a.m. on December 29, 2006, counsel of record Keith Harper sent Ms. Applegate an e-mail message, telling her to file the District Court Complaints first, while changes were made to the CFC Complaints.[3/]

At 11:41 a.m. on December 29, 2006, lawyer Justin Guilder of the Kilpatrick Stockton firm was still gathering information needed for the Complaint to be filed in the Court of Federal Claims on behalf of Plaintiff, Ak-Chin. (Plaintiff's Hearing Exhibit H (AKCHIN00130); *see also* Plaintiff's Hearing Exhibit N, at 10.)

---

[3/] *See* Defendant's Hearing Exhibit 8, at PAS00211 (the same document, produced in discovery in this case and attached to Defendant's motion to dismiss as Exhibit 4 thereto, bears the number AKCHIN00218); *see also, e.g.,* Plaintiff's Hearing Exhibit N (Plaintiff's Responses to Interrogatories) Response No. 11, at 13).

At 12:41 p.m. on December 29, 2006, Ms. Applegate reported to lawyer William Austin of her firm via e-mail that all of the Complaints had been filed and she was just awaiting "the summons." (Plaintiff's Hearing Exhibit J; *see also* HT 43:7-18; and Plaintiff's Hearing Exhibit N, Response No. 8, at 9.)

Plaintiff's District Court Complaint and summonses were served on certain federal defendants by 3:14 p.m. on the same day the Complaint was filed, December 29. (Defendant's Hearing Exhibit 6; *see also* HT 49:13-15.)

These undisputed facts, established by contemporaneous documentary evidence, show there was a directive by lead counsel on the date of filing to file the Ak-Chin District Court Complaint first because changes had to be made to the CFC Complaints of Plaintiff and others.[4/] They show that, consistent with lead counsel's directive, Plaintiff's Complaint was among the very first Complaints filed in the District Court on the date in question, out of over thirty-five Complaints filed that day.

Most importantly, the undisputed facts establish that Plaintiff's Court of Federal Claims Complaint was not filed until some undetermined time after 11:41 a.m. on December 29. That, in turn, means that unless Plaintiff can show that its District Court Complaint was not filed until

---

[4/]Plaintiff asserts in its opening post-hearing brief that Mr. Harper's documented instruction to Ms. Applegate to file the District Court Complaints first, while the CFC Complaints were being worked on, is a "complete red herring," on the ground that "Ms. Applegate testified that she did not even see Mr. Harper's 8:59 a.m. e-mail on December 29th and thus could not have heeded this instruction." In fact, Ms. Applegate's testimony on those points was much less definite. What she said was, "I don't recall, until we started going through the discovery process, ever seeing this e-mail. I think it was at a time, as I mentioned earlier, that I was away from my computer." HT 30: 12-15. There is no dispute, in any event, that the e-mail containing the instruction to file the District Court Complaints before the CFC Complaints was sent.

after the undetermined post-11:41 a.m. time when the CFC Complaint was filed, it has not met its burden with respect to the order of filing. Furthermore, given that on the date of filing itself, Ms. Applegate reported at 12:41 p.m. that all of the Complaints had been filed, the documentary evidence summarized above means it is highly unlikely that Plaintiff's District Court Complaint was, in fact, filed after its CFC Complaint on December 29. In short, Plaintiff has failed to show by a preponderance of the evidence that its Court of Federal Claims Complaint was filed before its District Court Complaint. Defendant explains further, *infra*.

## III. MS. APPLEGATE'S TESTIMONY ABOUT THE SEQUENCE OF FILING AND RELATED EVENTS WAS NOT PERSUASIVE, IN LIGHT OF THE OTHER EVIDENCE

### A. The Statements That Plaintiff's District Court Filing Was Not "Complete" Until The Retrieval Of The Summonses, And Related Testimony About The Course Of Events Relating To The December 29th Filings, Contradicts The Witness's Previous Statements

Faced with the undisputed facts set forth above, particularly Ms. Applegate's report at 12:41 p.m. that all of the Complaints had been filed, and the fact that the Ak-Chin's CFC Complaint could not have been filed until sometime after 11:41 a.m., because Plaintiff's lawyers were still working on it at that time, Plaintiff has asserted in its briefing that the filing of the Ak-Chin District Court Complaint was not "complete" until Ms. Applegate returned to the Court at some point after 12:41 p.m. to obtain the summons.

