IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-09321 (ECH) |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | **Electronically filed on November 29, 2007** |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S POST-EVIDENTIARY HEARING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

There are certain underlying fundamental facts which the parties do not dispute. These facts corroborate Alexis Applegate's October 24, 2007 testimony and fully support the conclusion that Ms. Applegate filed the Ak-Chin Indian Community's ("Ak-Chin") Court of Federal Claims Complaint ("CFC Complaint") prior to filing Ak-Chin's District Court Complaint on December 29, 2006.

Both parties agree that Ms. Applegate filed seven Complaints on December 29, 2006, comprised of four Complaints filed in the Court of Federal Claims and three Complaints filed in the District Court. It is without dispute that the Complaints Ms. Applegate filed on behalf of the Salt River Pima-Maricopa Indian Community ("Salt River") and the Passamaquoddy Tribe ("Passamaquoddy") in the District Court were the first two filings in the District Court on December 29, 2006 and that the Ak-Chin District Court Complaint was filed later in the day. It also is not disputed that the District Court assigns civil action numbers sequentially based on the order of filing and that the Ak-Chin District Court Complaint was assigned the highest number of the three District Court Complaints Ms. Applegate filed that day. Likewise, the receipt

numbers on the receipts generated by the District Court to show that Ms. Applegate had paid the filing fees for each of the District Court Complaints demonstrate that the Passamaquoddy and Salt River District Court Complaints were filed earlier in the day, and separately from, the later-filed Ak-Chin District Court Complaint.

Ms. Applegate recalls that her last trip of the day in connection with filing a Complaint was to the District Court. The government has not contested this recollection, which is also supported by Ms. Applegate's December 29, 2006, 12:41 p.m. e-mail to Bill Austin explaining that she had finished the filings but had to retrieve a summons, a document only needed in the District Court. (Hearing Tr. Plaintiff's Ex. J.)[1] These undisputed facts lead to the inescapable conclusion that the last action Ms. Applegate filed on December 29, 2006 was the Ak-Chin District Court action, the action assigned the highest civil action number, which necessarily means that she filed Ak-Chin's District Court Complaint after she had filed the Ak-Chin CFC Complaint.

The government has not contested these fundamental facts. Instead, the government attacks Ms. Applegate's credibility based on minor discrepancies and points to other evidence which appears at first blush to be inconsistent with her testimony, but is in reality, easily reconciled. Because Ak-Chin has carried its burden to demonstrate that the last Complaint Ms. Applegate filed on December 29, 2006 was the Ak-Chin District Court Complaint, Defendant's Motion to Dismiss should be denied. *See Hardwick Bros. Co. II v. United States*, 72 F.3d 883, 886 (Fed. Cir. 1995); *Breneman v. United States*, 57 Fed. Cl. 571, 575 (2003), *aff'd,* 97 Fed.

[1] Under the RCFC 4, Ak-Chin was not required to effectuate service of the CFC Complaint on the United States. *See* RCFC 4 ("Service of the complaint upon the United States shall be made through the delivery by the clerk to the Attorney General . . . of copies of the complaint . . . the date of service shall be date of filing with the clerk.").

Appx. 392 (Fed. Cir. 2004); *Tecon Engineers, Inc. v. United States,* 343 F.2d 943, 949 (Fed. Cl. 1965).

## ARGUMENT

### A. The District Court Docket Listing and Receipts Corroborate Ms. Applegate's Testimony.

In an effort to challenge Ms. Applegate's testimony regarding the sequence in which she filed the Ak-Chin CFC and District Court Complaints, the government points to the December 29th District Court docket listing and receipt numbers of the District Court receipts reflecting payment of the filing fees for the Ak-Chin District Court Complaint and the District Court Complaints filed by Ms. Applegate on behalf of Passamaquoddy and Salt River purportedly to show that the Ak-Chin District Court Complaint was "among the first" Complaints filed the day. (Def. Brf. 5.) As explained in more detail below, the Ak-Chin District Court Complaint was not one of the first District Court Complaints filed in person that day. Moreover, the docket listing and receipt numbers show that the District Court Complaints Ms. Applegate filed on behalf of Passamaquoddy and Salt River were the first two actions filed on December 29th and that she filed the Ak-Chin District Court Complaint later that day. These facts corroborate Ms. Applegate's testimony that she filed the Ak-Chin District Court Complaint separately and later in the day than the District Court Complaints she filed for Passamaquoddy and Salt River. (Hearing Tr. 18:3-16; 18:17-19:15; 33:19-34:9.)

