**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-cv-0932L-ECH |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | **Electronically Filed January 4, 2008** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S SUR-REPLY TO**
**PLAINTIFF'S POST-HEARING REPLY BRIEF**

RONALD TENPAS
ASSISTANT ATTORNEY GENERAL

Laura M. L. Maroldy
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044
Tel: (202) 514-4565
Fax: (202) 353-2021

Attorneys for the Defendant

OF COUNSEL
ELISABETH BRANDON
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PLAINTIFF SHOULD NOT BE PERMITTED TO CONTRADICT THE EVIDENCE BY UNSUPPORTED STATEMENTS IN ITS BRIEFING; FURTHERMORE, PLAINTIFF'S REPEATED CHANGES TO ITS STORY MAKE ITS VERSIONS OF EVENTS UNPERSUASIVE AND UNRELIABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. THE WITNESS'S TESTIMONY CONTRADICTS ITSELF AS WELL AS THE UNSUPPORTED EXPLANATION OFFERED IN PLAINTIFF'S REPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. THE INFORMATION THAT WAS PROVIDED AT THE DECEMBER 12th PROCEEDINGS IN THE *SALT RIVER* CASE ALSO CASTS DOUBT ON PLAINTIFF'S VERSIONS OF EVENTS . . . . . . . . . . . . . . . . . 10

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Hopkins ex rel. Hopkins v. Secretary of the Department of Health and Human Services,* WL 2454038 (Fed. Cl. 2007) . . . . . . . . . . . . . . . . . . . . . . 6

*Weeks v. Secretary of Health and Human Services,* WL 1263957 (Fed. Cl. 2007) . . . 6

## PENDING CASES

*Salt River Pima-Maricopa Indian Community v. United States,* Case No. 06-cv-00943L (Fed. Cl. Dec. 29, 2006) . . . . . . . . . . . . . . . . . 2

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-0932L-ECH |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | **Electronically filed January 4, 2008** |
| Defendant. | ) | |

**DEFENDANT'S SUR-REPLY TO
PLAINTIFF'S POST-HEARING REPLY BRIEF**

## I. BACKGROUND

This Court held a evidentiary hearing on October 24, 2007, regarding the order and timing of the Ak-Chin Indian Community's District Court and CFC December 29, 2006, filings. At the conclusion of the October 24, 2007, proceeding, this Court entered an Order providing for simultaneous post-hearing briefing by both parties on Friday, November 9, 2007, regarding the timing and sequence of the Ak-Chin filings, in light of the additional evidence received at the hearing. The parties' simultaneous opening briefs were to be followed by simultaneous reply briefs on Wednesday, November 14, 2007.

An emergency that arose late in the afternoon of November 9 prevented Defendant from finalizing and filing its opening post-hearing brief that day, as planned. (That matter was explained in Defendant's motion to extend time (Dkt. No. 38). Plaintiff meanwhile filed its Opening Post-Evidentiary Brief Opposing Defendant's Motion to Dismiss on November 9 (Dkt. No. 37). The Court later modified the applicable briefing schedule (*See* Dkt. Nos. 40 and 41) .

Under the new schedule, Defendant was required to file a combined opening and reply brief on November 21, and Plaintiff was required to file its reply to Defendant's brief by November 29 (Dkt. No. 41). (The modified briefing schedule did not give Defendant an opportunity to respond to Plaintiff's November 29 filing.)

In its brief Defendant argued, based on record evidence, that the December 29, 2006, filing of the Complaints in this Court on behalf of the Salt River Pima-Maricopa Indian Community and the Passamaquoddy Tribe of Maine, respectively, did not go as smoothly as Ms. Applegate testified that they did. Specifically, Defendant pointed to the evidence that there was a "false start" in connection with the CFC filings, resulting from Ms. Applegate's having to return to the office to get a missing "something," and then return to the CFC with it, and to the omission of that additional round-trip from Ms. Applegate's testimony. (Defendant's Brief, Dkt No. 42, at 19-20). In Plaintiff's Response to Defendant's Post-Hearing Brief ("Plaintiff's Reply"), Plaintiff attempted to explain away those matters with "facts" not found in the evidentiary record. *See* Plaintiff's Reply, at 12 (Dkt. No. 43).

