IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-09321 (ECH) |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | **Electronically filed on January 7, 2008** |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN RESPONSE TO THE COURT'S REQUEST FOR BRIEFING REGARDING THE OPINION ISSUED IN *TOHONO O'ODHAM v. UNITED STATES***

KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 508-5800
Fax: (202) 505-5858

*Attorneys for Plaintiff*
The Ak-Chin Indian Community

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION. .......... 1

II. THE PRINCIPAL DISTINCTION BETWEEN THIS CASE AND *TOHONO O'ODHAM* IS THAT AK-CHIN'S DISTRICT COURT ACTION WAS NOT PENDING AT THE TIME IT FILED ITS COURT OF FEDERAL CLAIMS COMPLAINT.......... 2

III. THE COURT'S LEGAL ANALYSIS IN *TOHONO O'ODHAM* DEPARTS FROM FEDERAL CIRCUIT PRECEDENT SET FORTH IN *LOVELADIES*.......... 3

A. The Court In *Tohono O'odham* Construed § 1500 Broadly, Rather Than Narrowly As *Loveladies* Requires. .......... 4

B. The Court In *Tohono O'odham* Erroneously Concluded There Is An Overlap Between The Relief Requested In The CFC And In The District Court. .......... 6

1. Ak-Chin and Tohono O'odham Do Not Seek An Accounting In The CFC. .......... 7

2. The Court in *Tohono O'odham* Erred by Concluding Tohono O'odham Requested In The District Court The Same Money It Requested Here. .......... 12

C. The Court's Legal Analysis Of The Facts In The *Tohono O'odham* Decision Departs from Federal Circuit Precedent. .......... 15

IV. CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bowen v. Massachusetts*,
487 U.S. 879 (1988)........ 12

*Branch v. United States*,
29 Fed. Cl. 606 (1993)........ 16

*Breneman v. United States*,
57 Fed. Cl. 571 (2003),
*aff'd*, 97 Fed. Appx. 392 (Fed. Cir. 2004) ........ 2

*Clark v. United States*,
322 F.3d 1358 (Fed. Cir. 2003) ........ 15

*Cobell v. Norton*,
240 F.3d 1081 (D.C. Cir. 2001)........ 10

*Cooke v. United States*,
77 Fed. Cl. 173 (2007)........ 13, 16

*d'Abrera, v. United States*,
78 Fed. Cl. 51 (2007)........ 16

*Fire-Trol Holdings, LLC v. United States*,
65 Fed. Cl. 32 (2005)........ 16

*Harbuck v. United States*,
378 F.3d 1324 (Fed. Cir. 2004) ........ 12

*Hardwick Bros. Co. II v. United States*,
72 F.3d 883 (Fed. Cir. 1995) ........ 2

*Heritage Minerals, Inc. v. United States*,
71 Fed. Cl. 710 (2006)........ 16

*Johns-Manville Corp. v. United States*,
855 F.2d 1556 (Fed. Cir. 1988) ........ 13

*Keene Corporation v. United States*,
508 U.S. 200 (1993)........ 7, 12, 17

*Klamath & Modoc Tribes*¸
174 Ct. Cl. 483, 1966 WL 8850........ 9, 11

*Loveladies Harbor, Inc. v. United States*,
27 F.3d 1545 (Fed. Cir. 1994) ............................................................................ passim

*Lucas v. United States*,
25 Cl. Ct. 298 (1992) ............................................................................................ 16

*Nicholson v. United States*,
770 Fed. Cl. 605 (2007) ......................................................................................... 15

*Osage Nation v. United* States,
57 Fed. Cl. 392 (2003) ........................................................................................... 11

*OSI, Inc. v. United States*,
73 Fed. Cl. 39 (2006) ............................................................................................. 14

*Porter v. Warner Holding Co.*,
328 U.S. 395 (1946)............................................................................................... 13

*Sawyer v. United States*,
930 F.2d 1577 (Fed. Cir. 1991) ............................................................................. 15

*Stone v. Immigration and Naturalization Serv.*,
514 U.S. 386 (1995)................................................................................................. 5

*Sun Eagle Corp. v. United States*,
23 Cl. Ct. 465 (1991) ............................................................................................... 4

*Tecon Eng'rs, Inc. v. United States*,
343 F.2d 943 (Fed. Cl. 1965)................................................................................... 2

*Tohono O'odham Nation v. United States*,
No. 06-944L (Fed. Cl. Dec. 19, 2007) ................................................................ 5, 6, 7, 8

*United States v. Mitchell*,
463 U.S. 206 (1983)............................................................................................... 15

*West Coast Gen. Corp. v. Dalton*,
39 F.3d 312 (Fed. Cir. 1994) ................................................................................... 4

*Williams v. United States*,
71 Fed. Cl. 194 (2006) ........................................................................................... 16

