# DEFENDANT'S

# EXHIBIT

# A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOHONO O'ODHAM NATION<br>P.O. Box 837<br>Sells, Arizona 85634,<br><br>Plaintiff,<br><br>v.<br><br>DIRK KEMPTHORNE<br>Secretary of the Interior<br>1849 C Street N.W.<br>Washington, D.C. 20240,<br><br>ROSS O. SWIMMER<br>Special Trustee<br>Office of Special Trustee for<br>American Indians<br>Department of the Interior<br>1849 C Street N.W.<br>Washington, D.C. 20240,<br><br>HENRY M. PAULSON<br>Secretary of the Treasury<br>1500 Pennsylvania Avenue N.W.<br>Washington, D.C. 20220<br><br>Defendants. | Civil Action No. _____________ |

**COMPLAINT**

## I. GENERAL NATURE OF THE ACTION

1. This is an action to seek redress of breaches of trust by the United States, acting by and through the defendants, in the management and accounting of trust assets, including funds and lands, belonging to the plaintiff, the Tohono O'odham Nation ("the Nation"), and to compel the defendants to provide a full and complete accounting of all trust

assets belonging to the Nation and to correct the balances of the Nation's trust fund accounts to reflect accurate balances.

2. Involved in this action are funds and other assets, including approximately 2,900,000 acres of land, held in trust by the United States for the benefit of the Nation. As is more fully set forth herein below, the trust funds are comprised of both judgment funds held in trust pursuant to federal law and funds that receive their trust character as proceeds of trust property, specifically the lease and sale of resources or lands that are held in trust. The trust funds involved are substantial; by its own estimates, as provided by government contractor Arthur Andersen LLP, the United States handled $2.1 billion ($2,100,000,000.00) in transactions for the Nation between 1972 and 1992. The United States has never fulfilled its duty to provide a full and adequate accounting of the trust funds belonging to the Nation. Accordingly, the true balances of the Nation's trust accounts are unknown and on information and belief would be far greater but for the breaches of trust complained of herein.

3. Pursuant to federal law, the defendants also have substantial fiduciary responsibilities with respect to and are charged with managing and accounting for the 2.9 million acres of land held in trust and the resources from such trust lands. These lands comprise a reservation located in the southern most part of the State of Arizona, and the Nation shares a seventy mile border with Mexico. Over the years, these lands have produced, *inter alia*, copper, other minerals, sand, and gravel, and such trust lands have been leased to third parties and to the government for rights-of-way, business uses, and other

purposes. Despite the longstanding fiduciary responsibilities owed, the United States has never provided an accounting of its management of these trust assets as required by law.

4. The defendants are government officers and trustee-delegates charged with carrying out the trust obligations of the United States. The record indicates that they have grossly mismanaged and continue to grossly mismanage the trust and have failed for over a century to carry out the most basic and fundamental trust duties owed to the Nation. The trust has been mismanaged in the following aspects, among others:

(a) The defendants have failed to provide an adequate accounting of the trust assets, including funds, lands, and resources belonging to and beneficially owned by the Nation;

(b) The defendants have breached their trust obligation to maintain adequate records and to put in place adequate accounting systems in order to properly carry out their fiduciary obligations, including their duty to account;

(c) The defendants have failed to fulfill their duty to ensure that tribal trust property and trust funds are protected, preserved, and managed so as to produce a maximum return to the Nation consistent with the trust character of the property;

(d) The defendants have failed to properly collect, invest, and disburse trust funds belonging to the Nation in compliance with their fiduciary responsibilities and other federal statutory and regulatory law;

(e) The defendants have breached their trust responsibility to preserve and protect adequate records of the trust and have spoliated irreplaceable trust records bearing upon their breaches of trust complained of herein; and

(f) The defendants have failed to properly state the Nation's account balances and have converted to their own use trust funds belonging to the Nation, including, but not limited to, Indian moneys, proceeds of labor, 25 U.S.C. § 155.

## II. THE PARTIES

5. The Plaintiff is the Tohono O'odham Nation, a federally recognized Indian tribe that is the beneficial owner of funds and other assets that are held in trust on the Nation's behalf by the United States and for which the Nation has never received an adequate accounting as required by law.

6. Defendant Dirk Kempthorne is the Secretary of the Interior and chief officer of the Department of the Interior, and as such is charged by law with carrying out the duties and responsibilities of the United States as trustee for the Nation. He and his subordinates have custody and control of trust assets, including trust funds, belonging to the Nation.

7. Defendant Ross O. Swimmer is the Special Trustee for American Indians, a sub-cabinet level officer appointed by the President of the United States with the advice and consent of the Senate and reporting directly to the Secretary of the Interior. A number of Defendant Swimmer's duties are delineated in the Indian Trust Fund Management Reform Act of October 25, 1994, Pub. L. No. 103-412, 25 U.S.C. §§ 4042, et seq. ("the 1994 Act").

8. Defendant Henry M. Paulson is the Secretary of the Treasury, and as such is the custodian of the tribal trust funds and is responsible for administering those funds and for preparing and maintaining certain records in connection therewith.

## III. JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1362, as the Nation is a federally recognized Indian tribe and its claims arise under the Constitution and laws of the United States, including, but not limited to, the numerous statutes and regulations giving rise to the trust relationship between the United States and the Nation. This Court also has jurisdiction over this action under 28 U.S.C. § 1361 and 5 U.S.C. § 706, as this is an action to compel federal officials to perform a duty owed to the Nation.