Conforming to that gloss placed on the events of December 29 by Plaintiff's counsel, Ms. Applegate's October 24, 2007, accounts of her activities that day were peppered with references to "completing" the Ak-Chin District Court filing, in an effort to push back the time by which the District Court Complaint might deemed to be filed. For example, Ms. Applegate testified on October 24, 2007, that when she presented the Ak-Chin Complaint to the District Court intake

clerk for filing, the clerk told her "she was too busy to complete the filing, and I would have to come back at a later time. She would call me to pick up and file the complaint." HT 14: 20-24. Likewise, she said that when she went to the District Court to file Plaintiff's Complaint "there was a line, and the intake clerk seemed somewhat frantic and asked for me to drop off the materials and come back." HT 34:6-9.

The witness's efforts to characterize the Ak Chin's District Court filing as not "complete" until she returned to the Courthouse to pick up the summonses were unpersuasive, for several reasons. For example, on December 29, 2006, in communications with colleagues about the status of the filings, there was no issue or question about "completing" any of the filings. On the contrary, Ms. Applegate's 12:41 p.m. e-mail to attorney Bill Austin was unequivocal, and did not express any uncertainty whatsoever about whether Plaintiff's Complaint was filed by that time. What Ms. Applegate reported to Mr. Austin was that "we have filed [all of the tribal trust complaints] but I am waiting for the summons - we filed most of them today."[5/]

And as Ms. Applegate candidly admitted to Kilpatrick Stockton attorney Catherine Munson in an e-mail in April 2007, regarding the "Tribal Trust Case Filings," after Defendant raised the order-of-filing issue, she did not, in fact, know whether she filed the various CFC Complaints first, or the District Court Complaints:

---

[5/] *See* HT 43: 8-18; *see also*, Plaintiff's Hearing Exhibit N, Response No. 7 at 8, which states that Ms. Applegate's statement "we have filed them" referred to all of the Complaints. As Ms. Applegate explained in response to a question from the Court during the hearing, the statement that "most of" the Complaints were filed December 29 referred to the fact that the Complaint filed in the District Court for the Tohono O'Odham Nation had been filed Thursday, December 28, 2006. HT 44: 2-7.

> "This isn't very precise, but from the below chain of e-mails to Bill [Austin], it looks like I took them [the tribal trust Complaints] over to the D.D.C. and picked them up again between 12:41 and 2:23. ***I think I went to the CFC first, but I am not certain about that***."

Defendant's Hearing Exhibit 12, PAS00483 (emphasis added).[6]

The "below chain of e-mails" Ms. Applegate referred to in that April 2007 message included the e-mail in which Ms. Applegate informed Mr. Austin, at 12:41 p.m. on December 29 that all of the Complaints had been filed but she was "waiting for the summons...." *See* Plaintiff's Hearing Exhibit J.

Similarly, in a separate April 2007 e-mail exchange between Ms. Applegate and Ms. Munson regarding the order of filing of the Complaints she had filed on December 29, Ms. Applegate recalled,

> "I had to drop them off with the intake clerk so she could process them and then come back for them. So ***even if I could remember what time I went over there ... we would have no idea what time the clerk actually filed them in the DDC***. As for the CFC, I know I went over and we were missing something so I had to come back to the office and get it, but I just don't know what time all of this happened."

(Defendant's Hearing Exhibit 12, at PAS00482; emphasis added.)

In her October 24 testimony, Ms. Applegate suggested that in the e-mail quoted immediately above in this brief, she was referring only to the Passamaquoddy and Salt River Complaints, which Ms. Munson had enquired about specifically, in the e-mail "string." HT 71:13-16. Yet that same April 2007 e-mail communication has relevance to the order of filing of the Ak-Chin's Complaints as well, for at least four reasons.