The docket listings also show that the District Court processed an unusually high number of filings on December 29th. This evidence supports Ms. Applegate's testimony that the clerk told Ms. Applegate during her first attempt to file the Ak-Chin District Court Complaint that the clerk was "too busy to complete the filing" and that Ms. Applegate "would have to come back at a later time." (Hearing Tr. 14:18-24.) It further corroborates Ms. Applegate's observation, when

she returned to the District Court during her last trip to file the Ak-Chin District Court Complaint, that the District Court "had gotten significantly busier as the day progressed." (Hearing Tr. 46:17-23.)

A review of the docket listings for the month of December 2006 also show that the four-day week between Christmas and the end of the year was exceptionally busy. *See* District Court docket listings for the month of December 2006, attached hereto collectively as Exhibit A. A total of 89 suits were filed that week with an average of more than 22 per day. *Id.* December 29th was the busiest day that week. There were 32 filings that day, including the actions filed for Passamaquoddy, Salt River and Ak-Chin. *Id.* The week prior to Christmas had been significantly slower. A total of 60 suits were filed in that five-day period, resulting in a 12 per-day average for number of filings. *Id.* Similarly, the two-week period following December 29th only had an average of a little over 15 filings per day. *See* District Court docket listings for the month of January 2007, attached hereto collectively as Exhibit B. Based on the foregoing, December 29th was an unusually busy day for the District Court and this evidence is in full accord with Ms. Applegate's testimony.

The government argues that because the Ak-Chin District Court Complaint was the sixth filing on December 29th and a substantial number of filings were processed afterwards, the Ak-Chin District Court Complaint had to have been submitted to the District Court earlier than 12:41 p.m., the time when Ms. Applegate first left the Ak-Chin District Court Complaint with the District Court. (Hearing Tr. 43:12-23; 47:6-19.) This argument assumes that it is inherently implausible that the sixth filing of the day, out of a total of 32 filings, could have been completed



US2000 10461519.1

in the early afternoon. There is no basis in the record or in common sense to support that assumption.[2]

Lawyers being lawyers, there is no reason to be surprised that filings occur disproportionately at the end of the day. Furthermore, it is more likely that a substantial number of filings generally are made late in the day due, in part, to the fact that the District Court has an after-hours "speedy filing box" allowing for filings to occur after the District Court closes at 4:00 p.m. *See* I.B.1 & 2. Clerk's Office General Information and Filing Procedures for the United States District Court for the District of Columbia. According to the District Court's local rules, this after-hours box has an "electronic clock" "to time and date stamp all papers submitted" so that "all papers/CDs received before midnight will be filed as of that day." *Id.* There were a significant number of after-hour filings on December 29th. The first after-hours filing of that day appears to be the 21st filing, which was a Notice of Removal time-stamped as having being received by the Court at 5:53 p.m., nearly two hours after the District Court had closed. *See* Exhibit 3 to Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500; Notice of Removal filed in *Beynum v. Clay*, 1:06-cv-02260-RWR, attached hereto as Exhibit C. The four subsequent filings (22nd filing through the 25th filing) also have time-stamps showing that the filings were left in the "speedy filing box" after the District Court had closed. *See Ruffin v. Dep't of Youth Rehabilitation Services*, 1:06-cv-02261-RWR; *Wilson-Greene v. Dep't of Youth Rehabilitation Services*, 1:06-cv-02262-RJL; *Cruz-Packer v. Dep't of Youth Rehabilitation Services*, 1:06-cv-02263-RWR; and *Davis v. Dep't of Youth Rehabilitation Services*, 1:06-cv-

[2] In its Post-Hearing Brief, the government argues that there were "more than thirty-five Complaints" filed in the District Court on December 29, 2006, and cites to Exhibit 3 to Defendant's Motion to Dismiss for this factual assertion. (Def. Brf. 3.) Exhibit 3 to Defendant's Motion to Dismiss, however, shows that there were only 32 filings that day and many of these filings were not Complaints. As such, the government's assertion regarding the number of filings that day is incorrect, even based on the government's own evidence.

02264-GK, attached hereto collectively as Exhibit D. Because the District Court assigns civil action numbers based upon the order the filings are received, the last twelve of the 32 filings on December 29th, also had to have been filed after the District Court had closed. *See* Federal Rule of Civil Procedure 79(a) ("Actions shall be assigned consecutive file numbers . . . All papers filed with the clerk . . . shall be entered chronologically . . . .")