Furthermore, in testimony given December 10, 2007, in a hearing in this Court before the Honorable Judge Lawrence M. Baskir in the above-referenced case styled *Salt River Pima-Maricopa Indian Community v. United States*, Case No. 06-943L, Plaintiff presented yet another, and contradictory, version of the facts going to the very same issue. (*See* Part III, *infra*.) After the December 10th hearing, the Court decided to hold an additional hearing to gather information from the Court's Deputy Chief of Operations, Lisa Reyes, regarding the receipts for the various filings performed in the CFC by Ms. Applegate on December 29, 2006.[1] That hearing took place

[1]*See* Exhibit A to Defendant's Motion For Leave To File Sur-Reply, Dkt. No. 44.

December 12, 2007.

In view of the discrepancies in and among the accounts presented by Plaintiff's counsel to the different Courts, and in anticipation that the information that transpired at the December 12th hearing was likely to bear on the facts at issue in this case, Defendant filed a motion on December 11, 2007, seeking leave to file a sur-reply to Plaintiff's reply brief. (Dkt. No. 44). Plaintiff opposed that motion, claiming that Defendant sought to file a sur-reply for the purpose of improper delay and had sought extensions of time in this case without good cause. (Dkt. No. 46). This Court rejected those assertions and granted Defendant's motion on December 18, 2007. (Dkt. No. 47). Accordingly, Defendant presents in this sur-reply its arguments on the evidentiary matters described above.

## II. PLAINTIFF SHOULD NOT BE PERMITTED TO CONTRADICT THE EVIDENCE BY UNSUPPORTED STATEMENTS IN ITS BRIEFING; FURTHERMORE, PLAINTIFF'S REPEATED CHANGES TO ITS STORY MAKE ITS VERSIONS OF EVENTS UNPERSUASIVE AND UNRELIABLE

In Defendant's post-hearing brief, Defendant noted that in Ms. Applegate's supposedly-complete testimony regarding the filings she performed on December 29, 2006, she failed to mention a "false start" in connection with the CFC filings, despite the fact that she unequivocally noted that event in her April 2007 communications with attorney Catherine Munson. In April 2007, Ms. Applegate reported to Ms. Munson, "As for the CFC, I know I went over and we were missing something so I had to come back to the office and get it, but I just don't know what time all of this happened." (Def.'s Hearing Exhibit 12, at PAS00482).

In its November 29, 2007, reply brief, Plaintiff attempted to explain away that unexpected trip from the CFC back to Plaintiff's counsel's office to get the missing "something" as a trip to pick up and take the Ak-Chin Complaint to the CFC for filing:

> "While Ms. Applegate initially recalled having to make a second trip to the
> Court of Federal Claims that day because she was "missing something" her first trip there, the reason Ms. Applegate was required to make a second trip to the Court of Federal Claims was because the ***Ak-Chin CFC Complaint*** was not ready when the other three Complaints were filed and it had to be delivered for filing that same morning."

Plf's Response, at 12-13 (Dkt. No. 43)(emphasis added). (*Cf.* October 24, 2007, HT: 17:22-18:16; 18:17-19:15; and 30:21-34:9 (three iterations of the account of the filings given in Ms. Applegate's October 24th testimony in this case.))[2]

The Court directed the parties to file post-hearing briefs to allow them to address the legal significance of the evidence admitted at the hearing, not to inject new "facts." More importantly, Plaintiff's argument is not based on *any* evidence, from the October 24th hearing or otherwise; rather, it consists of entirely new "facts." This Court should not credit Plaintiff's unfounded assertion, made for the first time in Plaintiff's post-hearing briefing, and without any evidentiary foundation. Moreover, as Defendant explains in greater detail *infra*, the very fact that Plaintiff continues to add and alter the "facts" relating to the December 29, 2006, filings underscores the unreliability of Plaintiff's versions of events. Indeed, it highlights the fact that Plaintiff has not met its burden of proof.

First, the explanation given in Plaintiff's briefing (and reproduced above in this paper) contradicts the wording of Ms. Applegate's April 2007 e-mail. In that communication to her colleague, Ms. Applegate did not speak of having to "make a second trip" because "the Ak-Chin Complaint was not ready when the other three Complaints were filed," as Plaintiff claimed in its reply filed in this Court in November. Instead, in her April e-mail, Ms. Applegate stated with

[2]All references herein to the October 24, 2007, hearing transcript are designated as "HT."

certainty that she was "missing something" in connection with the filings and therefore had to go back to the office and "get it." In short, her e-mail did not refer to a planned, routine "second trip" because one of the CFC Complaints was not yet ready when Ms. Applegate made her initial trip to the CFC, but rather to something unexpected – that she got to the CFC but found she was "*missing something and had to go back to the office and get it.*" (Def's. Hearing Ex. 12, at PAS00482.)