**Statutes**

28 U.S.C. § 1500.................................................................................................. passim

5 U.S.C. § 702.................................................................................................... 12, 13

**Other Authorities**

1 Dan R. Dobbs, *Law of Remedies* § 4.1(2) (2d ed. 1993) ........................................... 13

George Gleason Bogert, et al., *The Law of Trusts & Trustees* § 963 (3d ed. 2001)................. 9, 10

## I. INTRODUCTION.

In an Order dated December 21, 2007, the Court ordered additional briefing regarding the opinion issued on December 19, 2007 in *Tohono O'odham v. United States*, No. 06-944L. The Court requested briefing regarding (1) the distinctions, if any, between the complaints at issue in *Tohono O'odham* and the complaints here that would support a legal analysis different from the court's analysis in the *Tohono O'odham* decision, and (2) whether any aspects of the court's legal analysis in *Tohono O'odham* are inapplicable to this case.

As detailed below, the principal distinction between the complaints at issue in *Tohono O'odham* and the complaints at issue here is that Ak-Chin's claim in the District Court was not pending at the time it filed its complaint in the Court of Federal Claims (CFC). Therefore, its complaint in the CFC should not be dismissed under 28 U.S.C. § 1500 without regard to the issues addressed in *Tohono O'odham*.

Furthermore, even if there were no difference in the timing of the complaints in the two cases, there are a number of dispositive errors in the court's legal analysis in *Tohono O'odham* that stem from an overly broad reading of § 1500 that is inconsistent with the Federal Circuit's direction to read § 1500 narrowly and, therefore, should not be applied here. Beyond these particular errors, moreover, the lynchpin of the court's opinion in *Tohono O'odham* is that plaintiff can get the same relief in both courts (and thus that the dismissal of Tohono O'odham's claims in the CFC does not ultimately matter). That is not correct. If Plaintiff-Beneficiaries' claims are dismissed in this court, they will not be able to obtain the same relief in the District Court because Plaintiff-Beneficiaries have not requested, and that court does not have jurisdiction to award, the relief sought here – namely money damages as compensation for loss. Therefore, Ak-Chin's claims should not be dismissed under § 1500 as the government contends.

## II. THE PRINCIPAL DISTINCTION BETWEEN THIS CASE AND *TOHONO O'ODHAM* IS THAT AK-CHIN'S DISTRICT COURT ACTION WAS NOT PENDING AT THE TIME IT FILED ITS COURT OF FEDERAL CLAIMS COMPLAINT.

This Court has requested that the parties address the distinctions, if any, between the complaints at issue in this case and in *Tohono O'odham* that would support a legal analysis different from the court's analysis in the *Tohono O'odham* decision. The principal distinction between the complaints at issue in the two cases is that in *Tohono O'odham*, it was not disputed that the district court action was filed and pending at the time Tohono O'odham filed its Court of Federal Claims action. In contrast, as this Court well knows, here Ak-Chin has established that it filed its Court of Federal Claims Complaint prior to filing its equitable accounting action in the District Court. Because a later-filed district court action does not divest the Court of Federal Claims of jurisdiction that was earlier properly established, this timing issue is dispositive of this Court's jurisdiction. *See Hardwick Bros. Co. II v. United States*, 72 F.3d 883, 886 (Fed. Cir. 1995); *Breneman v. United States*, 57 Fed. Cl. 571, 575 (2003), *aff'd*, 97 Fed. Appx. 392 (Fed. Cir. 2004); *Tecon Eng'rs, Inc. v. United States*, 343 F.2d 943, 949 (Fed. Cl. 1965). Therefore, this Court has an independent ground to deny the government's Motion to Dismiss that was not before the court in *Tohono O'odham*.

While there are factual circumstances supporting Ak-Chin's claims for damages here that differ from those supporting Tohono O'odham's claims, Ak-Chin concedes there are not other substantive distinctions between the complaints for purposes of § 1500. Here, as in *Tohono O'odham*, Ak-Chin does not seek the same relief in both courts. In the District Court, Ak-Chin asks for equitable remedies available in that court for the breach of a duty to account – an order directing the government to provide that accounting and other appropriate equitable relief, including restatement of Ak-Chin's accounts to reflect the results of that accounting. It does not,

however, request money damages to compensate Ak-Chin for losses resulting from imprudent investment or mismanagement of Ak-Chin's trust assets. The latter form of relief is only requested – and is only available – in this Court.

So too, Ak-Chin's claim in the District Court, like Tohono O'odham's claim in that court, arises from different operative facts involving the breach of a different trust duty from its claims in this Court. In the District Court, Ak-Chin seeks to compel the government to provide a complete, accurate, and adequate accounting of all of the property it holds in trust for Ak-Chin's benefit. The operative facts necessary to establish the breach of that trust obligation include decades of inaction on the part of the United States in the fulfillment of this core duty and the government's failure to maintain adequate records for Ak-Chin even to ascertain the true state of its trust assets.