10. The United States has waived its immunity from suit under § 702 of the Administrative Procedure Act ("the APA"), 5 U.S.C. § 702. Section 702 waives sovereign immunity for all claims for relief other than money damages, including all forms of equitable relief, involving a federal official's action or failure to act. See, e.g., Bowen v. Mass., 487 U.S. 879, 893-95, 108 S. Ct. 2722 (1988); Schnapper v. Foley, 667 F.2d 102, 107-08 (D.C. Cir. 1981) (noting that § 702 is "intended to eliminate the defense of sovereign immunity with respect to any action … seeking relief other than money damages and based on the assertion of unlawful action by a federal officer"). The APA's waiver of sovereign immunity applies to any such suit, regardless of whether the suit is brought under the APA. See, e.g., Cobell v. Norton ("Cobell VI"), 240 F.3d 1081, 1095-96 (D.C. Cir. 2001); Chamber of Commerce v. Reich, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

11. Venue in this Court is proper under 28 U.S.C. § 1391(e), as the defendants are officers and employees of the United States acting in an official capacity and a substantial part of the acts or omissions giving rise to the Nation's claim occurred within this judicial district.

## IV. THE TRUST OBLIGATIONS OF THE UNITED STATES AND OF THE DEFENDANTS WITH RESPECT TO TRIBAL TRUST ASSETS

12. The United States unquestionably owes substantial fiduciary obligations to the Nation with respect to the management and administration of the Nation's trust funds and other trust assets. See Cobell VI, 240 F.3d at 1098 (citing numerous cases).

13. Tribal lands, associated resources, and the income derived therefrom constitute a substantial portion of the assets held by the United States in trust for the Nation's benefit. Title to the land constituting the Nation's reservation is held in trust by the United States, with the Nation as the beneficial owner of the land and associated natural resources. Income is derived from, *inter alia*, the sale of these natural resources and the conveyance of certain interests in the Nation's tribal trust land, including leases, easements, and rights of way. These assets and the income they produce form the core of the Nation's tribal trust assets.

14. Additional assets held in trust by the United States for the Nation's benefit are derived from judgments entered by federal courts on various claims brought by the Nation against the United States. This includes claims brought under the Indian Claims Commission Act of August 13, 1946, 60 Stat. 1049 (covering claims accruing before August 13, 1946). Specifically, the Nation's claims for (1) aboriginal title to, loss of subsurface rights within, and trespass upon some 6,338,113 acres of tribal land in the present-day State of Arizona and (2) a general accounting resulted in a $26 million ($26,000,000.00) judgment from the Indian Claims Commission. 38 Ind. Cl. Comm. 542, 542-43 (July 21, 1976). According to government records, of this amount, $11,698,253.28 was retained in trust by the United States for the benefit of the Nation. See Pub. L. No. 97-408; Letter from the Area Director,

Phoenix Area Office, Bureau of Indian Affairs, U.S. Department of the Interior to Sylvester Listo and Kate Hoover, Tohono O'odham Nation (July 23, 1993). As trustee, the United States undertook to manage, invest, and distribute these judgment funds as trust assets for the benefit of the Nation.

15. Because the United States holds the Nation's tribal lands and other assets in trust, it has assumed the fiduciary obligations of a trustee. As a trustee, the United States is charged with "'moral obligations of the highest responsibility and trust' … and its conduct 'should therefore be judged by the most exacting fiduciary standards.'" Cobell VI, 240 F.3d at 1099 (quoting Seminole Nation v. United States, 316 U.S. 286, 296, 62 S. Ct. 1049 (1942)). Because Congress established this trust by statute, "[c]ourts 'must infer that Congress intended to impose on trustees traditional fiduciary duties unless Congress unequivocally expressed an intent to the contrary.'" Cobell VI, 240 F.3d at 1099 (quoting NLRB v. Amax Coal Co., 453 U.S. 322, 330, 101 S. Ct. 2789 (1981)).

16. The longstanding trust relationship between the United States and the Nation and the United States' resulting fiduciary duties are rooted in and derived from numerous statutes and regulations. See, e.g., Indian Nonintercourse Act, 25 U.S.C. § 177; Indian Long-Term Leasing Act, 25 U.S.C. § 396; Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a-396g; Federal Oil & Gas Royalty Management Act, 30 U.S.C. §§ 1701, et seq.; Indian Mineral Development Act of 1982, 25 U.S.C. §§ 2101, et seq.; Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 4001, et seq.; 25 U.S.C. § 152; 25 U.S.C. §§ 157-58, 160; 25 U.S.C. §§ 155, 155b; 25 U.S.C. §§ 161a, 161b, 162 (repealed in 1938), 162a, 413; 25 U.S.C. §§ 311, 312, 318a, 319, 321, 323-28; 25 U.S.C. § 397; 25 U.S.C. §§

398, et seq.; 25 U.S.C. § 399; 25 U.S.C. §§ 415-415d; 31 U.S.C. § 1321(a); 25 C.F.R. pt. 87; 25 C.F.R. pts. 150-51; 25 C.F.R. pt. 162; 25 C.F.R. pt. 166; 25 C.F.R. pt. 169; 25 C.F.R. pt. 211; 25 C.F.R. pt. 216; 25 C.F.R. pt. 225; 30 C.F.R. pt. 206; 43 C.F.R. § 3590.2(i).

17. The 1994 Act, which, among other things, created the Office of the Special Trustee for American Indians, served to recognize, reaffirm, and clarify the United States' preexisting fiduciary duties as derived from the relevant statutes and regulations, including the duty to account. Cobell VI, 240 F.3d at 1090, 1096. It was designed to "help rectify the government's longstanding failure" to fulfill its trust obligations. Id. The 1994 Act did not create the United States' fiduciary duties, nor did it "define and limit the extent of [the defendants'] obligations. Id. at 1100. Moreover, the 1994 Act does not, and was not intended to, serve as the sole source of those duties or of the Nation's attendant rights. Id. at 1099.