First, it is an admission that, regardless of what time Ms. Applegate went to the District

---

[6] Contrary to Plaintiff's assertion in its opening post-hearing brief, this e-mail and the one bearing document number PAS00482 and quoted below are part of the record, as part of Defendant's Hearing Exhibit 12. (See, e.g., HT 57:18-23 and 60:17-62:2.)

Court with the various Complaints on December 29, she left them with the intake clerk and Ms. Applegate has "no idea" what time any Complaint was "actually filed" by the Clerk of the District Court on December 29. This is not, as Plaintiff suggests in its opening post-hearing brief, simply a matter of not having time-stamped Complaints; instead, it undermines the witness's professed certainty about when the District Court Complaints were filed, in relation to the Court of Federal Claims Complaints: Ms. Applegate stated to Ms. Munson that she could not remember what time she went to the District Court, nor did she know when the clerk actually filed the Complaints Ms. Applegate left with her for filing. Second, consistent with Ms. Applegate's 12:41 p.m. e-mail to Mr. Austin on the date of filing, and contrary to her October 24, 2007, testimony, there is no suggestion in Ms. Applegate's April 2007 note to Ms. Munson that any of the filings she submitted to the District Court intake clerk were "incomplete" until Ms. Applegate returned to the District Court to retrieve them.

Third, contrary to Ms. Applegate's October 24, 2007, account of events at the hearing on this issue ("So I took those [the Passamaquoddy and Salt River Complaints] to the district court. Those were prepared for me while I waited. I did not have to return for those." HT 19:1-3 *and* HT 33: 24-25: "I went to the district court and filed those in one trip."), her April 2007 statements to colleague Catherine Munson ("I had to drop them off with the intake clerk so she could process them and then come back for them.") indicate that the Passamaquoddy and Salt River District Court filings were not handled differently from the way Ms. Applegate now says the Ak-Chin Complaint was handled. Instead, they, too, were left with the Clerk to be filed. That is consistent with the fact that, based on the case numbers the Clerk of the District Court assigned to them, they were filed close in time to each other: the Passamaquoddy and Salt River

Complaints as the first and second filings of the day by any party; and the Ak-Chin filing as the sixth, out of a total of more than thirty-five that day. *(See* Exhibit 3 to Defendant's Motion To Dismiss.) It is also consistent with the fact that the respective receipts for the filings fees for those District Court Complaints (Defendant's Hearing Exhibit 8, collectively), also appear to have been issued close in time to each other, based on their serial numbers, which closely follow in sequence, as explained in Part II, *supra*. And it is inconsistent with Plaintiff's assertions, after Defendant raised the order-of-filing issue, that the Ak-Chin District Court filing was handled differently from the others, and required two trips to the Court to "complete."

In other words, the filing of the Ak-Chin Complaint was not anomalous, or bifurcated in some way, as suggested in Plaintiff's briefing on the motion to dismiss, and in Ms. Applegate's October 24 account of events. Instead, all three Complaints were handled in a similar fashion: they were provided to the District Court's intake clerk for filing, and the summonses were retrieved later.

Fourth, Ms. Applegate's April 2007 statement to Ms. Munson about having to return to the office from the CFC ("As for the CFC, I know I went over and we were missing something..."), (Defendant's Hearing Exhibit 12, at PAS00482) indicates that the CFC filings for Salt River and Passamaquoddy did not go as smoothly as Ms. Applegate indicated in her October 24 recitations of events. During the October 24 hearing, Ms. Applegate testified, in pertinent part:

> Q [MR. AUSTIN]: How many trips did you make that day to the clerk's offices for the two courts in question to accomplish those filings?

A If you'll allow me, I would like to go through it to make sure I get it right.

Q Please.