Moreover, the District Court made notations on the 16th through the 20th filings showing that these filings were received by the Court prior to December 29th. *See* Cover pages, reflecting notations, of *Coleman v. Lappin*, 1:06-cv-02255-RMC; *Wills v. Smith*, 1:06-cv-02256-RJL; *Harris v. Goins*, 1:06-cv-02257-CKK; *Harley v. U.S. Parole Comm'n*, 1:06-cv-02258-RMU; and *Stamps v. Secretary of Treasury*, 1:06-cv-2259-UNA, attached hereto collectively as Exhibit E. Based on these notations, the last "in person" filing on December 29, 2006 appears to have been the 15th filing processed that day. *See* Exhibit 3 to Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500. Thus, it is likely that after Ms. Applegate filed the Ak-Chin Complaint, only nine subsequent filings were processed before the District Court closed at 4:00 p.m. The Ak-Chin Complaint -- the sixth filing -- was filed a little earlier than mid-way through the filings completed during the District Court's hours. This evidence is consistent with the Ak-Chin District Court action having been filed in the early afternoon, as Ms. Applegate testified and as her e-mails demonstrate. (Hearing Tr. 43:12-23; 47:6-19.)

### B. The "Undisputed Facts" Cited by the Government Ignore Ms. Applegate's Testimony and Other Documentary Evidence.

Although the government lists purported "undisputed facts" in support of its arguments, such facts are anything but undisputed in the government's favor and indeed, have been fully explained by Ms. Applegate's testimony and corroborating evidence. For example, the government argues that Mr. Harper's 8:59 a.m. e-mail to Ms. Applegate, telling her to file the

District Court Complaints while he made changes to the CFC Complaints, shows that Ms. Applegate in fact filed the Ak-Chin District Court Complaint prior to filing the Ak-Chin CFC Complaint. (Def. Brf. 6-7.) Ms. Applegate testified unequivocally that she did not see Mr. Harper's 8:59 a.m. e-mail until months later, when she collected documents in response to the government's document requests. (Hearing Tr. 28:7-10; 30:6-20.) Because she did not see the e-mail on December 29th, Ms. Applegate could not have followed this instruction. Moreover, the morning of December 29th, in response to Mr. Harper's e-mail request sent the previous evening, Ms. Applegate checked with the courts to see if they were closing early due to the upcoming New Year's holiday and President Ford's death. (Hearing Tr. 26:1-9.) Ms. Applegate was unable to confirm that the Court of Federal Claims would not be closing early. *Id.* This uncertainty, coupled with Mr. Harper never having filed a Complaint in the Court of Federal Claims, prompted Mr. Harper to orally instruct Ms. Applegate to file the Court of Federal Claims actions prior to filing the District Court actions. (Hearing Tr. 27:12-28:6.) Ms. Applegate is certain that she followed this instruction. (Hearing Tr. 18:3-9.)

The government also points to Mr. Guilder's 11:41 a.m. e-mail requesting information from Ak-Chin's counsel, Mr. Roybal, to argue that all that Ak-Chin has shown is that the CFC Complaint was filed at some "undetermined time" after 11:41 a.m. (Def. Brf. p. 7). That simply is not the case. Ms. Applegate testified that the Ak-Chin CFC Complaint was filed by 12:41 p.m. (Hearing Tr. 42: 10-25). This testimony is corroborated by her e-mail to Mr. Austin at 12:41 p.m. stating that all the Complaints had been filed, but that she was waiting for the summons, which Ms. Applegate explained was for the Ak-Chin District Court Complaint. *Id.* She further testified that Mr. Guilder obtained the requested information before he heard back from Mr. Roybal. *See id.*; Ak-Chin's Response to Interrogatory No. 8.

The government also relies upon the fact that certain federal defendants had been served with the District Court Complaint by 3:14 p.m. as purporting to show that the Ak-Chin District Court Complaint was filed earlier in the day than the Ak-Chin CFC Complaint. (Def. Brf. 7.) As explained by Ms. Applegate, however, the offices of the Interior Department are within a few blocks of Kilpatrick Stockton LLP's offices and Ms. Applegate had, earlier in the day, made arrangements with the process servers. (Hearing Tr. 47:20-48:14; 49:13-25.) Therefore, it is not surprising that service had been effectuated by 3:14 p.m., which is approximately one to two hours after the time Ms. Applegate had obtained the summons from the District Court and left the summonses and Complaints at Kilpatrick Stockton LLP's offices for the process servers to retrieve. (Hearing Tr. 47:6-19.)