In addition to being contradicted by the admitted evidence in the case, Plaintiff's explanation in its reply brief finds no support in Ms. Applegate's October 24th testimony. In that testimony, not only did Ms. Applegate fail to mention the unplanned trip back to the office she noted in her e-mail to Ms. Munson, she also did not state that she went back to the office after performing the Salt River and Passamaquoddy CFC filings for the purpose of getting the Ak-Chin CFC Complaint for filing. Instead, she testified that she filed the Salt River and Passamaquoddy Complaints in the CFC; then walked back to the office, at which point she discovered the Complaints on behalf of those clients were ready to be filed in the District Court; took those Complaints to the District Court and filed them; came back to the office; then found that the Ak-Chin Complaint was ready for filing in the CFC; walked to the CFC to file the Ak-Chin CFC Complaint; returned to the office and found that the Ak-Chin District Court Complaint was ready for filing; and then made two additional round-trips to the District Court: one during which she said she left the Ak-Chin Complaint with the intake clerk; and a later trip, which, Plaintiff claims, was to "complete" or "perfect" that filing by paying the filing fee and picking up the summonses. HT: 17:22-18:16; 18:17-19:15; and 30:21-34:9. (That testimony was reproduced in Defendant's initial post-hearing brief, Dkt. No. 42, at 12-19).

For all of these reasons, this Court should reject Plaintiff's attempt to explain away the evidence of a "false start" affecting the timing and sequence of the CFC filings, which Ms. Applegate noted with certainty in her April 2007 e-mail -- "*I know I went over [to the CFC] and we were missing something so I had to come back to the office and get it*"[3] -- by "testifying" in its post-hearing brief that the unexpected episode was really something quite different, instead: a routine trip to pick up the Ak-Chin CFC Complaint for filing. There is no foundation in the record for that assertion, and it was made for the first time in Plaintiff's post-hearing filing. In the recent case of *Weeks v. Secretary of Health and Human Services*, WL 1263957 (Fed. Cl. 2007) the plaintiff argued for the first time in its posthearing brief that Te'Sijah suffered a "Table injury," such that the Court should presume the death was vaccine related. WL 1263957, FN 4. The Court rejected the plaintiff's argument, holding that:

> [A]s this jejune argument is not supported by any pleading, exhibit or evidence heretofore provided to the Court, or explained therein, the Court does not deem this argument worthy of further consideration or discussion.

*Id.*

Likewise, a party should not be permitted to use post-hearing briefing to interject new "evidence." *See Hopkins ex rel. Hopkins v. Secretary of the Department of Health and Human Services,* WL 2454038 (Fed. Cl. 2007)("The purpose of posthearing briefing is for the parties to wrap up all of the evidence presented in this case, not to submit new evidence.").

The Court should make its decision on the evidentiary record, which shows that the testimony of Plaintiff's sole witness is inconsistent with, among other things, her previous statements to her colleague about the day's filings and trips to the Courts.

---

[3] Def.'s Hearing Ex. 12, at PAS00482

## III. THE WITNESS'S TESTIMONY CONTRADICTS ITSELF AS WELL AS THE UNSUPPORTED EXPLANATION OFFERED IN PLAINTIFF'S REPLY

There are additional and independent reasons why this Court should disregard Plaintiff's unfounded attempt to explain away the December 29, 2006,"false start" at the CFC and Ms. Applegate's omission of it from her repeated accounts of the day's events. First, during the October 24th evidentiary hearing in this case, on re-direct, Plaintiff's counsel elicited testimony that the e-mail in which Ms. Applegate specifically volunteered the information to her colleague about the "false start" in connection with the December 29, 2006, CFC filings concerned the *Passamaquoddy* case and the *Salt River* case, and did not concern this (Ak-Chin) case. (*See* HT 70:11-71:22.) Indeed, Ms. Applegate testified on October 24th that the Ak-Chin Complaint was not filed with the first wave of CFC filings she performed on December 29 because it was not ready for filing (and not because she "forgot" to take it with her on her initial trip to the CFC). In fact, she testified that she did not file the Ak-Chin CFC Complaint until after she returned from her first round-trip to the District Court that day. *Id.* at 33:13-34:9; 39:24-40:10. Ms. Applegate further testified that the Ak-Chin CFC Complaint was not ready to be filed until after 11:41 a.m. *Id.* at 41:1-4. Likewise, in her December 10th testimony in the *Salt River* case before Judge Baskir, Ms. Applegate admitted that when she left for her initial trip to the CFC on December 29th, she knew the Ak-Chin CFC Complaint was not yet ready for filing. (*See* Exhibit A hereto, a photocopy

of the December 10, 2007, transcript, in the *Salt River* case, at 19 and 70:2-11)[4]. In short, the record evidence contradicts Plaintiff's assertion in its reply brief that Ms. Applegate's reference to a trip back to the office to get "something" that was "missing" referred instead to a routine second trip to perform the Ak-Chin CFC filing.