In this Court, by contrast, Ak-Chin will prove distinct breaches of trust in the management of its trust funds and non-monetary trust assets. The operative facts include, for example, loss of investment funds as a result of the United States' breach of its fiduciary duty to maximize trust income by prudent investment and the failure of the United States to obtain fair and reasonable compensation for the use of Ak-Chin's land and other non-monetary assets. In both cases, the relief sought and the facts material to the claims in the two courts are not the same.

## III. THE COURT'S LEGAL ANALYSIS IN *TOHONO O'ODHAM* DEPARTS FROM FEDERAL CIRCUIT PRECEDENT SET FORTH IN *LOVELADIES*.

Although Ak-Chin concedes that, with the exception of the timing issue, there are not substantive distinctions between the complaints at issue here and the complaints in *Tohono O'odham*, this Court need not, and should not, apply the legal analysis adopted by the court in that case. This Court should not adopt the legal standards or analysis applied in the *Tohono*

*O'odham* decision because they are flawed on several key grounds. And, as this Court knows, it is not bound by the result in *Tohono O'odham* nor obliged to follow its reasoning. *See West Coast Gen. Corp. v. Dalton*, 39 F.3d 312, 315 (Fed. Cir. 1994) (Court of Federal Claims decisions "do not set binding precedent for separate and distinct cases in that court"); *Sun Eagle Corp. v. United States*, 23 Cl. Ct. 465, 473 (1991) ("Claims Court decisions are not binding precedent."). The importance of a careful, independent inquiry is all the more important here in order to ensure that Ak-Chin is not unnecessarily and unlawfully deprived of the opportunity to vindicate all of its claims, including its claims for money damages in the CFC.

The errors in the court's decision in *Tohono O'odham* fall into three categories. First, the court erred by construing § 1500 broadly, rather than narrowly, leading the court to an incorrect standard different from the one the Federal Circuit defined in *Loveladies*. Second, the court erroneously concluded there is an overlap between the equitable accounting and other equitable relief sought in the District Court and the money damages sought here in the CFC. Finally, the court compared "background" facts rather than, as the Federal Circuit requires, the operative facts.

### A. The Court In *Tohono O'odham* Construed § 1500 Broadly, Rather Than Narrowly As *Loveladies* Requires.

At the most fundamental level, the court in *Tohono O'odham* erred in its framing of the issues to be decided in these cases. It did not apply § 1500, as *Loveladies* requires, as narrowly as possible. As the Federal Circuit has recognized, § 1500 must be construed narrowly and should not be applied to restrict the CFC's jurisdiction in any respect beyond that which it expressly requires. *See Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1556 (Fed. Cir. 1994) (Cautioning that "[w]hatever viability remains in § 1500, absent a clear expression of Congressional intent we ought not extend the statute to allow the Government to foreclose non-

duplicative suits, and to deny remedies the Constitution and statutes otherwise provide."); *see also Stone v. Immigration and Naturalization Serv.*, 514 U.S. 386, 415 (1995) (Jurisdictional statutes "must be construed with strict fidelity to their terms."). In *Tohono O'odham*, rather than focusing strictly on a comparison of the ***operative*** facts alleged in the District Court and CFC Complaints or the relief ***expressly requested*** in the complaints, the court looked broadly at the similarities between the allegations in the two complaints to determine "whether there is ***meaningful overlap*** both in the underlying facts and in the relief sought in the two actions." *Tohono O'odham Nation v. United States*, No. 06-944L, Slip Op. at 21 (Fed. Cl. Dec. 19, 2007) ("Slip Op.") (emphasis added). The Federal Circuit in *Loveladies* nowhere referred to a "meaningful overlap" between the operative facts or the relief, but instead required that the "claim pending in another court must arise from ***the same operative facts*****,** and must seek ***the same relief***." *Loveladies*, 27 F.3d at 1551 (emphasis in original).

Elsewhere, the court in *Tohono O'odham* stated a different, but similarly overbroad standard. There, the court defined the inquiry as whether "[a]s a practical matter, … the same background facts [will] be relevant" and whether "the relief, in substance [will] be the same?" Slip Op. at 22. These tests are far broader, and far less precise, than the two-prong analysis mandated by *Loveladies*. The standard under § 1500 must not be relaxed to permit dismissal of claims for relief that are merely similar or related to relief requested in another court, but will not lead to double recovery, merely because there is overlap between the subject matter of the two cases. In order to ensure that § 1500 is not extended to allow the government to foreclose non-duplicative suits, a narrow reading of § 1500 requires that any similarities between the cases be ***material***. This is why the *Loveladies* court focused the inquiry on the relief actually requested and the operative facts necessary to prove each claim, not on any similarities or overlap between the cases. *See also infra* pp. 6-7.