18. The statutes, regulations, and executive orders giving rise to the United States' fiduciary duties provide the "general contours" of those duties, but the specific details are filled in through reference to general trust law and "defined in traditional equitable terms." Id. Accordingly, the defendants' "actions must not merely meet the minimal requirements of administrative law, but must also pass scrutiny under the more stringent standards demanded of a fiduciary." Id. (citations and internal quotations omitted).

19. As trustee of the Nation's tribal trust assets, the United States owes, and continuously since the inception of the tribal trust program has owed, certain traditional fiduciary duties and responsibilities to the Nation as a trust beneficiary. These duties include, but are not limited to, the duty to:

(a) Perform a complete, accurate, and adequate historical accounting of all the trust property, with such accounting containing sufficient information to enable the Nation to readily ascertain whether the trust has been and is being faithfully carried out;

(b) Maintain adequate books and records with respect to the trust property, including, but not limited to, records of leases and other contractual arrangements giving rise to income from the trust property and records of the investment of tribal trust assets;

(c) Refrain from self-dealing or otherwise benefiting from management of the trust property;

(d) Take reasonable steps to preserve and protect trust property;

(e) Take reasonable steps to bring and enforce claims held by the trust;

(f) Use reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law and prudence; and

(g) Take reasonable steps to ensure that trust property is used for its highest and best use.

## V. <u>BREACHES OF TRUST BY THE DEFENDANTS</u>

20. The United States, acting by and through the defendants, has consistently and egregiously failed to comply with these and other fiduciary obligations and continues to do so. Its breaches of trust include, but are not limited to:

(a) Failure to provide and unconscionably delaying the performance of a complete, accurate, and adequate accounting of trust property;

(b) Failure to maintain adequate books and records with respect to the trust property, including, but not limited to, records of leases and other contractual arrangements giving rise to income from the trust property and records of the investment of tribal trust assets;

(c) Failure to refrain from self-dealing or otherwise benefiting from management of the trust property;

(d) Failure to take reasonable steps to preserve and protect trust property;

(e) Failure to take reasonable steps to bring and enforce claims held by the trust;

(f) Failure to use reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law and prudence; and

(g) Failure to ensure that trust assets are used for their highest and best use.

21. Due to these and other breaches of the fiduciary duties owed by the United States, the Nation does not know, and has no way of ascertaining, the true state of its trust assets, including funds and related accounts holding such funds; what amounts should have been credited to the Nation and deposited in these accounts; what amounts should have been paid to the Nation; how much of the Nation's property has been diverted or converted to other uses; to what extent the United States failed to maximize profits; or whether the United States has attained fair market value for leases and sale of trust assets.

22. The United States' breaches of its fiduciary obligations with respect to Indian trust assets have been repeatedly recognized and routinely condemned by the United States

General Accounting Office, the United States Inspector General for the Interior Department, and the United States Office of Management and Budget, among others. See Cobell VI, 240 F.3d at 1090-91 (citing reports criticizing the mismanagement of Indian trust assets).

23. The United States' breaches of its fiduciary obligations with respect to Indian trust assets have also been recognized and condemned by Congress. After a series of oversight hearings, Congress issued a report entitled "Misplaced Trust: The Bureau of Indian Affairs' Mismanagement of the Indian Trust Fund," H.R. Rep. No. 102-499 (1992). In this report, Congress noted "significant, habitual problems in BIA's ability to fully and accurately account for trust fund moneys, to properly discharge its fiduciary responsibilities, and to prudently manage the trust funds." Id. at 2. Congress further concluded that the defendants had "utterly failed to grasp the human impact of [their] financial mismanagement of the Indian trust fund." Id. at 5. While the Interior Department pledged reforms in response to this report, it did little to improve its mismanagement of Indian trust assets. Cobell VI, 240 F.3d at 1090.

24. The 1994 Act sought to remedy the United States' long-standing failure to discharge its trust obligations. It "reaffirmed and clarified preexisting [trust] duties; it did not create them." Id. at 1100. Nor did it alter the nature or the scope of the fiduciary duties that the defendants owe to the Nation and to other tribal trust beneficiaries. Id.

25. Among the duties enumerated in the 1994 Act, section 102 makes clear that the Nation and other tribal trust beneficiaries are owed an accounting for "all funds held in trust by the United States for the benefit of an Indian tribe ... which are deposited or invested pursuant to the Act of June 24, 1938." 25 U.S.C. § 4011(a). The 1994 Act thus "reaffirms

the government's preexisting fiduciary duty to perform a complete historical accounting of trust fund accounts." Cobell VI, 240 F.3d at 1102.

26. The 1994 Act also created the Office of Special Trustee for American Indians. 25 U.S.C. § 4042. Congress' stated purposes in creating this office were, inter alia, "to provide for more effective management of, and accountability for the proper discharge of, the Secretary's trust responsibilities," and to "ensure the implementation of all reforms necessary for the proper discharge of the Secretary's trust responsibilities … ." 25 U.S.C. § 4041.

27. The statutory responsibilities of the Special Trustee conferred under the 1994 Act include, *inter alia*:

(a) To "oversee all reform efforts … to ensure the establishment of policies, procedures, systems and practices to allow the [Interior] Secretary to discharge his trust responsibilities … ." 25 U.S.C. § 4043(b)(1);

(b) To "monitor the reconciliation of tribal trust accounts … to ensure that the Bureau [of Indian Affairs] provides the account holders with a fair and accurate accounting of all trust accounts," 25 U.S.C. § 4043(b)(2)(A); and

(c) To "ensure that the Bureau establishes appropriate policies and procedures, and develops necessary systems, that will allow it … properly to account for and invest, as well as maximize," subject to requirements of law, "the return on the investment of all trust fund monies," and "to prepare accurate and timely reports to account holders … on a periodic basis regarding all collections, disbursements, investments and returns on investments related to their accounts." 25 U.S.C. § 4043(b)(2)(B).