A The first trip of the day, I walked here to the CFC to file three complaints -- Passamaquaddy, Salt River, and Tohono O'odham -- then returned back to the office, at which point I discovered that the district court complaints in Passamaquaddy and Salt River were now ready. I then took my first taxi to the district court and filed those two.

I returned to the office, to find that the Ak-Chin CFC complaint was ready. I walked that over to here, came back to the office, to discover that the district court in Ak-Chin was ready. That is the one that I actually did two trips to the district court, seeing as the clerk was busy and didn't have time to complete what needed to be done for me in one trip.

(HT 17:22-18:16.)

Ms. Applegate then repeated that account in response to a question from the Court:

THE COURT: Could you go through that again?

THE WITNESS: Sure.

THE COURT: Thanks.

THE WITNESS: The first trip, I came here to the CFC clerk's office to file Passamaquaddy, Salt River, and Tohono O'odham.

I then returned to the office, upon which I was told, and figured out, that both the Passamaquaddy and Salt River district court complaints were ready. So I took those to the district court. Those were prepared for me while I waited. I did not have to return for those.

I then returned back to the office, to discover the Ak-Chin CFC complaint was ready. I walked that over here.

I returned to the office and found out that the Ak-Chin district court was ready. I took that over to the district court by taking the cab, to find out that the clerk didn't have time to do it while I waited.

So I returned back to the office and then,

later, returned back to the district court to obtain and completely file the Ak-Chin district court complaint.

(HT 18:17-19:15).

Later, after repeated attempts by Plaintiff's counsel to supply testimony to the witness, she eventually was asked what she did "that morning." That portion of the hearing transcript is reproduced below, with the question about what the witness did that morning shown in bold.

30:21 Q [MR. AUSTIN] Now, when did you make your first trip to the district court on the 29th to file complaints there?

A Again, I don't have time stamps, so I can't be precise.

31: 1 Q Was it after you had made the filing of the Court of Federal Claims complaints in the CFC on behalf of Passamaquaddy, Salt River, and Tohono O'odham?

A It was.

MS. MAROLDY: Objection, Your Honor.

MR. AUSTIN: Your Honor, she has testified,

as Your Honor will recall, as to the order of trips to the courts. So the question that I presented to her is simply summarizing testimony previously solicited.

THE COURT: Well, one of the things that's of interest to the Court is exactly how much of this is you and how much of this is the witness, and, in a direct examination, the burden is on the witness.

MR. AUSTIN: I understand, Your Honor.

THE COURT: You have your documents, and you have testimony, and you could come here and be a witness and put the testimony together, but your witness needs to tell you what she remembers, and if you need to refresh recollection, that's fine.

MR. AUSTIN: Yes. This presents a unique situation, certainly in my experience, because I was a member of this team as well and involved.

THE COURT: I understand that, and you could have decided to become witnesses and have someone else be the lawyer.

MR. AUSTIN: Yes.

THE COURT: The problem is we want to know what the witness has a present memory of.

MR. AUSTIN: Yes, Your Honor, and that is certainly our objective in presenting Ms. Applegate to the Court this morning, as the Court has directed.

THE COURT: Thank you.

BY MR. AUSTIN:

Q I think, before the discussion of a moment ago, we were talking about the timing of the first filing in the district court on the 29th. What complaints did you file at that time?

A Salt River and Passamaquaddy.

Q Were these complaints filed after you had made your first trip to the Court of Federal Claims to file the three other complaints?

MS. MAROLDY: Objection, Your Honor.

THE COURT: It really is the same question. You can ask her again to tell you the order of things, but what you're doing basically is setting an order for her, and if she needs assistance from a document to do that, that's fine, but you are providing her the answer to the question. You're not a hostile questioner.

33: BY MR. AUSTIN:

Q You made five trips that day to file complaints, which --

THE COURT: The same problem. Just you can ask her what she did. This is an able person that you've wanted to keep at your firms, and just ask her what she did.

BY MR. AUSTIN:

Q Was the filing in district court –

**THE COURT: No. Ask her what she did that morning.**

**BY MR. AUSTIN:**

**Q All right. What did you do that morning with respect to filing of complaints?**

MS. MAROLDY: Your Honor, I think this has been asked and answered.