**C. The Ak-Chin District Court Complaint Was Filed After the CFC Complaint.**

There are two quite different issues before the Court regarding the time at which the Ak-Chin District Court Complaint was filed. Ak-Chin prevails on both.

The first issue is the question of when a Complaint is deemed filed as a legal matter. In its Post-Hearing Brief, the government suggests that Ak-Chin contends that the filing of the Ak-Chin District Court Complaint was not complete until Ms. Applegate retrieved the summons. Ak-Chin has never made this argument. Rather, the filing of the Ak-Chin District Court Complaint was not complete until Ms. Applegate returned to the District Court to pay the cashier the filing fee, which occurred during Ms. Applegate's last trip to the District Court on December 29, 2006, when she also obtained the summons. *See*, *e.g.*, *Lee v. U.S.*, 33 Fed. Cl. 374, 383 (1995) (holding that a payment of filing fees is required before a Complaint is filed); *Cofield v. U.S.*, 25 Cl. Ct. 465, 467 (1992) (same); *Anno v. U.S.*, 113 F. Supp. 673, 675-76 (Cl. Ct. 1953) (same); *Turkett v. United States*, 76 F. Supp. 769, 770 (D.N.Y. 1948) (holding that a prerequisite

to a filing is the payment of the clerk's fees); *Wanamaker v. Columbian Rope Co.*, 713 F. Supp. 533, 539 (N.D.N.Y. 1989) (holding that plaintiff's complaint was filed only after payment of the filing fee to the clerk of the court). Because Ms. Applegate did not pay the filing fee until her last trip to the District Court, which was between 12:41 p.m. and 2:23 p.m., and it is undisputed that the Ak-Chin CFC Complaint had been filed at that time, as a legal matter, the Ak-Chin Court of Federal Claims action was filed first.

The second independent issue is the factual matter of when Ms. Applegate left the District Court Complaint with the District Court. Because Ms. Applegate filed the Ak-Chin CFC Complaint before her first trip to the District Court to file the Ak-Chin District Court Complaint, Ak-Chin's CFC Complaint was filed first, regardless of the time at which Ms. Applegate paid the filing fee for the District Court Complaint. (Hearing Tr. 18:3-16; 18:17-19:15; 33:19-34-9.) Therefore, Ak-Chin prevails as a factual matter, even if the Court rejects the case law holding that a filing is not legally complete until payment of the filing fee.

The government further argues that Ms. Applegate's statement to Mr. Austin at 12:41 p.m. that "we have filed them" but that she "was waiting for the summons" demonstrates that the Ak-Chin District Court Complaint was filed by 12:41 p.m., as opposed to when Ms. Applegate later returned to the District Court to pay the filing fee. (Def. Brf. 8-9.) First, the government's argument is inherently flawed because it is based upon the unsound premise that Ms. Applegate's statement in her e-mail that she had "filed" the Complaints, even when she had not yet paid the filing fee for the Ak-Chin District Court Complaint, is legally dispositive of when the filing occurred.

Second, the government appears to be attempting to discredit Ms. Applegate's testimony that she made a second trip to the District Court to finish filing the Ak-Chin District Court

Complaint. That is, without even having raised the issue with Ms. Applegate on cross-examination during the October 24, 2007 evidentiary hearing, the government argues that Ms. Applegate's testimony that she went to the District Court twice to file the District Court Complaint is "unpersuasive" because, as of 12:41 p.m., on December 29, 2006, Ms. Applegate purportedly "did not express any uncertainty whatsoever about whether Plaintiff's Complaint was filed by that time." (Def. Brf. p. 9.) To the contrary, as evidenced by an e-mail produced to the government in discovery, Ms. Applegate knew that the Ak-Chin District Court filing was not yet complete because she also e-mailed Mr. Austin at 12:41 p.m. that: "We haven't completed them yet." *See* AKCHIN215, attached hereto as Exhibit F. This e-mail, as well as the contemporaneous e-mail Ms. Applegate sent to Mr. Austin at 12:41 p.m., is consistent with Ms. Applegate's testimony that she returned to the District Court to complete the filing of the Ak-Chin District Court Complaint, and during that trip, paid the cashier for filing the District Court Complaint. Her testimony also is supported by the cab receipts, docket listings, and Ak-Chin's Interrogatory Responses.