Moreover, in her December 10, 2007, testimony before Judge Baskir, Ms. Applegate offered yet another *completely new* and different explanation for her April 2007 statement to Ms. Munson about missing something in connection with the December 29 CFC filings and having to go back to the office to get it. Testifying before Judge Baskir, Ms. Applegate claimed that the trip back to the office to get the missing "something" did not relate to *any* of that day's filings in the CFC - not to *Salt River*, not to *Passamaquoddy*, not to *Tohono O'Odham*, and not, as Plaintiff claimed for the first time in its November 29, 2007, briefing in this case, to *Ak-Chin*. Instead, said Ms. Applegate, the missing "something" was "admissions packets." (*See* Ex. A hereto, December 10, 2007, *Salt River* transcript, at 35:18-37:2.)

When Kevin J. Larsen, counsel for the United States in *Salt River*, cross-examined Ms. Applegate as to why, in its briefing in this case less than two weeks earlier, Plaintiff had asserted that Ms. Applegate's statement about having to go back to the office for a missing "something" referred to the Ak-Chin CFC filing, Ms. Applegate merely offered an "assum[ption]" that she had not been "clear on [her] explanation" to her colleagues, resulting in the statement in

[4]Because there were problems with the originally-rendered transcript of the December 10, 2007, proceeding in the *Salt River* case, counsel of record for both parties in that case (namely, Kevin J. Larsen for the United States and Keith Harper, Esquire, for Plaintiff, the Salt River Pima-Maricopa Indian Community) were afforded the opportunity to listen to the digital audio recording of the December 10, 2007, proceeding. After that review, the parties agreed that certain changes should be made to the transcript as originally rendered. The attached transcript reflects those changes agreed-upon by counsel of record for the parties in the *Salt River* case.

Plaintiff's November 29th briefing that was completely at odds with her December 10th testimony:

> Q: Do you have any idea why this is different than your testimony on direct today?
>
> A: I don't. I can only assume that I wasn't clear on my explanation to those who drafted it.

December 10, 2007, *Salt River* transcript, 68:21-24. (*Also see, generally, id.* at 68:1-69:18.)

In summary: on October 24, 2007, Plaintiff's witness completely omitted from her testimony any mention to the unexpected trip back to the office and in fact testified that the e-mail containing the reference to the missing "something" referred only to the Salt River and Passamaquoddy filings, and not to *Ak-Chin*. In Plaintiff's November 29, 2007, filing, in response to Defendant's raising those discrepancies in its post-hearing briefing, Plaintiff alleged for the first time that Ms. Applegate's statement that she had to return to the office for a missing "something" actually referred to her trip to the office to get the Ak Chin CFC Complaint for filing. Then, just eleven days later, on December 10, 2007, before another Judge in another case involving the same legal issues and many common factual issues, Ms. Applegate testified that in fact, her statement in the April e-mail did not concern *any* of the filings referred to herein, but instead was a mistaken or "confused" recollection about another matter, specifically "admissions packets" delivered to the Court "in January [2007]." *See* Ex. A, the December 10, 2007, transcript, at 36:13-37:2.

The most charitable explanation for this bloom of discrepancies and inconsistencies, and those described in Defendant's initial post-hearing brief, is that Ms. Applegate's statements in

her sworn affidavits, testimony in *Ak-Chin*, testimony in *Salt River*, statements to colleagues, and the information she has provided for Plaintiff's answers to interrogatories and Court filings in this case and others are irremediably muddled and confused, perhaps as a result of the passage of time and the high stakes for all parties. [5] Whatever the reasons for the multiple material inconsistencies in and among Plaintiff's versions of the sequence and timing of the December 29, 2006, filings, this Court should conclude that Ms. Applegate's testimony regarding those matters is unreliable and unpersuasive. Furthermore, the Court should not afford any weight to Plaintiff's *post-hoc* attempts to explain, by newly-asserted and unsupported "facts," Ms. Applegate's omission from her October 24th testimony of her unplanned trip back to the office from the CFC to get the "something" that was missing in connection with the filings. As Defendant explained in its initial post-hearing brief, that omission undermines all of the testimony, and the credibility, of Plaintiff's sole witness.