This broad focus on overlapping allegations rather than on the operative facts and the relief affirmatively requested in the complaints led to other errors in the court's opinion, as described below.

### B. The Court In *Tohono O'odham* Erroneously Concluded There Is An Overlap Between The Relief Requested In The CFC And In The District Court.

Even if there were 100% overlap between all of the facts and allegations in the two cases, all that is needed to avoid the § 1500 bar is different requests for relief in the two courts. Ak-Chin and Tohono O'odham have asked for a general equitable accounting of all of their assets in the district court and money damages here. The court in *Tohono O'odham* recognized this difference in the relief sought, but described it only as a difference in "focus." *See* Slip Op. at 14. Instead, the court considered it "obvious that there is virtually 100 percent overlap" between the relief requested in the two cases. *Id.* at 22. This conclusion is impossible to square with the relief actually requested in the complaints at issue in that case, or those at issue here. In fact, there is absolutely no request for an accounting (not even an accounting in aid of judgment) in the CFC Complaints and the *Tohono O'odham* decision relies upon a single reference in support of its conclusion that the Tribes seek overlapping "money" in the District Court Complaints. *See* Dist. Ct. Compl. Prayer ¶ 6 (the request for a "restatement of the Community's trust fund account balances in conformity with [the] accounting" and "any other equitable relief that may be appropriate."). As Ak-Chin has explained, the latter request is not only for a type of relief that is different in nature from the money damages specifically requested in this court, but also different money altogether. Rather than virtually complete overlap, therefore, there is no overlap at all.

The court in *Tohono O'odham* emphasized its view that the test is whether the plaintiff seeks relief in the two courts that is "distinctly different." *Loveladies*, 27 F.3d at 1554 (quoting

*Keene Corporation v. United States*, 508 U.S. 200, 216 (1993)). It mistakenly concluded, however, that the emphasis on relief that is "distinctly different" means § 1500 applies if there is any overlap in the allegations contained in the complaint (rather than in the material, operative facts) or if the claims seek similar or related requests for relief (even if those requests for relief are materially different). *See* Slip Op. at 20-21.

The Federal Circuit in *Loveladies* rejected a similar attempt to find overlap based upon non-material similarities. There, the government argued that repeated allegations in the two complaints about the arbitrary nature of the government's denial of a wetlands permit, ***and even the inclusion of overlapping requests in the prayers for relief that the court declare that the government's action in denying the permit constituted a taking***, meant that the plaintiffs had brought the same claim in both courts. *Loveladies*, 27 F.3d at 1553. Instead, the Federal Circuit held that the complaints must be read "in light of the legal and factual circumstances in which they were drawn," and noted that the plaintiffs "might have framed their pleadings with more precision," but concluded there was "little doubt what was intended by the prayers for relief contained in them." *Id.* at 1554. At bottom, even if there is some similarity, what is important for § 1500 purposes is whether the complaints request the same relief, or seek to accomplish the same end twice, in two different fora. Contrary to the Court's decision in *Tohono O'odham*, that is not the case here.

### 1. Ak-Chin and Tohono O'odham Do Not Seek An Accounting In The CFC.

Critically, the court in *Tohono O'odham* erroneously concluded that both complaints request an accounting. *See* Slip Op. at 26 ("Both actions … will require an accounting."). The CFC Complaint in that case quite simply makes no request for an accounting – there is no demand for a general equitable accounting; nor is there even a request for an "accounting in aid



US2000 10541901.2

of judgment" (which was fully appropriate because an accounting in aid of judgment is not ***relief*** and thus need not be prayed for in the complaint). The same is true in this case. There is no demand for an accounting in the Prayer nor anywhere else in the CFC Complaint.

The court in *Tohono O'odham* suggests that Tohono O'odham has nonetheless implicitly requested an accounting in the Court of Federal Claims because an accounting in aid of judgment "is unavoidable here and will be coextensive with all of the plaintiff's claims of breach." Slip Op. at 26. Even if that ultimately turns out to be correct, as the *Tohono O'odham* court recognized, the "language of the complaints controls." Slip Op. at 22. It is the relief the parties "seek" that matters. *Loveladies*, 27 F.3d at 1551. If at some point the court determines an accounting in aid of judgment (something quite different from a general accounting, as discussed in detail below) is necessary to determine the quantum of money damages to be awarded, then the court will do so, but that does not mean the ***relief requested*** in the two complaints is the same, or even overlaps, for purposes of § 1500.