28. Notwithstanding the remedial purpose of the foregoing legislation, the mandates of the 1994 Act – like the government's longstanding fiduciary duties – have not been carried out, and the defendants remain in violation of their accounting and other fiduciary obligations. In addition to the breaches of trust duties recited in paragraphs 4 and 19-23 above, the defendants have failed to comply with the enumerated duties listed in the 1994 Act. Furthermore, Defendant Swimmer has failed to discharge his responsibilities as Special Trustee or to take any meaningful steps to fix a trust management system that remains broken after more than a century of defendants' malfeasance, recalcitrance, and neglect.

29. The defendants also have failed to comply with other statutory directives intended to address their ongoing breaches of preexisting trust duties. By the Act of December 22, 1987, Pub. L. No. 100-202 (101 Stat. 1329), Congress directed that the defendants (1) audit and reconcile tribal trust funds and (2) provide the tribal trust beneficiaries with an accounting of such funds. Congress reaffirmed the mandates of the 1987 Act in subsequent statutes, namely, the Act of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, and the Act of November 3, 1991, Pub. L. No. 102-154, 105 Stat. 990. These acts, like the 1994 Act, are reaffirmations of preexisting obligations rather than sources of new obligations. Even after nearly twenty years, these statutory requirements have never been met, and the defendants remain in derogation of their trust duties.

30. The reports produced by government contractor Arthur Andersen LLP (the "AA Reports") and provided to the Nation and other tribal trust beneficiaries fall far short of

satisfying the defendants' fiduciary duty to provide a complete, accurate, and adequate accounting. Even the Bureau of Indian Affairs ("BIA") within the Interior Department has admitted that the AA Reports were not full and complete accountings. See Bureau of Indian Affairs' Proposed Legislative Options in Response to Tribal Trust Fund Reconciliation Project Results at 12 (Dec. 1996) ("Despite five years of effort and the expenditure of $21 million, the [AA] Project provides a less than complete accounting of the state of the Tribal trust funds."). Shortcomings of the AA Reports include, but are not limited to, the fact that the Reports:

(a) Analyzed trust fund accounts only for the limited time period of Fiscal Years 1973-1991;

(b) Were not based on or prepared in accordance with generally accepted accounting and auditing standards;

(c) Were premised on the erroneous assumption that complete, accurate, and adequate accountings could be conducted based on unverified information provided by the BIA; and

(d) Were based on accounts for which records and information were non-existent or could not be located.

See, e.g., U.S. General Accounting Office, Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA's Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 (May 1996); U.S. General Accounting Office, Testimony before the Committee on Indian Affairs, U.S. Senate, Indian Trust Funds, Tribal Account Balances, GAO-02-420T at 2 (Feb. 7, 2002).

31. Congressional recognition of the defendants' continued and ongoing failure to satisfy their fiduciary duty to render a complete, accurate, and adequate accounting is evidenced by the inclusion, in each Interior Department Appropriations Act since 1990, of a provision stating that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe … has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." See, e.g., Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. No. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. No. 104-134, 110 Stat. 1321; Act of September 30, 1996, Pub. L. No. 104-208, 110 Stat. 3009; Act of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. No. 105-277, 112 Stat. 2681; Act of November 29, 1999, Pub. L. No. 106-114, 113 Stat. 1501; Act of October 11, 2000, Pub. L. No. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. No. 107-63.

## COUNT ONE

32. The Nation restates and incorporates herein the allegations of paragraphs 1 through 31 above.

33. The United States, acting through the defendants, owes to the Nation fiduciary duties of the highest responsibility and trust with respect to property that it holds in trust for the Nation's benefit. These statutorily-derived duties, which may be either express or implied in law, are akin to those stated under the common law of trusts.

34. Among the duties that the defendants owe is the duty to provide the Nation with a complete, accurate, and adequate accounting of all property held in trust by the United States for the Nation's benefit. The accounting obligation that the defendants owe to the Nation requires, *inter alia*, an accounting report that "contain[s] sufficient information for the [Nation] readily to ascertain whether the trust has been faithfully carried out." Cobell VI, 240 F.3d at 1103 (internal quotation omitted).

35. The defendants have, from the inception of the trust to the present, failed to fulfill these fiduciary obligations, and this failure constitutes a breach of the defendants' fiduciary duties to the Nation and a violation of federal law.

36. Specifically, the defendants have, *inter alia*, failed to provide the Nation with a complete, accurate, and adequate accounting of the Nation's trust assets, and this failure constitutes a breach of the defendants' fiduciary duties to the Nation and a violation of federal law.

37. The Nation is entitled to a declaration that the AA Report prepared by the defendants' contractors does not constitute the complete, accurate, and adequate accounting required by federal law.

38. The Nation is entitled to a further declaration that the defendants have breached the fiduciary duties they owe to the Nation by, *inter alia*, failing to provide the Nation with a complete, accurate, and adequate accounting of the Nation's trust assets as required by law.

39. The Nation is entitled to a further declaration (1) delineating the defendants' fiduciary duties to, among other things, enable proper discharge of their accounting obligation and (2) finding that the defendants have breached their duties so declared.

COUNT TWO

40. The Nation restates and incorporates herein the allegations of paragraphs 1 through 39 above.

41. There is no indication that the defendants will, of their own accord, depart from their longstanding and continuing pattern of failure to comply with their fiduciary duties to the Nation.