THE COURT: It has been. I'm willing to have the memory of this witness again.

THE WITNESS: As previously stated, the morning I filed three complaints in the Court of Federal Claims. Those were the Passamaquaddy, Salt River, and Tohono O'odham cases. I then went back to

the office, obtained the district court actions for the Passamaquaddy and Salt River. I went to the district court and filed those in one trip.

I then returned to the office, to find that the Ak-Chin CFC complaint was now ready. I took that to this Court and filed it. I returned to the office, to find that the Ak-Chin district court complaint was now ready. I took that to the district court, at which point the clerk's office was busy at this point during the day, and there was a line, and the intake clerk seemed somewhat frantic and asked for me to drop off the materials and come back.

In contrast to the foregoing three recitations during the October 24 hearing, Ms. Applegate's April 2007 report to Ms. Munson regarding the CFC filings on December 29 included this fact: "***As for the CFC, I know I went over and we were missing something so I had to come back to the office and get it***, but I just don't know what time all of this happened." Defendant's Hearing Exhibit 12, at PAS00482 (emphasis added).

The fact that Ms. Applegate's testimony omitted any mention of what apparently was a "false start" in connection with some or all of the Court of Federal Claims filings she performed on December 29 – "I know we were missing something so I had to come back to the office and get it"– is significant for at least two reasons. First, the omitted facts relate directly to the CFC

filings that day and involved an extra trip back to Ms. Applegate's office from the CFC. That extra trip was not mentioned anywhere in the three recitations the witness gave of how she accomplished the seven filings she performed that day.[7/] The omission therefore undermines the reliability and credibility of all of the witness's October 24, 2007, testimony about the events and sequence of events on December 29, 2006. Second, the trip back to the office (to get the missing "something" in connection with the CFC filings) would affect the entire timeline for the other events about which Ms. Applegate testified.

That is so even if Ms. Applegate's April 2007 statement to her colleague that she recalled having to go back to the office to get something for the CFC filings related only to the CFC filings for Passamaquoddy and Salt River. Ms. Applegate's additional trip back to the office obviously consumed time, and delayed one or more of the CFC filings, yet the District Court filings Ms. Applegate says occurred later, on behalf of clients Passamaquoddy and Salt River, respectively, were still the first two Complaints filed by any party in the District Court on December 29. Ms. Applegate says she filed the Passamaquoddy and Salt River Complaints in the CFC before she filed any of the District Court Complaints that day; and that the Ak-Chin Complaint also was filed in the CFC without incident, while its District Court filing was delayed and not "completed" until Ms. Applegate returned to the Court to pick up the summonses. Yet the omission from Ms. Applegate's testimony of any mention of the false start at the CFC and the resulting extra trip casts doubt on the reliability of her October 24th account of all the various trips she made to the Courts on December 29, and their sequence and timing.

---

[7/]HT 17: 19-21; HT 22:23-24 (seven filings); HT 17:19-19:15 and 33:13-34:9 (three reiterations of how Ms. Applegate accomplished the seven filings).

**B. Additional Discrepancies Exist Between The Witness's October 24th Testimony And Her Previous Statements About The Matters At Issue**

Additional discrepancies exist between Ms. Applegate's professed certainty at the October 24, 2007, hearing about the timing and order of the December 29 filings, and her previous statements about those matters. For example, in the affidavit provided by Ms. Applegate in support of her client's opposition to Defendant's motion to dismiss on Section 1500 grounds in the Passamaquoddy CFC case, *Passamaquoddy Indian Tribe of Maine v. United States*, Case No. 06-942, Ms. Applegate averred under oath merely that "to the best of her recollection," she filed the Passamaquoddy CFC Complaint before that client's District Court Complaint. (*See* Defendant's Hearing Exhibit 15, at ¶ 8.) At the October 24 hearing, however, she claimed to be certain about it, just as she claimed to be "certain" about the sequence of filing the Ak-Chin's respective District Court and CFC Complaints. The witness's enhanced "certainty" about these related events, between the date of the August 13, 2007, affidavit, and the October 24, 2007, proceeding, and nearly a year after the December 2006 filings occurred, is unpersuasive. Again, it casts doubt on the reliability of her testimony about the Ak-Chin filings, which occurred the same day, and were woven into the same presentation in her testimony.