The government argues for the first time that Ms. Applegate made two trips to the District Court to file the District Court Complaints on behalf of Salt River and Passamaquoddy. The government fails to explain how this hypothetical impacts this Court's determination of which Complaint was filed first – the Ak-Chin CFC Complaint or the District Court Complaint. In any event, the argument completely disregards Ms. Applegate's testimony recounting the events of that day and the supporting evidence, in particular, the cab receipts demonstrating that Ms. Applegate made three trips to the District Court. (Hearing Tr. 34:10-37:12.)

**D. The April 23rd E-mails Are Consistent with Ms. Applegate's Testimony, Affidavit and Ak-Chin's Interrogatory Responses.**

The government relies heavily upon an April 23, 2007 e-mail exchange between Ms. Applegate and Catherine Munson regarding the filings Ms. Applegate completed in Salt River and Passamaquoddy in an attempt to discredit Ms. Applegate's testimony regarding the Ak-Chin filings. (Def. Brf. 9-20.) The government's attempt to undermine Ms. Applegate's credibility with these e-mails fails for several reasons.

First, as Ms. Applegate explained during her testimony, the April 23rd e-mails did not address the filing of this action or the Ak-Chin District Court Complaint. (Hearing Tr. 70:11-71:22.) Rather, the question posed to Ms. Applegate was: "Do you know of a way to find out what time the SR and Passamaquoddy cases were filed in the CFC and DCt. on Dec. 29th?" Ms. Applegate's response to this question thus does not pertain to the filings of the Ak-Chin Complaints. Second, the government argues that Ms. Applegate cannot be believed regarding her testimony recounting the order of the filings because her e-mail says that "there is no precise way" to determine what time the Complaints were filed due to the fact that there were no time stamps on the Complaints. The government is confusing the issue of what time the Complaints were actually filed -- which Ms. Applegate explained in the e-mail and to the Court that she does not know, because the Complaints are not time-stamped -- and the relative sequence of filings -- which Ms. Applegate does know, and which is legally dispositive. Ms. Applegate's statement that the Complaints have no time-stamps is a fact which is not in dispute and in no way undermines her credibility. What Ms. Applegate remembers, and what matters, is which of the two Ak-Chin Complaints Ms. Applegate filed first.

The government also argues that Ms. Applegate's statement in the e-mail that she dropped off the District Court Complaint for filing, but does not know when the clerk filed it, is

significant in light of Ak-Chin's position that the filing of the Ak-Chin District Court Complaint occurred during Ms. Applegate's last trip to the District Court when she paid the filing fee. Ak-Chin has never contended, however, that Ms. Applegate knows when the clerk filed the Complaint. In fact, Ms. Applegate testified that she did not see the clerk file-stamp the District Court Complaint. (Hearing Tr. 46:1-8.) The government is confusing the factual issue of how Ms. Applegate completed the filing of the District Court Complaint with the issue of when the District Court Complaint was deemed filed as legal matter. Ms. Applegate's statement in the e-mail that she does not know when the clerk filed the Complaints does not contradict her recollection that she paid the filing fee during her last trip to the District Court or Ak-Chin's argument that the filing did not occur as a legal matter until Ms. Applegate paid that filing fee. In any event, Ms. Applegate remembers going to the Court of Federal Claims to file the Ak-Chin CFC Complaint prior to her first trip to the District Court to attempt to file the Ak-Chin District Court Complaint. (Hearing Tr. 18:3-6; 18:17-19:15; 33:19-34:9.) Thus, the fact that she states in the e-mail that she does not know when the District Court clerk filed the Ak-Chin District Court Complaint after she left it with the District Court is not relevant because it was necessarily after she had filed the Ak-Chin CFC Complaint.

Lastly, the government contends that the filings for the Salt River and Passamaquoddy CFC Complaints did not go as smoothly as Ms. Applegate had testified based on her statement in the April 23rd e-mail that she was "missing something" at the Court of Federal Claims. While Ms. Applegate initially recalled having to make a second trip to the Court of Federal Claims that day because she was "missing something" her first trip there, the reason Ms. Applegate was required to make a second trip to the Court of Federal Claims was because the Ak-Chin CFC Complaint was not ready when the other three Complaints were filed and it had to be delivered

for filing later that same morning. It also is significant that these e-mails reflect Ms. Applegate's response to Ms. Munson's question of how to determine what time the Complaints were filed, nearly four months after the filings. Ms. Applegate responded to Ms. Munson's inquiry within a matter of minutes and prior to having reviewed all the relevant contemporaneous evidence relating to the December 29th filings, which is what she did before she executed the Affidavit and testified on October 24, 2007. After having reviewed the relevant evidence, including the civil action numbers assigned to the District Court actions, Ms. Applegate's memory was refreshed and she was able to testify with certainty that the last Complaint she filed on December 29th was the Ak-Chin District Court Complaint, which necessarily means that she filed the Ak-Chin CFC Complaint prior to that filing.