## IV. THE INFORMATION THAT WAS PROVIDED AT THE DECEMBER 12th PROCEEDING IN THE *SALT RIVER* CASE ALSO CASTS DOUBT ON PLAINTIFF'S VERSIONS OF EVENTS

As noted above, Judge Baskir held a proceeding on December 12, 2007, to hear directly from Court personnel about the Court's procedures respecting the filing and receipting of Complaints. (A photocopy of the December 12, 2007, transcript from that proceeding in the *Salt*

---

[5]For example, Ms. Applegate's response during the December 10th proceeding, when asked by counsel for the United States how "admissions packets" could have been confused with a reference to the Ak-Chin Complaint was: "It was a confusing day, Mr. Larsen." (Ex. A hereto, the December 10, 2007, *Salt River* transcript, 69:1-9.) Similarly, Ms. Applegate stated that she "recanted" some part of some version she had given of the events of December 29, 2006. *Id.* 72:9-12. Likewise, Ms. Applegate testified on direct that her e-mail about the "missing something" was the result of confusion: "I believe I got that confused with admissions packets that I had to bring over in January 2007... ." *Id.* 36:21-24.

*River* case is attached hereto as Exhibit B. *See id.* 3:3-4:5, regarding the purpose and nature of the proceeding.) During that proceeding, Deputy Chief of Operations Lisa Reyes confirmed that receipts for Complaints filed in the Court are issued in numerical order, from lowest to highest. *Id.* 5:2-8 (Ms. Reyes's position); and 12:22-14:22 (receipts are issued from a receipt book; order in which receipts are issued).

Although Ms. Reyes stated that the receipts might not be issued in the same order in which the Complaints are filed, they are issued from a receipt book in numeric sequence - lower to higher numbers. *Id.* 14:4-22; and 17:8-18:2. In short, one can tell which receipt of a group of numbered receipts was issued first: the one bearing the lowest receipt number. *Id.* 14:4-22.

The receipts issued by the CFC on December 29, 2006, for the *Passamaquoddy, Salt River*, and *Tohono O'Odham* cases bear receipt numbers 065957, 065958, and 065959, respectively. *See* Ex. A hereto, the December 10, 2007, *Salt River* transcript, at 72:21-78:13. (Photocopies of the receipts, Defendant's Exhibits 7 (Salt River), 10 (Ak-Chin), 11 (Passamaquoddy), and 12 (Tohono) from the December 10, 2007, *Salt River* hearing, are attached hereto collectively as Exhibit C).

In other words, the receipt issued by the Clerk's office for the *Ak-Chin* Complaint in this Court, receipt no. 065946, was issued before those issued for the other cases Ms. Applegate filed that day. *Id.* 17:8-18:12 and 741-75:7. (*See also* the Court's electronic PACER docket for this case, at docket entry 1, noting the receipt issued for the Complaint in this case was receipt no. 065946. A photocopy of that docket sheet, Def's. Ex. 20 in the December 10, 2007, hearing in *Salt River,* is attached hereto as Exhibit D.)

Ms. Applegate testified that she received the receipts when she filed the Complaints in

question in the CFC. (December 10, 2007, transcript, Ex. A hereto, at 20:2-9 and 54:1-55:14 (receiving the Salt River, Tohono, and Passamaquoddy receipts at the time she filed those Complaints in the CFC); 61:15-62:4 (receiving the Ak-Chin receipt at the time she filing that Complaint in the CFC); *also see id.* 77:21-24.

Accordingly, it follows logically that the Ak-Chin Complaint was actually the first Complaint Ms. Applegate filed in the CFC on December 29, 2006. That is so because it was issued a receipt number several numbers lower than the those issued for the Passamaquoddy, Salt River, and Tohono Complaints respectively, for which higher, and sequential numbers were issued.

And since there is no dispute that the Ak-Chin CFC Complaint was not filed until sometime after 11:41 a.m.[6], that means the others were filed after Ak-Chin, and not before, as Ms. Applegate testified. This, too, casts doubt on the sequence of events Ms. Applegate repeatedly recited during the October 24th hearing in this case.

**V. CONCLUSION**

For all of the reasons Defendant has set forth in its briefing, Defendant's motion to dismiss should be granted.

Respectfully submitted this 4th day of January 2008,

RONALD J. TENPAS
ASSISTANT ATTORNEY GENERAL

*s/Laura M.L.Maroldy*

[6] *See, e.g.*, Defendant's post-hearing brief (Dkt. No. 42, at 21).

Laura M.L. Maroldy
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 514-4565
Fax: (202) 353-2021

Attorneys for Defendant

OF COUNSEL
ELISABETH BRANDON
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240