Indeed, it is entirely possible that an accounting in aid of judgment may not even be necessary. Information produced in the course of pre-trial discovery may well be sufficient to prove not only the government's liability for breach of money-mandating trust duties, but damages as well. The point is that at this early stage of the litigation, there is simply no way of knowing the extent to which (or even whether) an accounting in aid of judgment may be an appropriate tool for the Court to employ in calculating the amount of money damages that Ak-Chin is entitled to recover for the government's mismanagement of its trust funds and other assets.

Moreover, even if Plaintiff-Beneficiaries sought an "accounting in aid of judgment" in their CFC Complaints, this is a far cry from the general accounting requested, and available, in the District Court (and which is beyond the jurisdiction of this court to award, *see infra* p. 11).

An accounting in aid of judgment is not a form of relief at all. Instead, it is a means at the court's disposal to determine the quantum of damages after the plaintiff has proven liability at trial. As the Court of Claims recognized in *Klamath & Modoc Tribes*, in a suit for money damages, "after a trial on the issue of liability," if "it is held that defendant has violated its statutory fiduciary obligations," it is within the court's jurisdiction to order an accounting in aid of the judgment "for the purpose of enabling the court to determine the amount which plaintiffs are entitled to recover." *Klamath & Modoc Tribes v. United States*, 174 Ct. Cl. 483, 1966 WL 8850, at *6 (1966). This "accounting" is a procedural mechanism available to the court to compel the government to provide information relevant to the damage inquiry and to ensure that the court's award of ***money damages*** is accurate.

The accounting in aid of judgment is nothing like the pre-liability, complete accounting of their assets Plaintiff-Beneficiaries seek in the District Court. That claim for an accounting exists irrespective of any showing of liability or entitlement to money damages; it is itself ***the relief*** that Plaintiff-Beneficiaries seek. George Gleason Bogert, et al., *The Law of Trusts & Trustees* § 963 (3d ed. 2001) ("In order to obtain an accounting it is not necessary for the beneficiary to allege that there is any payment due him under the trust or that the trustee in some way is in default."). By contrast, the accounting in aid of judgment, like discovery, is just a judicial tool useful to the court to conduct the litigation and to provide the ultimate relief the plaintiff is entitled to. It is not itself the relief the plaintiff seeks. Thus, the suggestion that the requests for relief in the two courts overlap because the CFC could invoke an accounting in aid of judgment is like suggesting that a claim in this court overlaps with a FOIA request in another court because the court might permit the parties to engage in discovery here that could result in the production of some of the same documents.

Moreover, the general accounting Plaintiff-Beneficiaries seek in the District Court is of an entirely different scope than an accounting in aid of judgment. In an accounting in aid of judgment, the scope of the inquiry is necessarily circumscribed. It is limited to determining damages for the specific ways in which the plaintiff has proven that the United States has breached its duties to plaintiffs. It is derivative of, and inextricably tied to, a determination of liability for breach of a money-mandating duty. In contrast, a general accounting will require the government, as trustee, to render a formal and detailed account of all of the land, funds, and resources the government holds in trust. *See Cobell v. Norton ("Cobell VI")*, 240 F.3d 1081, 1102 (D.C. Cir. 2001); George Gleason Bogert, et al., *The Law of Trusts & Trustees* § 963 (3d ed. 2001). The government, as trustee of Plaintiff-Beneficiaries' assets, will have to provide a vast quantity of information, much of which is completely unrelated to, and could not under any circumstances lead to, an award of money damages in this court.

For example, an accounting might identify and provide information about encumbrances across a tribe's land that is essential to the management and proper, effective utilization of those assets. Indeed, the Ak-Chin Community is located in an area experiencing unprecedented growth and accurate information about the encumbrances upon its land is critical to its ability to protect its rights in ongoing negotiations and other dealings with developers, local governments and the State regarding the expansion of roads and other issues affecting its reservation. There is no revelation of a damages action with respect to these encumbrances; thus, Ak-Chin cannot obtain this information pursuant to an accounting in aid of judgment.

A full and complete accounting would also provide other important information that would enable the Community to make a host of judgments about its assets that are unrelated to its claims for money damages. It might provide information that would lead to a suit against third parties, or that would enable Ak-Chin to decide whether to withdraw certain of its assets

from the management of the United States. It might also identify an expired right-of-way, define the boundaries of the reservation, or identify assets in which Ak-Chin was unaware it possessed a beneficial interest. A wealth of information available through a general accounting cannot be obtained in this court as the result of an accounting in aid of judgment that can be invoked only to the extent necessary to calculate money damages against the United States.