42. The Nation is entitled to injunctive relief directing the defendants to provide a complete, accurate, and adequate accounting of the Nation's trust assets, including, but not limited to, funds under the custody and control of the United States, and to comply with all other fiduciary duties as determined by this Court.

43. The Nation is further entitled to make exceptions and objections to the accounting provided, to a restatement of their trust fund account balances in conformity with the ultimate and complete accounting, and to any additional equitable relief that may be appropriate (e.g., disgorgement, equitable restitution, or an injunction directing the trustee to take action against third parties).

44. The Nation is entitled to further injunctive relief directing the defendants to bring themselves into conformity with their fiduciary obligations and otherwise address breaches of trust found by the Court.

WHEREFORE, THESE PREMISES CONSIDERED, THE PLAINTIFF PRAYS:

1. For a decree construing the trust obligations of the defendants to the Nation, including, but not limited to, the duty to provide a complete, accurate, and adequate accounting of all trust assets belonging to the Nation and held in trust by the defendants.

2. For a decree that the United States, acting through the defendants, has been in breach of its trust obligations since the inception of this trust and continues to be in breach of those duties today, specifically including, *inter alia*, its fiduciary duty to provide a complete, accurate, and adequate accounting of all trust assets belonging to the Nation and held in trust by the United States.

3. For a decree that the AA Reports do not constitute the complete, accurate, and adequate accounting that the defendants are obligated to provide to the Nation.

4. For a decree delineating the fiduciary duties owed by the defendants to the Nation with respect to the management and administration of the trust assets belonging to the Nation.

5. For a decree directing the defendants (1) to provide a complete, accurate, and adequate accounting of the Nation's trust assets, including, but not limited to, funds under the custody and control of the United States and (2) to comply with all other fiduciary duties as determined by this Court.

6. For a decree providing for the restatement of the Nation's trust fund account balances in conformity with this accounting, as well as any additional equitable relief that may be appropriate (e.g., disgorgement, equitable restitution, or an injunction directing the trustee to take action against third parties).

7. For a decree requiring the defendants to provide to the Nation all material information regarding the management and administration of the trust assets belonging to the Nation and held in trust for its benefit by the defendants.

8. For an award of the Nation's costs of suit, including, without limitation, attorneys' fees under the Equal Access to Justice Act and other statutes as well as general equitable principles, and the fees and costs of expert assistance.

9. For such other and further relief as the Court, as a Chancellor sitting in equity, may deem just and proper.

December 28, 2006

Respectfully submitted,

KEITH HARPER
D.C. Bar No. 451956
G. WILLIAM AUSTIN
D.C. Bar No. 478417
Kilpatrick Stockton LLP
607 14th Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 508-5800

Attorneys for Plaintiff
Tohono O'odham Nation

# DEFENDANT'S

# EXHIBIT

# B

FILED
DEC 29 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE TOHONO O'ODHAM NATION, *Plaintiff,* v. THE UNITED STATES, *Defendant.* | No. 06-944 L |

**COMPLAINT FOR DAMAGES FOR BREACH OF TRUST OBLIGATIONS**

## I. GENERAL NATURE OF THE ACTION

1. This action is an action for money damages against the United States, brought to redress gross breaches of trust by the United States, acting by and through Dirk Kempthorne, Secretary of the Interior ("Kempthorne"), Ross Swimmer, Special Trustee for American Indians ("Swimmer"), and Henry M. Paulson, Secretary of the Treasury ("Paulson"), and their predecessors in office and subordinates, as trustees and trustee-delegates of land, mineral resources and other assets held by them for the benefit of the Tohono O'odham Nation ("Nation"). As set forth more fully below, this case arises out of Defendant's continuing material breaches of statutory, regulatory, and fiduciary duties owed to the Nation and the Nation seeks damages for Defendant's mismanagement of the Nation's trust property.

## II. THE PARTIES

2. Plaintiff, the Nation, formerly known as the Papago Tribe, is a federally recognized Indian tribe with over 26,000 members. It is the beneficiary of real property, and the proceeds therefrom, held by the United States as trustee.

3. Defendant United States acts as trustee for certain tribal lands, monies, and other

assets belonging to the Nation. The United States has principally delegated its trust responsibilities to the Secretary of the Interior and the Secretary of the Treasury.

4. Mr. Kempthorne is the Secretary of the Interior, and chief officer of the Department of the Interior. As such, Secretary Kempthorne is charged by law with, *inter alia*, carrying out the duties and responsibilities of the United States as trustee for the plaintiff.

5. Mr. Swimmer is the Special Trustee for American Indians, a sub-cabinet level officer appointed by the President of the United States with the advice and consent of the Senate, who reports directly to the Secretary of the Interior. Some of Mr. Swimmer's duties are delineated in the Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 4041-46 (2000).

6. Mr. Paulson is the Secretary of the Treasury, and as such is the custodian of trust funds. Secretary Paulson is, *inter alia*, responsible for maintaining records in connection with such funds.

## III. JURISDICTION

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1491 and 1505.

8. The United States has waived its sovereign immunity under 28 U.S.C. §§ 1491 and 1505. *See United States v. Mitchell*, 463 U.S. 206, 228 (1983) ("*Mitchell II*").

## IV. THE TRUST OBLIGATIONS OF THE UNITED STATES WITH RESPECT TO THE NATION

9. The tribal lands of the Nation were established by several Executive Orders and Acts of Congress issued between 1874 and 1955. These tribal lands are composed of non-contiguous areas in Southern Arizona, including the San Lucy District, the San Xavier District,

and the Papago Reservation (collectively the "Nation Reservation"). The Nation Reservation is the second largest Indian reservation in the United States.