One of the most telling discrepancies between the witness's October 24, 2007, testimony about the order of filing and the other evidence in the case arises from the undisputed fact, noted above, that as of 11:41 a.m. on the December 29 date of filing, Plaintiff's Complaint to be filed in the Court of Federal Claims was still being worked on by Plaintiff's lawyers, as admitted by Plaintiff and as shown by Jason Guilder's e-mail. *See* Plaintiff's Hearing Exhibits H (e-mail); and N (Plaintiff's Answers To Interrogatories), at 10, respectively. It is not clear how long it took for Plaintiff's legal team to obtain the information attorney Jason Guilder was looking for, and to edit

Plaintiff's CFC Complaint to include that information. (*See*, *e.g.*, Ms. Applegate's testimony noting her "understanding" that Mr. Guilder "was able to find the information" before the time Mr. Roybal responded to his e-mail nearly two hour after Mr. Guilder sent it. HT 41:8-42:25.) In any event it was sometime after 11:41 a.m. that Plaintiff's attorneys finished working on the CFC Complaint and deemed it ready for filing. Thereafter, of course, the Complaint had to be copied and assembled for filing.

It was Ms. Applegate who prepared the necessary copies of the Complaint "and whatnot" (*e.g.*, HT 40:7-9). She then took those copies and walked from her offices at 607 14th Street to the Court of Federal Claims at 717 Madison Place and filed the Complaint. She then walked back to her office. HT 40:6-10. *See also* Plaintiff's Hearing Exhibit N, Plaintiff's Answers To Interrogatories, No. 2, at 5 (walking to the Court and back).

According to Ms. Applegate's October 24 testimony, it was only after she returned to Kilpatrick Stockton's offices after walking to the Court with the Ak-Chin CFC Complaint, and filing it with the Clerk, that she learned that the Ak-Chin District Court Complaint was ready for filing. HT 34:2-5. It was at that point that Ms. Applegate again left her offices at 607 14th Street, and caught a taxi cab to the District Court, which is located at 333 Constitution Avenue, N.W., to file the Ak-Chin District Court Complaint. HT 34:3-9 (*see also* HT: 36:1-5, regarding traveling to the District Court by cab to file the Ak-Chin Complaint there).

Also according to Ms. Applegate's testimony, after Ms. Applegate traveled to the District Court by cab with the Ak-Chin Complaint, she found the Courthouse crowded, and found that there was a line for filing at the Clerk's office. HT 34:3-9 (conditions at Courthouse); 36:1-5 (travel by taxi cab). Ms. Applegate testified that she had a conversation with the intake clerk

regarding the Ak-Chin Complaint, and left Plaintiff's Complaint with the intake clerk (HT 15:11-18; and 34:3-9), left the Courthouse, and traveled back to her office at 607 14th Street by taxi.

Given the undisputed facts that the Ak-Chin's CFC Complaint was not finished until after 11:41 a.m., and that Ms. Applegate reported to Mr. Austin at 12:41 p.m. on December 29 that all the Complaints had been filed, for the District Court Complaint to have been filed *after* the CFC Complaint, all of the steps outlined above had to have been completed in less than an hour, between 11:41 a.m. and 12:41 p.m. Those steps included the lawyers' completing the Ak-Chin CFC Complaint, Ms. Applegate's copying and assembling it, Ms. Applegate's walking to this Court to file it, filing it with the Clerk, and walking back to her office; Ms. Applegate's then learning that the Ak-Chin District Court Complaint was ready for filing, picking up that Complaint, leaving her office again, traveling by cab to a crowded Clerk's office (HT: 34:3-9), talking to the intake clerk, coming back to her office by cab, getting back to her desk, and receiving and responding to the e-mail from Mr. Austin.