**E. There Is No Evidence Disputing Ms. Applegate's Testimony Regarding the Timing of her Filing of the Ak-Chin CFC Complaint and her First Attempt to File the Ak-Chin District Court Complaint.**

Despite having had the opportunity to put evidence into the record by cross-examining Ms. Applegate in Court regarding the time it took her to accomplish the filing of the Ak-Chin CFC Complaint and to make her first trip to the District Court to attempt to file the Ak-Chin District Court Complaint, government counsel chose not to question Ms. Applegate on this subject. Instead, in its Post-Hearing Brief, government counsel engages in rampant speculation about the time needed to accomplish each of these tasks. The government's recitation of the events occurring between 11:41 a.m. and 12:41 p.m. is not supported by any evidence and is based on nothing more than pure speculation. *See Loyal Tire & Auto Center, Inc. v. Town of Woodbury*, 445 F.3d 136, 147-48 (2d Cir. 2006) (finding that defendant's argument was not supported by record evidence and therefore was unpersuasive). That Ms. Applegate filed the Ak-Chin CFC Complaint between 11:41 a.m. and 12:41 p.m. is supported by Ms. Applegate's

sworn testimony and e-mails that she sent at the time she completed these tasks. There is nothing inherently or physically impossible about her having proceeded in that manner.

Lastly, the government continues to argue that Ak-Chin has "admitted" that the Ak-Chin District Court Complaint already was file-stamped when Ms. Applegate made her last trip to the District Court. (Def. Brf. 26.) To make its argument, the government points to Ak-Chin's Interrogatory Responses which state that Ms. Applegate retrieved a file-stamped copy of the District Court Complaint during her last trip to the District Court. In making this statement, Ak-Chin did not in any way acknowledge or concede that the clerk assigned the civil action number to the District Court action before Ms. Applegate returned to the District Court to complete the filing of the District Court Complaint. The government also points to a minor discrepancy between the Interrogatory Responses, which say that Ms. Applegate retrieved a file-stamped copy of the District Court Complaint before she paid the cashier, and Ms. Applegate's testimony that she received a file-stamped copy of the District Court Complaint after she paid the cashier. Ms. Applegate's testimony describing the filings corrected this minor error in the Interrogatory Responses. This discrepancy is of no consequence, in any event, because there is no dispute that Ms. Applegate paid the filing fee during this second trip, and as discussed above, the payment of a filing a fee is required for a filing to be complete. Ms. Applegate also testified that she filed the Complaint in the Court of Federal Claims before her first trip to the District Court to file the Ak-Chin District Court Complaint, and thus Ak-Chin's CFC Complaint was filed first, regardless of the time at which the filing of Ak-Chin's District Court Complaint was completed. (Hearing Tr. 18:3-16; 18:17-19:15; 33:19-34-9.)

**CONCLUSION**

For these reasons, the government's arguments do not controvert Ak-Chin's showing that the District Court action was not pending at the time Ak-Chin filed the CFC Complaint. Accordingly, for the reasons stated herein and in Ak-Chin's Opposition to Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500 and Plaintiff's Opening Post-Evidentiary Hearing Brief Opposing Defendant's Motion to Dismiss, Defendant's Motion to Dismiss should be denied.

This the 29th day of November, 2007.

Respectfully submitted,

/s/ Keith Harper

KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
CATHERINE F. MUNSON
Georgia Bar No. 529621
E-mail: cmunson@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 508-5800
Fax: (202) 505-5858

*Attorneys for Plaintiff*
The Ak-Chin Indian Community

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-09321 (ECH) |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | **Electronically filed on November 29, 2007** |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S POST-EVIDENTIARY HEARING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

Laura M.L. Maroldy, Esq.
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663

This 29th day of November, 2007.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
CATHERINE F. MUNSON
Georgia Bar No. 529621
E-mail: cmunson@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005

Phone: (202) 508-5800
*Attorneys for Plaintiff*
The Ak-Chin Indian Community