What is more, it is well settled that this court does not even have jurisdiction to award such a general accounting. *See Osage Nation v. United* States, 57 Fed. Cl. 392, 393 n.2 (2003). Indeed, as the court recognized in *Klamath & Modoc Tribes*, while such an accounting was once expressly available to Indian Tribes before the Indian Claims Commission ("ICC"),[1] Congress clearly did not confer jurisdiction on this court to entertain an action by an Indian tribe for a general accounting. 174 Ct. Cl. 483, 1966 WL 8850, at *3-*5. The court in *Tohono O'odham* erroneously suggests that an accounting in aid of judgment is a "full accounting," and therefore essentially a back-door method to obtain the specific equitable relief of a general accounting, which would otherwise be unavailable in the CFC. *See* Slip Op. at 15 ("The United States, as trustee, would have to meet plaintiff's prima facie case of breach with a full accounting for its conduct. In short, assuming this action were to proceed in this court, and plaintiff satisfied its burdens of proof, what would ensue would amount to an accounting, albeit in aid of judgment"). A "full accounting" simply is not available in this Court.

Therefore, the court's legal analysis in *Tohono O'odham* is inapplicable here because the court erroneously concluded that Tohono O'odham sought an accounting in aid of judgment in the CFC and because it concluded its authority to invoke this mechanism was the same as Tohono O'odham's request for an equitable accounting in the District Court.

---

[1] Because of the limitations of the ICC's jurisdiction and the interpretation of the Indian Claims Commission Act by the ICC and the Claims Court, even the accounting that was available there is not as broad as the one available in the district court now.

**2. The Court in *Tohono O'odham* Erred by Concluding Tohono O'odham Requested In The District Court The Same Money It Requested Here.**

The court in *Tohono O'odham* also erred by holding that § 1500 barred Tohono O'odham's claim for money damages in the CFC because its requests for a restatement of its accounts in conformity with the account might result in a payment or transfer of money.

There are two important errors in the court's approach: (1) any transfer of money granted in the District Court pursuant to that court's authority to restate account balances in conformity with the accounting sought there (*e.g.*, equitable restitution and disgorgement) would not be the same ***type*** of relief as the money damages sought here as compensation for mismanagement of a tribe's funds and assets; and (2) even if the two kinds of relief are the same because they are both money, § 1500 is not implicated because the two complaints seek different money.

First, the court in *Tohono O'odham* rejected the distinction between money damages and equitable restitution or disgorgement on the ground that it is relevant only to the statutory boundaries of the district court's jurisdiction under 5 U.S.C. § 702 (excluding actions for money damages) and not to the inquiry under § 1500. *See* Slip Op. at 26. What is relevant to the § 1500 inquiry, however, is whether the two complaints seek the same relief. And the distinction between money damages and equitable relief is not merely a creature of a particular statute. *See Harbuck v. United States*, 378 F.3d 1324, 1329 (Fed. Cir. 2004) (citing *Keene*, 508 U.S. at 212) (dismissing case under § 1500 because overlapping claims both sought "money damages"). The Supreme Court in *Bowen v. Massachusetts*, 487 U.S. 879 (1988), as well as many other courts in cases cited in Plaintiff-Beneficiaries' principal brief, have observed a dividing line between claims for relief in the form of money damages, which are "intended to provide a victim with monetary compensation for an injury to his person, property, or reputation," and actions for equitable relief directing the return of specific property or monies. *Id.* at 893. It is a distinction

in relief that arises not from § 702's use of the term "money damages" but from the age-old distinction between the relief available in courts of equity and courts at law. *Id.*; *see also* 1 Dan R. Dobbs, *Law of Remedies* § 4.1(2), at 557 (2d ed. 1993) ("[*R*]*estitution* is not *damages*; restitution is a restoration required to prevent unjust enrichment.") (emphases in original)); *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946) ("Restitution, which lies within that equitable jurisdiction, is consistent with and differs greatly from … damages."). Even if the jurisdiction of this Court and the District Court to award relief do not map perfectly onto the jurisdictions of the divided court system, it is accurate to say, and consistent with § 1500, that equitable relief that is monetary in nature is not the same ***type*** of relief as an award for money damages sought here. What matters is that the relief requested in the two courts is different in nature, not whether that relief can be measured in dollars.

Second, even if there is a request for relief in both courts that is the same in nature (*i.e.*, money, according to the court in *Tohono O'odham*), this, by itself, is not enough to trigger § 1500. The two actions must also seek the same money. The purpose of § 1500 is to "'force an election where both forums could grant the same relief, arising from the same operative facts,' and thus prevent the Government from having to defend two separate lawsuits based on the same claim." *Cooke v. United States*, 77 Fed. Cl. 173, 178 (2007) (quoting *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1564 (Fed. Cir. 1988)). Therefore, where two claims seek different measures and amounts of monetary relief, the relief requested in the two different courts is not the same and § 1500 is not implicated. *See Cooke v. United States*, 77 Fed. Cl. 173, 178 (2007) (§ 1500 did not apply where plaintiffs claims sought "distinct relief because the full amount of requested relief [could] be granted for each claim in a different form and measure, and thus there [was] no risk of subjecting the Government to double liability"); *OSI, Inc. v. United*

*States*, 73 Fed. Cl. 39, 45 (2006) (two claims were not the same when each sought different measures and amounts of monetary relief).