10. The Papago Reservation, also known as the Sells Reservation, is the largest segment of the Nation Reservation, and it occupies portions of Maricopa, Pinal, and Pima Counties in Arizona. This segment of the Nation Reservation was initially established by Executive Order of January 14, 1916 by President Woodrow Wilson, and its boundaries were subsequently modified by additional Executive Orders and Acts of Congress. It currently consists of approximately 2,800,000 acres of land and is considered the "main reservation."

11. The San Lucy District, also known as the Gila Bend Indian Reservation, is a non-contiguous segment of the Nation Reservation, and is separated from the main reservation. This portion of the Nation Reservation lies near Gila Bend, Arizona. It was initially formed by Executive Order of December 12, 1882 by President Chester A. Arthur and reduced in size by Executive Order of June 17, 1909, by President William Howard Taft. It currently consists of approximately 3,800 acres of land.

12. The San Xavier District is a non-contiguous segment of the Nation Reservation and is separated from the main reservation. This portion of the Nation Reservation, originally formed through Executive Order of July 1, 1874 by President Ulysses S. Grant, is west of Tucson, Arizona, and consists of approximately 69,189 acres of land.

13. The Nation Reservation is held in trust by the United States for the benefit of the Nation, and it is managed by the Department of the Interior.

14. Pursuant to Act of Congress of May 27, 1955, Pub. L. No. 106-47, 69 Stat. 67 (repealing 25 U.S.C. § 463(b)(1)-(2)), Congress clarified that the mineral estate of the Nation's lands belong to the Nation. Consequently, the mineral rights on the Nation Reservation are

managed by the Defendant as trustee for the benefit of Nation.

15. A substantial portion of the funds held by the United States in trust for the Nation is derived from income from tribal lands. Title to the land comprising the Nation Reservation is held in trust by the United States, with the Nation as beneficial owner of the land and associated natural resources, which include, *inter alia*, valuable mineral reserves, such as copper, other minerals, sand, and gravel.

16. Income is derived from, *inter alia*, the sale of the natural resources and the conveyance of certain interests in the Nation's tribal trust land, including leases, easements, and rights of ways. These assets, and the income they produce, form the core of the Nation's tribal trust assets.

17. Additional assets held in trust by the United States for the Nation's benefit are derived from a judgment on various claims brought by the Nation against the United States. This includes claims brought under the Indian Claims Commission Act of August 13, 1946, 60 Stat. 1049 (1946). On July 21, 1976, the Indian Claims Commission approved a settlement award of $26 million ($26,000,000) on behalf of the Nation as compensation for 6.3 million acres of aboriginal tribal lands that were taken by the United States. *See Papago Tribe of Ariz. v. United States*, Docket Nos. 102, 345, 38 Ind. Cl. Comm. 542, 542-43 (1976). Funds to cover the award were appropriated on September 30, 1976. Act of Sept. 30, 1976, 90 Stat. 1416 (1976). The United States undertook to manage, invest, and distribute these judgment funds as trust assets for the benefit of the Nation. On January 3, 1983, Congress enacted legislation requiring that fifty percent (50%) of the judgment funds be held in trust by the Secretary of Interior for the benefit of the Nation and be "administered or invested by the Secretary for the best interest of the tribe under existing law." Act of Jan. 3, 1983, Pub. L. No. 97-408, § 8, 96 Stat. 2035, 2035 (1983).

The remaining fifty percent of such funds were to be held and administered by the Secretary for per capita distribution. *Id.*

18. Because the United States engages in pervasive management and control of the Nation's tribal assets pursuant to federal statutes and regulations, as more fully described below, the government has assumed the fiduciary obligations of a trustee. *Mitchell II*, 463 U.S. at 225. As a trustee, the United States is charged with "'moral obligations of the highest responsibility and trust' . . . and its conduct 'should therefore be judged by the most exacting fiduciary standards.'" *Cobell v. Norton*, 240 F.3d 1081, 1099 (D.C. Cir. 2001) (quoting *Seminole Nation v. United States*, 316 U.S. 286, 296 (1942)) ("*Cobell VI*").

19. The century-long trust relationship between the United States and the Nation, and the resultant fiduciary responsibilities incumbent on the United States, are rooted in and derived from a number of statutes, regulations and executive orders. *See, e.g.*, Indian Nonintercourse Act, 25 U.S.C. § 177; Indian Long-Term Leasing Act, 25 U.S.C. § 396; Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a-96g; Federal Oil & Gas Royalty Management Act, 30 U.S.C. § 1701, *et seq.*; Indian Mineral Development Act of 1982, 25 U.S.C. §§ 2101 – 08; Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 161a, 162a, 4001-61; 25 U.S.C. § 152; 25 U.S.C. §§ 157-58, 160; 25 U.S.C. §§ 155-55b; 25 U.S.C. §§ 161a, 161b, 162a, 413; 25 U.S.C. §§ 311-12, 318a, 319, 321, 323-28; 25 U.S.C. § 397; 25 U.S.C. § 398, 398a-98e; 25 U.S.C. § 399; 25 U.S.C. §§ 415-16j; 31 U.S.C. § 1321(a); 25 C.F.R. pt. 87; 25 C.F.R. pts. 150-51; 25 C.F.R. pt. 162; 25 C.F.R. pt. 166; 25 C.F.R. pt. 169; 25 C.F.R. pt. 211; 25 C.F.R. pt. 216; 25 C.F.R pt. 225; 30 C.F.R. pt. 206; and 43 C.F.R. § 3590.2. The foregoing list is representative only, and does not exhaust the potential sources of fiduciary duties owed to the Nation by the United States, as trustee for the Nation's tribal resources.