Defendant submits that that scenario is highly unlikely. Even if attorney Jason Guilder found within a very few minutes the information he lacked at 11:41 a.m. and therefore sought from Ak-Chin's counsel (Mr. Ed Roybal), the other steps outlined above would have taken more than an hour to complete, even under a scenario positing, *arguendo,*"warp speed" or record time for completing each component step. Here, for illustration only, is how the necessary series of events might have unfolded if every single one was accomplished at "warp speed":

1. Attorney Guilder finds the missing information and it is added to the Complaint just four minutes after Mr. Guilder's 11:41 e-mail to Mr. Roybal: 11:45 a.m.

2. Ms. Applegate copies and assembles the Ak-Chin CFC Complaint, "and whatnot" and

exits the building just twelve minutes after the lawyers have finished it: 11:57 a.m.

3. Ms. Applegate walks from her office at 607 14th Street, N.W., to the CFC at 717 Madison Place in just nine minutes: 12:06 p.m.

4. Ms. Applegate goes through security, files the CFC Complaint with the Clerk, and obtains the file-stamped copy, all in just five minutes: 12:11 p.m.

5. Ms. Applegate exits the Courthouse and walks back to her office in just nine minutes: 12:20 p.m.

6. Ms. Applegate gets upstairs to the Kilpatrick Stockton floors; learns the Ak-Chin District Court Complaint is ready to be filed, and picks it up, all just three minutes after arriving at the building: 12:23 p.m.

7. Ms. Applegate exits the building again, with the Ak-Chin District Court Complaint, just two minutes later: 12:25 p.m.

8. Ms. Applegate gets a taxi cab and travels in it across town at mid-day to the District Court, arriving at 333 Constitution Avenue, N.W., and paying the cab driver and receiving a receipt, all just twelve minutes after exiting her building: 12:37 p.m.

9. Ms. Applegate enters the crowded Courthouse; goes through the line to the intake clerk; has a conversation with the "frantic" intake clerk; leaves the Complaint with that clerk; and exits the Courthouse again, all in just five minutes after the cab dropped her off: 12:42 p.m.

10. Ms. Applegate catches a cab back to her office from the District Court at 333 Constitution Avenue, N.W., to her office at 607 14th St., N.W., pays the cab driver, and gets a receipt, all in just in twelve minutes: 12:54 p.m.

11. Ms. Applegate gets upstairs to her desk, opens an e-mail message from Mr. Austin, and responds, all in two minutes after arriving at the building: 12:56 p.m., *i.e.*, fourteen minutes after she sent Mr. Austin an e-mail saying all of the Complaints were filed.

Plaintiff has presented no evidence of how long it actually took Mr. Guilder to obtain the information he needed for Ak-Chin's CFC Complaint. Yet in summary, even under a scenario in which Mr. Guilder found the information he needed for the Complaint within a few minutes after he sent the client's counsel an e-mail seeking it; and Ms. Applegate's subsequent round-trip travels to two courts, interactions with others, and related tasks and activities occur at unrealistic "warp speed" (for the sake of argument only), the District Court Complaint could not have been taken by Ms. Applegate to the District Court clerk only after she filed the Court of Federal Claims Complaint, as Ms. Applegate testified. As the hypothetical above illustrates, it is highly unlikely that Ms. Applegate could have accomplished all of those steps and have gotten back to her office in time to send Mr. Austin the 12:41 p.m. e-mail reporting that all of the Complaints had been filed. In other words, to be consistent with Ms. Applegate's 12:41 p.m. report to Mr. Austin on the date of filing ("we have filed them, but I am waiting for the summons"), Plaintiff's District Court Complaint had to have been filed *before* the CFC Complaint, whose completion and filing, it is undisputed, was delayed until some undetermined time after 11:41 a.m.