Ak-Chin seeks a different recovery in the two different courts. In the District Court, Ak-Chin requests return of specific monies to which the government's own account records, when accurately stated, indicate Ak-Chin is entitled. To put it differently, it is a request for "old money" already in the government's possession that must be returned to Ak-Chin in accordance with the accounting and restatement of its accounts. Ak-Chin is ***not*** seeking compensation for losses resulting from imprudent investment or mismanagement of Ak-Chin's trust assets in the District Court. That "new money," which should have been earned but never was, constitutes money damages and must be provided through the payment of damages in the CFC in order to make Ak-Chin whole. The only pending claims for such money damages are in this court, which is the only court with jurisdiction to award them. Nor should Ak-Chin's request for "additional equitable relief that may be appropriate" be read to include these claims for money damages. Ak-Chin's request for equitable relief in the District Court should not be read to embrace a request for money damages that court would not even have jurisdiction to award.[2]

Moreover, the court in *Tohono O'odham* provides no support for its conclusion that the action in this court "seek[s] a restatement of accounts, restitution and disgorgement." *Tohono O'odham*, Slip Op. at 26. There is no such request in the CFC Complaints.[3] The only references

---

[2] The court in *Tohono O'odham* mistakenly concluded that the thrust of Tohono O'odham's position was that because the powers of the courts are different, "whatever relief the district court grants is *per se* not duplicative of what this court can do" and, therefore, as a matter of law "there cannot be the same 'claim' pending for purposes of section 1500." Slip Op. at 21. That is not correct. It is certainly possible for a plaintiff to make claims that exceed the jurisdiction of the courts in which it filed those claims. However, in these cases Plaintiff-Beneficiaries specifically filed two separate claims in two different court's according to each court's jurisdiction. Therefore, the complaints, and requests for further appropriate relief, should be read in light of each court's jurisdiction to award certain relief.

[3] The court in *Tohono O'odham* suggests that the scope of this court's jurisdiction to award relief is broader, and overlaps more in these cases with the district court's equitable jurisdiction than other cases

are to money damages for mismanagement and imprudent investment of trust assets. Therefore, even if this Court did have jurisdiction to award the same money that will be obtained in the course of the accounting and restatement, Ak-Chin has not requested that money here. Therefore, the relief sought in the two courts is wholly separate and distinct.

In sum, the court in *Tohono O'odham* erred by concluding that the relief Tohono O'odham sought in that court overlapped with the relief sought in this court and the legal analysis adopted there should not be applied here.

**C. The Court's Legal Analysis Of The Facts In The *Tohono O'odham* Decision Departs from Federal Circuit Precedent.**

For this Court to be precluded from hearing a claim under § 1500, the claim pending in another court also must arise from the "same operative facts." *Loveladies*, 27 F.3d at 1551. The *Tohono O'odham* decision departs from this well-established rule by considering all of Tohono O'odham's factual allegations, including background facts, as opposed to operative facts, to determine that § 1500 divested the CFC of jurisdiction. This legal analysis is flawed and should not be applied to this case.

As the Federal Circuit recognized in *Loveladies*, "operative facts" do not include every fact alleged in a complaint, such as background facts, but instead require some link between the

---

in the CFC, because of the "unique character of Indian trust claims." Slip Op. at 22 ("In substance, the action for breach of trust in this court is an equitable proceeding that produces a monetary remedy."). However, there is nothing unique about the nature of the money damages available to Indians for breaches of trust arising from various money-mandating duties. It is well-settled that the CFC also has jurisdiction over non-Indian, non-trust claims against the United States by virtue of money-mandating statutes, regulations, or provisions of the Constitution. *See, e.g.*, *Clark v. United States*, 322 F.3d 1358, 1363-65 (Fed. Cir. 2003) (determining that statute governing compensation for mandatory instruction and training courses to members of the National Guard and other members of reserve components of the armed services was money-mandating); *Sawyer v. United States*, 930 F.2d 1577, 1580 (Fed. Cir. 1991) (statutory scheme for awarding disability benefits to injured, active duty sailors sufficiently money-mandating for purposes of CFC jurisdiction) (citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983)); *Nicholson v. United States*, 770 Fed. Cl. 605, 613 (2007) (J. Baskir) (takings clause of 5th Amendment was a money-mandating source for Hurricane Katrina victims to sue U.S. Army Corps of Engineers for loss as a result of damages caused by levee collapse).