20. Among other things, the Indian Trust Fund Management Reform Act of 1994 ("Trust Reform Act") created the Office of the Special Trustee for American Indians and reaffirmed and clarified the United States' preexisting fiduciary duties as derived from the relevant statutes and treaties. *Cobell VI*, 240 F.3d at 1090, 1096. The Trust Reform Act was implemented to "'provide more effective management of, and accountability for the proper discharge of, the Secretary's trust responsibilities,' and [to] ensure proper reform measures are implemented." *Id.* at 1090 (quoting 25 U.S.C. § 4042(b)(1)). It was "a remedial statute designed to ensure more diligent fulfillment of the government's obligations. It recognized and reaffirmed what should be beyond dispute – that the government has longstanding and substantial trust obligations to Indians . . . ." *Id.* at 1098. The Trust Reform Act did not create the United States' fiduciary duties, and it does not, and was not intended to, serve as the sole source of those duties or of the Nation's rights. *Id.* at 1100.

21. The statutes, regulations, and executive orders giving rise to the United States' fiduciary duties provide the "general contours" of those duties, but the details are filled in through reference to general trust law. *Id.* at 1098-99; *Mitchell II*, 463 U.S. at 226. Where Congress, as here, has used terms of art in defining the federal government's responsibilities with respect to tribal trust funds, "[c]ourts 'must infer that Congress intended to impose on trustees traditional fiduciary duties unless Congress has unequivocally expressed an intent to the contrary.'" *Cobell VI*, 240 F.3d at 1099 (quoting *NLRB v. Amax Coal Co.*, 453 U.S. 322, 330 (1981)).

22. As trustee of the Nation's tribal trust assets, the Defendant owes, and has owed, since the inception of the tribal trust program, certain traditional fiduciary duties and responsibilities to Indian tribes as trust beneficiaries. The duties Defendant owes to the Nation,

include, but are not limited to, the duty to:

a. Properly administer the trust;

b. Administer the trust solely in the interest of the Nation;

c. Keep and render clear and accurate accounts with respect to the administration of the trust, by maintaining adequate books and records with respect to the trust property, including, but not limited to, records of leases and other contractual arrangements giving rise to income from the trust property and records of the investment of tribal trust assets;

d. Furnish complete and accurate information to the Nation as to the nature and amount of trust assets, by performing a complete, accurate, and adequate historical accounting of all the trust property, with such accounting containing sufficient information to enable the Nation to readily ascertain whether the trust has been and is being faithfully carried out;

e. Exercise the "highest responsibility," care, and skill in the administration of the trust;

f. Preserve the trust assets and protect them from loss, theft, or damage;

g. Keep the trust assets of the Nation separate from other property not subject to the trust;

h. Properly collect and deposit the trust funds of the Nation;

i. Make the assets of the trust productive for the benefit of the Nation, by using reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law; and

j. Refrain from self-dealing or otherwise benefiting from management of trust property.

## V. BREACHES OF TRUST BY THE DEFENDANT

23. The United States has consistently and egregiously failed to comply with these and other fiduciary duties incumbent on a trustee and imposed on the United States by statute, and it continues to violate the Nation's rights as beneficiary of the trust. These breaches of trust include, but are not limited to:

a. Failure to properly administer the trust for the benefit of the Nation;

b. Failure to administer the trust solely in the interest of the Nation;

c. Failure to keep and render clear and accurate accounts with respect to the administration of the trust;

d. Failure to furnish complete and accurate information to the Nation as to the nature and amount of trust assets;

e. Failure to exercise the "highest responsibility," care, and skill in the administration of the trust;

f. Failure to preserve the trust assets and protect them from loss, theft, or damage;

g. Failure to keep the trust assets of the Nation separate from other property not subject to the trust;

h. Failure to properly collect and deposit the trust funds of the Nation;

i. Failure to make the assets of the trust productive for the benefit of the Nation;

j. Failure to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law; and

k. Failure to refrain from self-dealing or otherwise benefiting from management of trust property.

24. By reason of the Defendant's egregious breaches of its fiduciary duties owed to the Nation, the Plaintiff has been damaged in such amounts as may be proven at trial plus interest as allowed by law.

## COUNT I

**Damages Resulting from the United States' Breach of Fiduciary Duty with Respect to the Management of the Nation's Mineral Estate.**

25. All allegations set forth in paragraphs 1 through 24 of this Complaint are incorporated by reference as if fully set forth herein.

26. The United States has maintained a comprehensive regulatory framework for the pervasive control over the management of the natural resources, including mineral rights, on the Nation's land held in trust by Defendant. This includes, but is not limited to, management of copper, sand, and gravel resources.

27. As trustee, the United States has entered into and approved leases and issued permits to third parties for the removal of mineral resources from the Nation's trust property. Compensation for the lease interests and payments for the removal of such resources are to be paid to the United States as trustee for the Nation. Such funds are required to be collected and deposited in the United States Treasury in trust for the benefit of the Nation. The United States continues to hold funds belonging to the Nation, including funds derived from the lease and removal of mineral estates, in trust for the benefit of the Nation.

28. The United States, as trustee, has never provided the Nation a complete and accurate accounting of the revenue the United States collected or was required to collect, under

mineral leases and permits. Nor has it provided the Nation complete records of such leases and permits it is required to maintain as trustee.

29. As trustee, the United States was required to enter into and approve leases and issue permits for interests in mineral rights for not less than fair market value. However, upon information and belief, Defendant breached its fiduciary duty by failing to lease such property interest for fair market value and failing to collect fair and reasonable compensation for the benefit of the Nation. The Nation has been damaged by the failure of Defendant to obtain for the benefit of the Nation fair and reasonable compensation for its mineral resources.