### C. The Evidence As A Whole Does Not Support Plaintiff's Assertions That Its District Court Complaint Was Not "Filed" Until Ms. Applegate's "Final" Trip To The Court To Pick Up The Summonses.

In its briefing in this case, trying to avoid the consequences of Ms. Applegate's contemporaneous report that all the Complaints were filed as of 12:41 p.m. on December 29,

Plaintiff claims that its District Court Complaint was not "filed" until Ms. Applegate made her "final" trip to the District Court and picked up the summonses and paid the filing fee.[8] Yet Plaintiff admitted in its responses to interrogatories, and in its pre-hearing briefing in this case (Dkt No. 26, at 5), that Plaintiff's Complaint was already file-stamped when Ms. Applegate eventually picked it up from the Court and obtained the summonses, whenever that occurred.

> "Ms. Applegate took a cab from the office back to the District Court to complete the filing of the Ak-Chin District Court Action. *During this trip to the District Court, Ms. Applegate retrieved the file-stamped copy of the Complaint and other materials, including the summons, from the clerk and brought those materials and a check to the District Court's cashier*. Ms. Applegate submitted a check to the cashier, received a receipt from the District Court's cashier and took a cab back to the office with a file-stamped copy of the Complaint, an executed summons, and a receipt."

Plaintiff's Hearing Exhibit N, Response To Interrogatory No. 2, at 5 (emphasis added).

In contrast, in her October 24 testimony, Ms. Applegate said that in her "final" trip to the District Court with respect to Ak-Chin, she paid the filing fee, "returned the receipt to the intake clerk, at which point she gave me the summons with the adjoining complaints, as well as my file-stamped copy." HT 15:19-24. Later in her testimony, Ms. Applegate stated, "As I mentioned the process before, it was to go to the intake clerk. I paid at the cashier, I returned to the intake clerk

---

[8] Defendant notes that at one point in her testimony, Ms. Applegate stated that her final trip to the Court "was between 11:41 and 12:41." HT 46:24- 47:5.

> Q: "What time did you return to the district court?"
> A: "In which instance?"
> Q: "This final occasion."
> A: "Again, I don't know the specifics, but it was between 11:41 and 12:41 and after I filed the CFC complaint in the Ak-Chin matter."

At other points in her testimony, she suggested that the "final" trip did not occur until later. *See, e.g.*, HT 44:10-45:14.

and got the summons with the adjoining complaints and my file-stamped copies back." But even when led by Mr. Austin during the October 24 hearing, however, Ms. Applegate did not testify that she saw the Clerk file-stamp the Complaint, or that the Clerk file-stamped the Complaint only after Ms. Applegate returned to the Court and paid the filing fee. HT 45:1-46:8. And in her communication to Ms. Munson in April 2007, as noted above, she candidly admitted that she and her colleagues had no way of knowing precisely when the Complaints were filed after she delivered them to the Court's clerk for that purpose. In short, there is no support for Plaintiff's suggestion, contradicting the other evidence, including its admissions in its responses to interrogatories, that its District Court Complaint was not "completely" filed, or not file-stamped, until Ms. Applegate's last trip to the District Court on December 29th, when she picked up the summonses.

## IV. CONCLUSION

For all of these reasons, this Court should conclude that Plaintiff has failed to carry its burden to show, by a preponderance of the evidence, that its District Court Complaint was not filed until after its Court of Federal Claims Complaint was filed. On the contrary, the District Court's records, the contemporaneous documentary evidence from Plaintiff's office, Plaintiff's own admissions, and the discrepancies among the various statements Ms. Applegate has made about the order, timing, and manner of filing, show that Plaintiff has not made and cannot make the showing necessary to establish that this Court has jurisdiction over its Complaint.

Respectfully submitted this 21st day of November 2007,

RONALD J. TENPAS
ACTING ASSISTANT ATTORNEY GENERAL

*s/Laura M.L.Maroldy*

Laura M.L. Maroldy
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 514-4565
Fax: (202) 353-2021

Attorneys for Defendant

OF COUNSEL
ELISABETH BRANDON
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240