facts and the elements of the claim to be proved. 27 F.3d at 1551 n.17. Thus, this Court has held that the "fact that two claims share the same factual background is insufficient to divest this Court of jurisdiction when there is a material difference between the operative facts relevant to each claim." *Cooke v. United States*, 77 Fed. Cl. 173, 178 (2007); *see also Fire-Trol Holdings, LLC v. United States*, 65 Fed. Cl. 32, 34 (2005) (facts that are "merely background" are "not operative facts directly giving rise to the claims pled"). Under this legal standard, this Court has consistently concluded that claims involving similar background facts, but different operative facts, did not implicate § 1500's bar. *See, e.g., d'Abrera, v. United States*, 78 Fed. Cl. 51, 58 (2007) (claims did not arise from the same operative facts despite shared general factual background); *Cooke*, 77 Fed. Cl. at 177-787 (same); *Heritage Minerals, Inc. v. United States*, 71 Fed. Cl. 710, 715 (2006); *Williams v. United States*, 71 Fed. Cl. 194, 199-200 (2006) (even though "[m]any of the factual allegations … match[ed]," claims arose from different operative facts); *Branch v. United States*, 29 Fed. Cl. 606, 608 (1993); *Lucas v. United States*, 25 Cl. Ct. 298, 305 (1992) (claims involved different operative facts even though they had some general facts in common).

Indeed, the decision in *Tohono O'odham* is inconsistent with settled practice of Rule 8 of the Federal Rules of Civil Procedure. Under Rule 8, plaintiffs typically provide background for the court to understand the context and gravamen of the asserted claims, but such background facts are not necessary under the "notice pleading" requirements of the Civil Rules. The ruling in *Tohono O'odham*, by failing to distinguish between the plain statement of facts necessary to state a claim and the other allegations in a complaint, is therefore at odds with the philosophy of the civil rules and therefore, in effect, penalizes plaintiffs under § 1500 for telling their full story in the same way as other complaints, which are routinely filed in federal court every day.

In a marked departure from this precedent, the *Tohono O'odham* decision failed to focus its inquiry on the operative facts, as defined by *Loveladies*. To reach the conclusion that the operative facts in the two actions are the same, the court instead framed the issue with the question, "as a practical matter, will the same ***background*** facts be relevant . . . ?" *See Tohono O'odham*, Slip Op. at 22 (emphasis added). Based upon this misunderstanding of *Loveladies*, the court proceeded to compare all of the factual allegations set forth in the complaints indiscriminately, delineating a list of non-operative or background facts, to reach the erroneous conclusion that because "the underlying facts are the same," § 1500 divested this Court of jurisdiction. *Id.* at 10-14; 21.

To support its interpretation of *Loveladies*, the *Tohono O'odham* decision recites the general rule that under § 1500, the inquiry does not turn on differences in the legal theories in the two cases alone. *Id.* at 19 and 22; *see also Keene*, 508 U.S. at 212. This rule simply means that if, for example, the facts necessary to prove a regulatory taking claim brought in this Court are the same as those necessary to prove a tort claim already pending in a another court, then it is irrelevant what the legal theories are because the operative facts are the same under *Loveladies*. This does not mean, however, that the Court simply should compare all the facts alleged somewhere in the complaint, as the court did in *Tohono O'odham*. If that were the case, then the Federal Circuit would not have referred to and defined "operative facts" in *Loveladies*. Furthermore, every one of the cases, cited *supra*, where the background facts overlapped, but the operative facts were different, would be wrongly decided. Under § 1500, a court still must compare the operative facts, which are the subset of facts that are necessary to prove each claim. In *Tohono O'odham* and here, the operative facts supporting accounting claims in the District Court and the money damages claims in the CFC clearly are not the same. In short, because the

standard articulated and applied in *Tohono O'odham* is contrary to Federal Circuit precedent, it is clear error and should not be applied here.

## IV. CONCLUSION

For the foregoing reasons, this Court should not apply the same legal analysis adopted by the court in *Tohono O'odham* and should deny Defendant's Motion to Dismiss Ak-Chin's Complaint pursuant to 28 U.S.C. § 1500.

This the 7th day of January, 2008.

Respectfully submitted,

/s/ Keith Harper

KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 508-5800
Fax: (202) 505-5858

*Attorneys for Plaintiff*
The Ak-Chin Indian Community

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-09321 (ECH) |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | **Electronically filed on January 7, 2008** |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiff's Brief In Response to the Court's Request for Briefing Regarding the Opinion Issued in *Tohono O'odham v. United States* was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

Laura M.L. Maroldy, Esq.
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663

This 7th day of January, 2007.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
**Kilpatrick Stockton LLP**
607 14th Street, N.W.
Washington, D.C. 20005
Phone: (202) 508-5800
*Attorneys for Plaintiff*
The Ak-Chin Indian Community