30. The Nation is entitled to a money damage award against the United States arising from its mismanagement of the Nation's mineral resources in an amount to be proven at trial.

## COUNT II

**Damages Arising from the United States' Breach of Fiduciary Duty with Respect to the Management of the Nation's Non-Mineral Estate.**

31. All allegations set forth in Paragraphs 1 through 30 of this Complaint are incorporated by reference as if full set forth herein.

32. The United States has maintained a comprehensive regulatory framework for the pervasive control over the management of non-mineral leases and agreements for interests in land on the Nation Reservation held in trust by Defendant. This includes, but is not limited to, the negotiation of easements, rights of way, and land and building leases. *See Mitchell II*, 463 U.S. at 223.

33. The United States, as trustee, has never provided the Nation a complete and accurate accounting of the revenue the United States collected or was required to collect, in granting easements and rights of way and leasing tribal properties. Nor has it provided the Nation complete records of such transactions which it is required to maintain as trustee.

34. As trustee, the United States was required to enter into and approve leases and grant easements and rights of way for not less than fair market value. However, upon information and belief, Defendant breached its fiduciary duty by failing to lease such property interests and grant easements and rights of way for fair market value, and to collect fair and reasonable compensation for the benefit of the Nation. The Nation has been damaged by the failure of Defendant to obtain for the benefit of the Nation fair and reasonable compensation for the use of its land.

35. The Nation is entitled to a money damage award against the United States arising from its mismanagement of the non-mineral interests in the Nation's trust land in an amount to be proven at trial plus interest as allowed by law.

## COUNT III

**Damages Arising from the United States' Breach of Fiduciary Duty with Respect to the Management of Judgment Funds.**

36. All allegations set forth in paragraphs 1 through 35 of this Complaint are incorporated by reference as if fully set forth herein.

37. Judgments obtained against the United States have been held in trust by the United States for the benefit of the Nation. The United States, through statutes and regulations, maintains pervasive control over the management, distribution and investment of those funds. The United States is charged with exercising the highest fiduciary duty in managing these trust assets. *See Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States*, 69 Fed. Cl. 639, 656 (2006).

38. At no time has the United States provided the Nation a complete and accurate accounting of judgment funds held in trust for its benefit.

39. In breach of its fiduciary duty owed to the Nation, the United States has failed to invest, and continues to fail to invest, the principal and earnings of judgment funds held in trust, in a timely manner. In addition, the United States has failed to invest trust funds to obtain the maximum investment returns possible, consistent with its obligations as a fiduciary.

40. These breaches of fiduciary duty owed by the United States to the Nation has caused and continues to cause damage to the Nation in an amount to be proven at trial plus interest as allowed by law.

## COUNT IV

**Damages Arising from the United States' Breach of Fiduciary Duty with Respect to Deposit and Investment of Trust Funds.**

41. All allegations set forth in paragraphs 1 through 40 of this Complaint are incorporated by reference as if fully set forth herein.

42. The United States, as trustee, maintains pervasive control over the management and investment of funds held in trust for the benefit of the Nation, including proceeds from leases, permits, easements and rights of way, judgment funds and general tribal funds as well as "Indian Moneys Proceeds of Labor" (IMPL) funds. The United States, accordingly, has undertaken the highest fiduciary obligations to invest trust funds with the care, skill, and caution that a prudent investor would exercise under the circumstances. In addition, it is and has been under an obligation to comply with federal statutes governing the investment of tribal trust assets, *see* 25 U.S.C. §§ 161a, 161b and 162a, applicable regulations, case law and the common law. *See Osage Tribes of Okla. v. United States,* 72 Fed. Cl. 629, 662 (2006).

43. The United States breached its fiduciary duty to the Nation by holding amounts of trust funds in cash, in excess of liquidity needs. As a result of that breach, the Nation has been damaged by reason of the loss of investment of trust funds at a higher rate of return.

44. The United States breached its fiduciary duty to the Nation by failing to maximize trust income by prudent investment. *Cheyenne-Arapaho Tribes v. United States*, 512 F.2d 1390, 1394 (1975). The United States has, at times relevant herein, invested the Nation's trust funds at a low rate of interest. There were other investment vehicles available as permitted under 25 U.S.C. §§ 161a and 162a, including public-debt obligations of the United States and bonds, notes and other unconditionally guaranteed obligations, paying a higher rate of return. The United States was under a strict fiduciary duty to place trust funds in eligible investments maintaining higher yields. By reason of this breach of fiduciary duty, the Nation has been damaged in an amount representing the difference between what interest the United States paid for such funds and the maximum the funds could have legally and practically earned if properly invested.

45. By reason of the United States' breach of fiduciary duties in its management and investment of trust funds, the Nation is entitled to recover from the United States such damages as may be proven at trial plus interest as allowed by law.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the Nation, prays the Court as follows:

1. For a determination that the Defendant is liable to the Nation in damages for the injuries and losses caused as a result of Defendant's breaches of fiduciary duty;

2. For a determination of the amount of damages due the Nation plus interest as allowed by law;

3. That the costs of this action, including reasonable attorneys fees, be awarded to the Nation;

4. For such other and further relief as the Court deems just and appropriate.

This the 28th day of December, 2006.

Respectfully submitted,

Keith M. Harper
Admitted to Practice in the Court of Federal Claims
Kilpatrick Stockton, LLP
607 14th Street, N.W.
Suite 900
Washington, DC 20005
(202) 508-5800
Fax: (202) 585-0007

Attorney for Plaintiff
Tohono O'odham Nation