# In the United States Court of Federal Claims

No. 06-932 L

(E-Filed: January 25, 2008)

| | |
|---|---|
| AK-CHIN INDIAN COMMUNITY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Indian Tribal Claim; Motion to Dismiss for Lack of Subject Matter Jurisdiction; 28 U.S.C. § 1500; Whether Claim Was "Pending" in District Court When Complaint Was Filed in Court of Federal Claims; Whether Complaint for Damages for Breach of Trust Raises the "Same Claim" (i.e., Relies on the Same Operative Facts and Seeks the Same Relief) as Complaint to Enforce Trust Obligations |

Keith Harper, Washington, DC, for plaintiff. G. William Austin, Washington, DC, of counsel.

Laura M.L. Maroldy, with whom was Ronald J. Tenpas, Acting Assistant Attorney General, Environment and Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, DC, for defendant. Teresa Dawson, Office of the Chief Counsel, Financial Management Service, United States Department of the Treasury, Washington, DC, and Elisabeth Brandon, Office of the Solicitor, United States Department of Interior, Washington, DC, of counsel.

OPINION

HEWITT, Judge

## I. Background

On Friday, December 29, 2006, the Ak-Chin Indian Community (the Community or plaintiff), a federally recognized Indian tribe, filed a complaint with this court (Court of Federal Claims complaint or CFC Compl.), seeking damages for breach by the United States of various trust obligations. CFC Compl. 1. On Friday, December 29, 2006, plaintiff filed with the United States District Court for the District of Columbia a complaint (District Court complaint or DC Compl.) seeking to enforce the performance

by the United States of various trust obligations. The District Court complaint appears in the record as Exhibit 1 to defendant's motion to dismiss.

Since 1868, the United States Code has contained a provision that prohibits this court (and its predecessors) from taking jurisdiction of a complaint in certain circumstances when a complaint by the same plaintiff is pending in a federal district court. See 28 U.S.C. § 1500 (2008).

Defendant filed Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500 (defendant's Motion or Def.'s Mot.) on August 6, 2007. Plaintiff filed Plaintiff's Brief in Response to Defendant's Motion to Dismiss (plaintiff's Response or Pl.'s Resp.) on August 28, 2007. Defendant filed Defendant's Reply in Support of Motion to Dismiss Pursuant to 28 U.S.C. § 1500 (defendant's Reply or Def.'s Reply) on September 21, 2007. In the briefing on defendant's Motion, both parties relied on information produced by plaintiff in discovery addressing the sequence in which the Court of Federal Claims complaint and the District Court complaint had been filed. The court held an evidentiary hearing and oral argument on October 24, 2007. Transcript of Hearing (Hearing Tr.). The purpose of the evidentiary hearing was to hear the testimony of Alexis Applegate, a paralegal employed by plaintiff's counsel, addressing the sequence in which she filed the Court of Federal Claims complaint and District Court complaint. Order of Oct. 17, 2007, at 1; Hearing Tr. 11:8-24, 13:1-14:2. In response to the additional information provided in the evidentiary hearing, the court ordered the parties to submit briefs addressing the sequence of filing. Order of Oct. 25, 2007. On November 9, 2007, plaintiff filed Plaintiff's Opening Post-Evidentiary Hearing Brief Opposing Defendant's Motion to Dismiss (plaintiff's Post-Hearing Brief or Pl.'s Post-Hearing Br.). Defendant filed Defendant's Post-Evidentiary Hearing Brief in Support of Its Motion to Dismiss (defendant's Post-Hearing Response or Def.'s Post-Hearing Resp.) on November 21, 2007.[1] Plaintiff filed Plaintiff's Response to Defendant's Post-Evidentiary Hearing Brief in Support of Defendant's Motion to Dismiss (plaintiff's Post-Hearing Reply or Pl.'s Post-Hearing Reply) on November 29, 2007. Defendant, on December 11, 2007, moved for leave to file a sur-reply to plaintiff's Post-Hearing Reply in order to address alleged

[1]On November 9, 2007, defendant filed Emergency Motion by Defendant for Enlargement of Time By Which to File Its Supplemental Brief in Support of Its Motion to Dismiss Pursuant to 28 U.S.C. § 1500. On November 12, 2007, plaintiff filed Plaintiff's Response to Defendant's Emergency Motion for Enlargement of Time By Which to File Its Supplemental Brief in Support of Its Motion to Dismiss Pursuant to 28 U.S.C. § 1500. By its Order of November 13, 2007, the court ordered defendant to file its briefing, comprising both defendant's opening post-evidentiary hearing brief and its response to plaintiff's timely-filed opening post-evidentiary brief on November 21, 2007, and extended the deadline for plaintiff's responsive briefing.

new facts asserted in plaintiff's Post-Hearing Reply and evidence developing in another case involving 28 U.S.C. § 1500. Defendant's Motion for Leave to File a Sur-Reply to [Pl.'s Post-Hearing Brief] 1. Further to the court's Order of December 18, 2007, defendant filed on January 4, 2008, Defendant's Sur-Reply to Plaintiff's [Post-Hearing Brief] (defendant's Sur-Reply or Def.'s Sur-Reply), and plaintiff, on January 11, 2008, filed Plaintiff's Response to Defendant's Sur-Reply to Plaintiff's [Post-Hearing Brief] (plaintiff's Response to defendant's Sur-Reply or Pl.'s Resp. to Def.'s Sur-Reply).

## II. Standards of Review

Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) governs dismissal of claims for lack of subject matter jurisdiction. RCFC 12(b)(1). When a defendant challenges this court's jurisdiction pursuant to RCFC 12(b)(1), the plaintiff bears the burden to show by a preponderance of the evidence that jurisdiction is proper. Reynolds v. Army & Air Force Exch. Serv. (Reynolds), 846 F.2d 746, 748 (Fed. Cir. 1988). In evaluating a claim pursuant to RCFC 12(b)(1) for lack of jurisdiction over the subject matter, the court must accept as true any undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Reynolds, 846 F.2d at 747. If the motion to dismiss for lack of subject matter jurisdiction disputes the jurisdictional facts, a court may consider other relevant evidence to resolve the factual dispute. Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999); Reynolds, 846 F.2d at 747.

## III. Discussion

The Indian Tucker Act, 28 U.S.C. § 1505 (2008), confers jurisdiction on the Court of Federal Claims to hear claims brought by American Indian tribes that "otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe." 28 U.S.C. § 1505; see also United States v. White Mountain Apache Tribe (White Mountain), 537 U.S. 465, 472 (2003). However, like the general Tucker Act, 28 U.S.C. § 1491 (2008), a plaintiff must identify a "separate source of substantive law," such as a contract, statute or regulation, "that creates the right to money damages." Fisher v. United States (Fisher), 402 F.3d 1167, 1172 (Fed. Cir. 2005) (citations omitted); see also United States v. Mitchell (Mitchell), 463 U.S. 206, 216-17 (1983). A money-mandating source is one that can "fairly be interpreted as mandating compensation by the Federal Government for the damage sustained," id. at 217 (quoting United States v. Testan, 242 U.S. 392, 400 (1976)), and is "reasonably amenable to the reading that it mandates a right of recovery in damages," White Mountain, 537 U.S. at 472-73; Greenlee County v. United States (Greenlee), 487 F.3d 871, 875-76 (Fed. Cir. 2007). In Indian trust claims,

this substantive right is often found in statutes and regulations from which it can be inferred that the government has assumed fiduciary responsibilities in accordance with its trust relationship with Indian tribes. See Mitchell, 463 U.S. at 224-28.

The basis of defendant's motion to dismiss plaintiff's claim for lack of subject matter jurisdiction is 28 U.S.C. § 1500. See Def.'s Mot. passim. Section 1500 limits the subject matter jurisdiction of the Court of Federal Claims. 28 U.S.C. § 1500. Section 1500 provides, in relevant part, that, "[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." Id. The purpose of § 1500 is to prevent parties from filing duplicative lawsuits that seek compensation from the government. Keene v. United States (Keene IV), 508 U.S. 200, 206 (1993); Harbuck v. United States, 378 F.3d 1324, 1328 (Fed. Cir. 2004) (noting that the purpose of § 1500 was "to prevent the United States from having to litigate and defend against the same claim in both courts"); UNR Indus., Inc. v. United States (UNR), 962 F.2d 1013, 1018 (Fed. Cir. 1992) (noting that the purpose of § 1500 is to "force plaintiffs to choose between pursuing their claims in the Court of [Federal] Claims or in another court").[2]

In determining whether § 1500 precludes jurisdiction, the court must first examine whether plaintiff "has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500. If the court finds that plaintiff has another suit "pending," the court then must determine if plaintiff asserted the "same claims" in both suits. Id.; see Loveladies Harbor, Inc. v. United States (Loveladies), 27 F.3d 1545, 1548 (Fed. Cir. 1994); Breneman v. United States, 57 Fed. Cl. 571, 575 (2003) (noting that the first prong of § 1500 analysis is to address the timing of the claims, and the second prong examines whether the claims are the same). The court first addresses the factual question – whether or not plaintiff's District Court complaint was "pending" when plaintiff filed its Court of Federal Claims complaint. For purposes of judicial economy and efficiency, the court also addresses whether plaintiff's claims are the same for purposes of preclusion of jurisdiction under § 1500.[3]

---

[2]Of course, 28 U.S.C. § 1500 (2008) does not literally "force plaintiffs to choose between pursuing their claims in the Court of [Federal] Claims or in another court." UNR Indus., Inc. v. United States, 962 F.2d 1013, 1018 (Fed. Cir. 1992). The "has pending" language, 28 U.S.C. § 1500, simply "forces" plaintiffs to file a complaint that could be perceived to be within the ambit of 28 U.S.C. § 1500 in the Court of Federal Claims before filing any related complaint in a federal district court.

[3]Plaintiff's counsel specifically urged the court "to decide all three of the questions
(continued...)

A. Timing of Claims

It is undisputed that plaintiff filed both its Court of Federal Claims complaint and its District Court complaint on December 29, 2006. CFC Compl. 1; DC Compl. 1. The parties dispute whether plaintiff's District Court complaint was "pending" when plaintiff filed its complaint in the Court of Federal Claims. See Def.'s Mot. 2-3; Pl.'s Resp 3-8. "The question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed . . . ." Loveladies, 27 F.3d at 1548. A later-filed action in another court does not prevent the Court of Federal Claims from assuming jurisdiction over an earlier-filed claim. Tecon Eng'rs, Inc. v. United States, 170 Ct. Cl. 389, 401 (1965). If the District Court complaint was not then "pending" at the time plaintiff filed its action in the Court of Federal Claims, § 1500 does not apply. See 28 U.S.C. § 1500. If, however, the District Court complaint was pending when the Court of Federal Claims complaint was filed, the court must address whether plaintiff has asserted the "same claims" in both suits. See 28 U.S.C. § 1500, see also Loveladies, 27 F.3d at 1549; Breneman, 57 Fed. Cl. at 575.

Defendant claims that plaintiff's District Court complaint was filed first and was therefore pending when the complaint was filed in this court. Def.'s Mot. 2. Plaintiff, on the other hand, contends that its Court of Federal Claims complaint was filed first and the District Court complaint was therefore not pending at that time. Pl.'s Resp. 1.[4] With both complaints having been filed on December 29, 2006, the determination of which complaint was filed first is not without difficulty. It was not until after the court heard testimony on October 24, 2007, and after the examination of post-hearing briefing, that

---

[3](...continued)
presented," Transcript of Hearing Held Oct. 24, 2007 (Hearing Tr.) 76:17-18, for the following reasons:

> They are essentially alternative grounds for denying the government's motion. None of the three issues - . . . timing, the same operative facts, or the same relief - is superior to or is logically antecedent to, the others. They are really co-equal issues.

Id. at 76:19-24. The court does not understand how the issue of timing could be viewed as not being "logically antecedent" to the other issues. Unless timing is an issue, the other issues simply would not arise.

[4]Defendant argues, without precedential authority, that "an action in another court should be deemed 'pending' if it was filed on the same day as a complaint in this court." Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500 (defendant's Motion or Def.'s Mot.) 8 (citation omitted). The court respectfully disagrees and will not further address the issue in this Opinion.

the court was able to make a determination as to whether the District Court complaint was "pending," for purposes of § 1500, at the time plaintiff filed its Court of Federal Claims complaint.

In addition to plaintiff's District Court complaint and plaintiff's Court of Federal Claims complaint, five other complaints were filed by plaintiff's counsel on December 29, 2006. Hearing Tr. 18:20-19:15. These complaints included three additional complaints at the Court of Federal Claims and two additional complaints at the District Court. Id.; Pl.'s Post-Hearing Br. 2; Def.'s Post-Hearing Resp. 2. The additional complaints in the Court of Federal Claims were filed on behalf of three tribes, Passamaquoddy Tribe of Maine (Passamaquoddy), Salt River Pima-Maricopa Indian Community (Salt River), and The Tohono O'odham Nation. Hearing Tr. 18:20-22; Pl.'s Post-Hearing Br. 2; Def.'s Post-Hearing Resp. 2. The additional complaints in the District Court were filed on behalf of Passamaquoddy and Salt River. Hearing Tr. 18:23-19:1; Pl.'s Post-Hearing Br. 2; Def.'s Post-Hearing Resp. 2. Plaintiff's paralegal, Alexis Applegate, filed all seven of the complaints on December 29, 2006. Def.'s Post-Hearing Resp. 2; Pl.'s Post-Hearing Br. 2. At the evidentiary hearing on October 24, 2007, Ms. Applegate testified to the sequence of events on December 29, 2006 as follows:

> The first trip, I came here to the CFC clerk's office to file Passamaquaddy, Salt River, and Tohono O'odham. I then returned to the office, upon which I was told, and figured out, that both the Passamaquaddy and Salt River district court complaints were ready. So I took those to the district court. Those were prepared for me while I waited. I did not have to return for those. I then returned back to the office, to discover the Ak-Chin CFC complaint was ready. I walked that over to here. I returned to the office and found out that the Ak-Chin district court was ready. I took that over to the district court by taking the cab, to find out that the clerk didn't have time to do it while I waited. So I returned back to the office and then, later, returned back to the district court to obtain and completely file the Ak-Chin district court complaint.

Hearing Tr. 18:20-19:15.

Ms. Applegate testified that she made three trips to the District Court on December 29, 2006. Id. at 18:20-19:15; Pl.'s Resp. 15. The first trip was to drop off the complaints in Passamaquoddy and Salt River. Hearing Tr. 18:23-19:3. Ms. Applegate testified that she made two separate trips to complete the filing of plaintiff's District Court complaint. Id. at 14:14-17, 15:16-24. Ms. Applegate stated that she dropped off plaintiff's District Court complaint during her second trip to the District Court but did not complete the filing because the intake clerk was too busy. Id. at 14:19-24, 15:16-18. On her third and

final trip to the District Court, Ms. Applegate "paid for the complaint with the cashier, returned the receipt to the intake clerk," and received the summons.[5] Id. at 15:19-24. Defendant argues that "[p]laintiff's responses to Defendant's interrogatories never mentioned a third trip to the Court." Def.'s Reply 3 n.2. As plaintiff explains, however,

> Ak-Chin did not reference Ms. Applegate's first trip to the District Court in its Responses to Defendant's Interrogatories because the Interrogatories only sought information regarding the filings for Ak-Chin, and not regarding Ak-Chin's counsel's other tribal clients. . . . [and because the first trip] is not relevant to the issue of whether Ms. Applegate filed Ak-Chin's CFC Complaint prior to filing the District Court Complaint.

Pl.'s Post-Hearing Br. 5 n.2.

In support of its contention that plaintiff filed its District Court complaint first, defendant argues that "[d]ocuments produced by Plaintiff show that at 8:59 a.m. on December 29, 2006, counsel of record Keith Harper told his colleague Ms. Applegate, that changes needed to be made to all the Court of Federal Claims Complaints while she filed the District Court Complaints." Def.'s Mot. 3. Keith Harper recalled, however, that "he orally instructed Ms. Applegate to file the Complaints initiating the Court of Federal Claims Actions at the earliest possible time on December 29, 2006, and prior to filing the Complaint initiating the District Court Action." Def.'s Mot. Ex. 2, Response to Interrogatory No. 11. Plaintiff stated that it wanted to file the complaints in the Court of Federal Claims first because Mr. Harper and Ms. Applegate were more familiar with filing in District Court and were uncertain as to whether the Court of Federal Claims was closing early that day. Pl.'s Resp. 6-7; Hearing Tr. 26:1-28:6. Importantly, Ms. Applegate testified that she did not see the email from Mr. Harper on the morning of December 29, 2006. Hearing Tr. 30:6-20. While the court in many circumstances would view a contemporaneous email expressing a position against interest as a significantly probative piece of evidence, the court in this case credits Ms. Applegate's testimony describing her activities on the morning of December 29, 2006, in particular, that she was

---

[5]The court is aware that there is a disputed issue as to whether a complaint remains unfiled until the filing fee has been paid. Plaintiff asserts that a complaint is not filed until the payment of the filing fee. Plaintiff's Brief in Response to Defendant's Motion to Dismiss (plaintiff's Response or Pl.'s Resp.) 16; Plaintiff's Response to Defendant's Post-Evidentiary Hearing Brief in Support of Defendant's Motion to Dismiss (plaintiff's Post-Hearing Reply or Pl.'s Post-Hearing Reply) 8. Defendant, on the other hand, argues that such an assertion "has no merit." Defendant's Reply in Support of Motion to Dismiss Pursuant to 28 U.S.C. § 1500 (defendant's Reply or Def.'s Reply) 4. The court finds the sequence of filing sufficiently clear, based on the testimony in this case, that the issue need not be addressed in this Opinion.

away from her desk and working to assemble the complaints. Id. at 30:12-20 ("I don't recall, until we started going through the discovery process, ever seeing this e-mail. I think it was at a time, as I mentioned earlier, that I was away from my computer.").

Defendant points out, correctly, that as of April 23, 2007, Ms. Applegate "admitted to Kilpatrick Stockton attorney Catherine Munson in an e-mail" that she was unsure of which complaint she filed first. Def.'s Post-Hearing Resp. 9-10. The email upon which defendant relies, however, "reflect[s] Ms. Applegate's response to Ms. Munson's question, nearly four months after the filings, of how to determine what time the Complaints on behalf of Salt River and Passamaquaddy – not Ak-Chin – were filed." Pl.'s Post-Hearing Br. 8-9. Plaintiff argues that, when Ms. Applegate sent the email in question, she had not had the opportunity to refresh her recollection as she did before her October 24, 2007 testimony. Id. at 9; Pl.'s Resp. to Def.'s Sur-Reply 3 ("Approximately fifteen minutes after Ms. Munson had sent the e-mail, and without having reviewed any contemporaneous evidence regarding the December 29, 2006 filings, Ms. Applegate provided her initial response to Ms. Munson's inquiry."). In addition, Ms. Applegate's response to Ms. Munson states only that there was no way to determine what time the complaints were filed. The email does not state that she was unable to determine the order of filing. Pl.'s Post-Hearing Br. 9; see Def.'s Sur-Reply Ex. A, 66:9-12.

Ms. Applegate testified that she was "certain" that the first of plaintiff's complaints that she filed on December 29, 2006, was plaintiff's Court of Federal Claims complaint. Hearing Tr. 13:17-22. Ms. Applegate testified that she knew plaintiff's District Court complaint was the last complaint she filed on December 29, 2006. Id. at 14:3-13. She knew she filed the complaint at District Court last because she remembered giving the security guard at the District Court a "high-five" when she exited the courthouse for the final time. Id. at 15:25-16:8; Pl.'s Resp. 14. Ms. Applegate testified that her belief that plaintiff's District Court complaint was the last complaint she filed in the District Court was also based on the fact that plaintiff's District Court complaint had the highest civil action number of the three complaints she filed at the District Court that day. Pl.'s Resp. 14; Hearing Tr. 14:3-13. According to Ms. Applegate:

> We did some due diligence, myself and other members of my team, to find out that the district court does sequentially number their cases. The highest number in the series of cases that we filed that day was the Ak-Chin case. Knowing that the district court is the last place that I went, I know that the Ak-Chin case was the last case that I filed of the day.

Hearing Tr. 14:3-13. The court does not understand the testimony that District Court complaints are numbered sequentially in the order filed to be in dispute. Ms. Applegate further testified that her memory of filing plaintiff's District Court complaint last is

consistent with the fact that there were "some issues" preventing plaintiff's counsel from finalizing plaintiff's District Court complaint that did not affect the Passamaquoddy or Salt-River complaints and that necessitated taking additional trips to file plaintiff's District Court complaint. Pl.'s Post-Hearing Br. 4; Hearing Tr. 17:3-7. Ms. Applegate testified that she was able to determine that she filed plaintiff's Court of Federal Claims complaint before she filed plaintiff's District Court complaint due to the fact that plaintiff's District Court complaint was the last complaint she filed on that day. Hearing Tr. 13:24-14:2.

Defendant argues that Ms. Applegate's reliability and credibility are undermined by the fact that in her April 23, 2007 emails to Ms. Munson, Ms. Applegate stated that when she went to the Court of Federal Claims she was missing something and had to return to her office, yet she made no mention in her October 24, 2007 testimony of forgetting something on her first trip to the Court of Federal Claims. Def.'s Post-Hearing Resp. 19-20. The court, however, finds that Ms. Applegate's October 24, 2007 testimony has remained consistent regarding the sequence of the filing of plaintiff's Court of Federal Claims and District Court complaints. Furthermore, in testimony given on December 10, 2007, regarding the Salt River case, Ms. Applegate explained the inconsistency between her e-mail of April 23, 2007, and her oral testimony of October 24, 2007, by stating: "I got that confused with admissions packets that I had to bring over in January 2007 . . . in which I was missing an element of the packet and had to return." Def.'s Sur-Reply Ex. A, 36:22-37:2.

Defendant also attempts to cast doubt on Ms. Applegate's credibility by alleging that, contrary to Ms. Applegate's testimony, court records indicate that the first complaint Ms. Applegate filed in the Court of Federal Claims on December 29, 2006 was plaintiff's Court of Federal Claims complaint. Def.'s Sur-Reply 11-12. Defendant relies on information provided in a proceeding before Judge Baskir at the Court of Federal Claims on December 12, 2007 in Salt River Pima-Maricopa Indian Community v. United States, Case No. 06-943 L, "to hear directly from Court personnel about the [Court of Federal Claim's] procedures respecting the filing and receipting of Complaints." Def.'s Sur-Reply 10. Court of Federal Claims Deputy Chief of Operations Lisa Reyes, Def.'s Sur-Reply, Ex. B, 5:2-4, stated that "receipts would be written from lowest number to highest number." Def.'s Sur-Reply, Ex. B, 17:23-24.[6] Defendant argues that, because the receipt

---

[6]The December 12, 2007 proceeding before Judge Baskir does not yet appear in the record of Salt River Pima-Maricopa Indian Community v. United States, Case No. 06-943 L; however, no party has objected to the use of excerpts from the proceeding or questioned their authenticity. See Defendant's Sur-Reply to Plaintiff's Post-Hearing Reply Brief (defendant's Sur-Reply or Def.'s Sur-Reply) passim; Plaintiff's Response to Defendant's Sur-Reply to

(continued...)

for plaintiff's Court of Federal Claims complaint has a lower number than the receipts issued for the Passamaquoddy and Salt River complaints, the Passamaquoddy and Salt River complaints were filed after plaintiff's Court of Federal Claims complaint and not before as Ms. Applegate testified. Def.'s Sur-Reply 11-12. According to Ms. Reyes, however, "you cannot tell what order a complaint came in on a particular day by looking at the docket number in relationship to other docket numbers or by looking at the receipt." Def.'s Sur-Reply, Ex. B, 9:1-10. In response to another question, Ms. Reyes again stated: "I can tell which of the receipts would be issued first, but I can't tell which of the complaints would have been dropped off first." Def.'s Sur-Reply, Ex. B, 14:20-22.

Plaintiff's responses to interrogatories indicate that the Ak-Chin complaint had not been filed in the Court of Federal Claims as of 11:41 a.m. on December 29, 2006. Def.'s Mot. 4; Def.'s Mot., Ex. 2, Response to Interrogatory No. 8. At 12:41 p.m., however, Ms. Applegate sent an email stating that the complaints had been filed and that she was still awaiting the summons. Def.'s Mot., Ex. 2, Response to Interrogatory No. 7; Def.'s Mot. 4; Def.'s Mot., Ex. 9. Ms. Applegate sent another email at 12:41 p.m. stating that the filing was not yet completed. Pl.'s Post-Hearing Reply, Ex. F. Defendant argues that the 12:41 p.m. email indicates that all filing was complete as of 12:41 p.m. Def.'s Mot. 4. According to plaintiff, "the government's argument is inherently flawed because it is based upon the unsound premise that Ms. Applegate's statement in her e-mail that she had 'filed' the Complaints, even when she had not yet paid the filing fee for the Ak-Chin District Court complaint, is legally dispositive of when the filing occurred." Pl.'s Post-Hearing Reply 9. However, regardless of the time the filing of the Ak-Chin complaint was completed in the District Court, Ms. Applegate testified that she filed the Ak-Chin Complaint in the Court of Federal Claims before her second trip to the District Court to file the Ak-Chin District Court complaint. Hearing Tr. 18:3-16, 33:19-34:9. The 12:41 p.m. email that all complaints had been filed and that Ms. Applegate was waiting for the summons shows that the Court of Federal Claims complaint had been filed by 12:41 p.m. because counsel need not obtain a summons for a complaint in the Court of Federal Claims. Pl.'s Resp. 14-15.

---

[6](...continued)
Plaintiff's Post-Evidentiary Hearing Brief (plaintiff's Response to defendant's Sur-Reply or Pl.'s Resp. to Def.'s Sur-Reply) passim. Although the authenticity of the statements made by Court of Federal Claims Deputy Chief of Operations Lisa Reyes, Def.'s Sur-Reply, Ex. B. 5:2-4, is not questioned, the court recognizes that the statements are out-of-court statements being "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). However, the statements are properly admitted as hearsay because they are statements of a public office (in this case, by its managing officer), "setting forth . . . the activities of the office." Fed. R. Evid. 803(8).

Defendant attempts to cast doubt on the plausibility of the sequence of events between 11:41 a.m. and 12:41 p.m. on December 29, 2006. Def.'s Post-Hearing Resp. 23. According to defendant, the following sequence of events could not have been completed in an hour:

> [T]he lawyers' completing the Ak-Chin CFC Complaint, Ms. Applegate's copying and assembling it, Ms. Applegate's walking to this Court to file it, filing it with the Clerk, and walking back to her office; Ms. Applegate's then learning that the Ak-Chin District Court Complaint was ready for filing, picking up that Complaint, leaving her office again, traveling by cab to a crowded Clerk's office, talking to the intake clerk, coming back to her office by cab, getting back to her desk, and receiving and responding to the e-mail from Mr. Austin.

Id. (internal citation omitted). Defendant had an opportunity to examine plaintiff's witness at the October 24, 2007 hearing about the time that was consumed by each of the activities she performed on December 29, 2006 and did not do so. See Hearing Tr. passim. Defendant's argument on this point is simply not supported in the record and is speculative.

Ms. Applegate testified that at 2:23 p.m. she sent an email stating that she had returned from the District Court and would be leaving soon. Id. at 47:6-12. By 3:14 p.m. on December 29, 2006, a summons and a copy of plaintiff's District Court complaint had been served on the Secretary of the Interior and Ross O. Swimmer, Special Trustee at the Office of Special Trustee for American Indians at the Department of the Interior. Def.'s Mot. 4-5; Def.'s Mot., Ex. 10. Defendant suggests that the completion of service by 3:14 p.m. supports its view that plaintiff's District Court complaint was filed earlier in the day than Ms. Applegate's testimony indicates. See Def.'s Mot. 4-5. The court, however, finds it plausible that service was made promptly after Ms. Applegate's return to her office, especially considering that the Interior Department, where the summons were delivered, is located only a few blocks away from the offices of plaintiff's counsel, Pl.'s Post-Hearing Br. 8; Hearing Tr. 49:13-25, and that Ms. Applegate had made arrangements with the process servers beforehand, Pl.'s Post-Hearing Br. 8; Hearing Tr. 47:20-48:14.

Defendant also argues that the order of filing of the District Court complaints casts doubt on the time line to which Ms. Applegate testified. Def.'s Reply 4. The complaints for Passamaquoddy and Salt River were the first and second complaints filed in the District Court on December 29, 2006. Pl.'s Post-Hearing Reply 6; Def.'s Post-Hearing Resp. 4 Defendant argues that plaintiff's District Court complaint was the sixth out of thirty-six complaints filed that day. Def.'s Mot. 10. If plaintiff's District Court complaint

was the sixth out of thirty-six complaints filed in the District Court on December 29, 2006, as defendant argues, see Def.'s Mot. 10, then it must be that thirty complaints were filed after plaintiff's District Court complaint. According to defendant, "It contravenes common sense to claim that in the time that elapsed between Ms. Applegate's filing the first two Complaints filed in the District Court that day (by any party), and her supposed third trip to the Court to file plaintiff's District Court complaint, only four other Complaints were filed, yet thirty more were filed by various parties, after Plaintiff's Complaint supposedly was filed in the afternoon." Def.'s Reply 4 (emphasis in original). Plaintiff argues in reply that "[l]awyers being lawyers, there is no reason to be surprised that filings occur disproportionately at the end of the day." Pl.'s Post-Hearing Reply 5. Ms. Applegate testified that the district court "had gotten significantly busier as the day progressed." Hearing Tr. 46:17-23. Plaintiff also notes that the "District Court has an after-hours 'speedy filing box' allowing for filings to occur after the District Court closes at 4:00 p.m." Pl.'s Post-Hearing Reply 5. The first after-hours filing on December 29, 2006 was the twenty-first filing of the day. Id. Furthermore, according to plaintiff, the "District Court made notations on the 16th through the 20th filings showing that these filings were received by the court prior to December 29th. Id. at 6 (citations omitted). It appears then, that the fifteenth filing of the day was the last "in person" filing, see id., so that only nine complaints were filed after plaintiff's District Court complaint and before 4:00 p.m., id. It is not implausible that plaintiff's District Court complaint was filed in the early afternoon, consistent with Ms. Applegate's testimony. Hearing Tr. 43:12-23, 47:6-19.

The court finds Ms. Applegate to be a credible witness. Plaintiff's time-line for the filing of plaintiff's Court of Federal Claims complaint and District Court complaint is not implausible or inconsistent with the record. Possible discrepancies between statements in email and answers to interrogatories and testimonial evidence were explained. For the foregoing reasons, the court determines, based on its view of the preponderance of the credible evidence before it, that plaintiff's District Court complaint was not "pending" when plaintiff filed its complaint in this Court.

Were it to be found that the court's factual determination was clearly in error, in the interest of judicial economy and efficiency, the court turns to address whether plaintiff's claims in the District Court for the District of Columbia and this court are the same claim, that is, based on the same operative facts and whether the relief plaintiff seeks in both courts contains "some overlap," Keene IV, 508 U.S. at 212, or is "distinctly different," Loveladies, 27 F.3d at 1551.

B. Whether the Complaints Involve the Same Claim

The Supreme Court has stated that preclusion of jurisdiction under § 1500 "requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit." Keene IV, 508 U.S. at 210. Keene filed complaints against the government seeking damages after numerous suits were filed against Keene in connection with alleged injuries from asbestos exposure. Id. at 202-204. The two complaints at issue in Keene IV (Keene II and Keene III, described below) involved the same factual allegations and an identical request for relief under the same theory. Id. at 204-205. Keene first filed a complaint (Keene I) in the Court of Federal Claims seeking damages from the government under a breach of contract theory. Id. at 203-204. Keene then filed a complaint in federal district court against the government (Keene II) based on the same factual allegations included in the Court of Federal Claims complaint in Keene I, but "recast in terms of various tort theories," and also included a takings claim under the Federal Employees' Compensation Act (FECA). Id. at 204. Five days before its federal district court complaint (Keene II) was dismissed, Keene filed a second complaint in the Court of Federal Claims (Keene III). Id. The Keene III complaint repeated the factual allegations in the Keene I complaint and adopted one of the theories of recovery raised in its federal district court complaint (Keene II) - recovery under FECA. Id. at 204-205.

In Keene IV, the Supreme Court stated that "the comparison of the two cases for purposes of possible dismissal would turn on whether the plaintiff's [district court] suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested." Id. at 212. The Court then reviewed the state of the law interpreting the immediate predecessor of § 1500 and concluded that, in 1948, Congress re-enacted language previously interpreted by the Court of Claims in British American Tobacco Co. v. United States (British American), 89 Ct. Cl. 438 (1939) (per curiam). Keene IV, 508 U.S. at 212. The Court then applied the presumption that "Congress was aware of these earlier judicial interpretations and, in effect, adopted them." Id. The Court also noted that "[w]hile the latter language [the words "in respect to which" in the phrase "claim for or in respect to which"] does not set the limits of claim identity with any precision, it does make it clear that Congress did not intend the statute to be rendered useless by a narrow concept of identity providing a correspondingly liberal opportunity to maintain two suits arising from the same factual foundation." Id. at 213. The Court did "not decide whether two actions based on the same operative facts, but seeking completely different relief, would implicate § 1500" because the issue was not presented in the facts of Keene IV. Id. at 213 n.6.

In UNR, the case leading up to Keene IV, the Federal Circuit stated that it was overruling five cases: Boston Five Cents Savings Bank, FSB v. United States, 864 F.2d 137 (Fed. Cir. 1988); Hossein v. United States, 218 Ct. Cl. 727 (1978); Brown v. United States, 175 Ct. Cl. 343 (1966); Tecon Engineers, Inc. v. United States, 170 Ct. Cl. 389 (1965); Casman v. United States (Casman), 135 Ct. Cl. 647 (1956). UNR, 962 F.2d at

1022 & n.3, 1023. However, in Keene IV, the Court stated that "[i]n applying § 1500 to the facts of this case, [the Court] find[s] it unnecessary to consider, much less repudiate, the 'judicially created exceptions' to § 1500 found in Tecon Engineers, Casman, and Boston Five."[7] Keene IV, 508 U.S. at 216. The Court noted that "[t]he Casman court recognized an exception (followed in Boston Five) for plaintiffs who seek distinctly different types of relief in the two courts," id. at 216, and in Keene IV, the plaintiff "sought monetary relief in each of the cases pending when it filed the complaints seeking monetary relief in Keene I and Keene [III]," id.

The Casman plaintiff sued in district court for reinstatement to his government position and, while this suit was pending, he sued in the Court of Claims for back pay that he had not received as a result of the alleged wrongful removal. Casman, 135 Ct. Cl. at 648. The Casman court appears to equate the term "claim" with the term "relief" in its analysis. See id. at 650. The Casman court held that the two suits alleged different claims and distinguished the claims by the different form of relief each sought. Id.

> The claim in this case and the relief sought in the district court are entirely different. The claim of plaintiff for back pay is one that falls exclusively within the jurisdiction of this court, and there is no other court which plaintiff might elect. On the other hand, the Court of Claims is without jurisdiction to restore plaintiff to his position.

Id. (citations omitted).

The Federal Circuit in Loveladies articulated the standard by which to compare a claim before the Court of Federal Claims and a claim pending "in another court that seeks distinctly different relief." 27 F.3d at 1549 (emphasis added). In Loveladies, the plaintiff brought a suit in federal district court challenging the denial by the U.S. Army Corps of Engineers (Corps) of the plaintiff's fill permit. Id. at 1547. The plaintiff in Loveladies thereafter filed a complaint in the Court of Federal Claims in which the plaintiff "maintained that the permit denial constituted a taking of private property, and that the Fifth Amendment of the Constitution required the Government to compensate Loveladies." Id. The Federal Circuit addressed the issue of "the meaning of the term 'claims' as it is used in § 1500" because the statute does not provide a definition of "claims." Id. at 1549. The Federal Circuit noted that it had recently "reaffirmed the rule that it is 'operative facts' and not legal theories by which claims may be distinguished

---

[7]The Court stated that Brown v. United States, 175 Ct. Cl. 343 (1966) and Hossein v. United States, 218 Ct. Cl. 727 (1978) "do not survive [its] ruling [in Keene IV], for they ignored the time-of-filing rule" that the jurisdiction of a court depends on the facts existing at the time the action was brought. Keene v. United States (Keene IV), 508 U.S. 200, 217 n.12 (1993).

under § 1500 when the same relief–money damages–is sought." Id. (footnote omitted). "'Claims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court.'" Id. at 1550 (quoting Johns-Manville Corp v. United States, 855 F.2d 1556, 1567 (Fed. Cir. 1988)). The Federal Circuit held that the Court of Federal Claims was not barred from hearing the plaintiff's claim because "the claims in the two courts are for distinctly different and not the same or even overlapping relief," id. at 1554, and hence, the claims were not the same for purpose of § 1500. The court relied on Casman, 135 Ct. Cl. 647, and British American, 89 Ct. Cl. 438, to aid in its effort to define the term "claims." Loveladies, 27 F.3d at 1550-51.

The plaintiff in British American brought a suit against the government in district court based on a tort theory and one in the Court of Claims under a contractual theory. British American, 89 Ct. Cl. at 440. The Court of Claims found that it was without jurisdiction because the two claims were based on the same operative facts and the fact that the two claims were based on different legal theories did not mean the claims were different. Id. In Loveladies, the Federal Circuit noted that the Casman rule has been "consistently applied . . . to distinguish claims." 27 F.3d at 1550 (citing Truckee-Carson Irrigation Dist. v. United States, 223 Ct. Cl. 684 (1980) (holding that § 1500 did not preclude jurisdiction because the Court of Federal Claims complaint sought monetary relief and the district court complaint sought only injunctive and declaratory relief); Boston Five Cents Savings Bank, FSB v. United States, 864 F.2d 137 (Fed. Cir. 1988) (holding that § 1500 did not bar Court of Federal Claims jurisdiction because the pending district court complaint sought only declaratory relief and did not seek monetary damages); Deltona Corp. v. United States, 657 F.2d 1184 (Ct. Cl. 1981) (issue of whether jurisdiction was barred under § 1500 was not addressed where a takings claim proceeded in the Court of Federal Claims while a claim regarding the validity of a permit proceeded in district court); Webb v. United States, 19 Cl. Ct. 650 (1990) (noting that under a § 1500 analysis, claims with the same operative facts need not be dismissed if they can be distinguished by the relief each seeks)).

The Federal Circuit in Loveladies explained that it has "consistently tested claims against both the principle established in Casman and that established in British American" and "[t]aken together, these tests produce a working definition of 'claims' for the purpose of applying § 1500." Loveladies, 27 F.3d at 1551. "For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, and must seek the same relief." Id. at 1551 (emphasis in original). The Federal Circuit acknowledged that "a showing that the two claims arose from the same 'operative facts' is necessary, but not sufficient, to preclude the Court of Federal Claims from hearing a case. To come within the proscription of § 1500, the claims must also seek the same relief." Id. at 1551-52.

Plaintiff asserts that the test articulated in Loveladies should control here rather than the Keene IV test. Pl.'s Resp. 17 & n.8. Plaintiff fails, however, to explain why the Loveladies test should prevail over the Keene IV test, other than to argue that "this court is 'governed by the Federal Circuit's explication of Keene [in Loveladies] which developed it into a two prong test.'" Id. at 17 n.8 (alteration in original). The court agrees that the decisions of the Federal Circuit are binding on this court. However, the court does not view the Loveladies text advanced by plaintiff as controlling over the closely related text appearing in Keene IV. The court understands the difference between the § 1500 analyses in Keene IV and Loveladies to center on the issue of the whether the relief sought in both courts is "distinctly different," Loveladies, 27 F.3d at 1549, or if there is "some overlap," Keene IV, 508 U.S. at 212. In order to satisfy both tests, the relief sought must be, under Loveladies, "distinctly different", 27 F.3d at 1549, and, under Keene IV, relief that does not contain "some overlap," 508 U.S. at 212. Therefore, the court now turns to address whether plaintiff's claims are based on the same operative facts and whether the relief plaintiff seeks in both courts contains "some overlap" or is "distinctly different."

At issue in plaintiff's District Court complaint "are funds and other assets, including approximately 21,840 acres of land, held in trust by the United States for the benefit of the Community." Def.'s Mot. Ex. 1, ¶ 2. Plaintiff states that "the trust funds are comprised of both judgment funds held in trust pursuant to federal law and funds that receive their trust character as proceeds of trust property, specifically the lease and sale of resources or lands that are held in trust." Id. Plaintiff asserts that the 21,840 acres of trust land "have produced valuable natural resources and have been leased to third parties and/or to the government for rights-of-way, business uses, and other purposes" over the years. Id. at ¶ 3. Plaintiff claims that its "[t]ribal lands, associated resources, and income derived therefrom constitute a substantial portion of the assets held by the United States in trust for the Community's benefit." Id. at ¶ 13.

In its District Court complaint, plaintiff alleges breaches of trust by the government with respect to its management of plaintiff's trust property and trust funds. See id. at ¶ 20. Plaintiff contends that the government "grossly mismanaged and continue[s] to grossly mismanage the trust and [has] failed for over a century to carry out the most basic and fundamental trust duties owed to the Community." Id. at ¶ 4. Plaintiff's specific allegations of mismanagement include the government's alleged failure to provide an adequate accounting of the trust assets, id. at ¶¶ 4(a), 20(a); the government's alleged failure to properly collect, invest, and disburse trust funds belonging to the Community, see id. at ¶¶ 4(d), 14; the government's alleged failure to use reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property, id. at ¶¶ 4(c), 20(f); and the government's alleged failure to preserve and protect the trust property, id. at ¶¶ 4(e), 20(d).

Plaintiff's District Court complaint seeks "redress of breaches of trust by the United States, acting by and through the defendants, in the management and accounting of trust assests." Id. at ¶ 1. In particular, plaintiff's District Court complaint seeks "to compel the defendant to provide a full and complete accounting of all trust assets belonging to [plaintiff] and to correct the balances of [plaintiff's] trust fund accounts to reflect accurate balances." Id. Plaintiff's District Court complaint seeks injunctive relief that would direct defendant to provide plaintiff with "a complete, accurate, and adequate accounting of [plaintiff's] trust assets," id. at ¶ 42. In its District Court complaint, plaintiff also seeks "a restatement of [its] trust fund account balances in conformity with the ultimate and complete accounting, and to any additional equitable relief that may be appropriate (e.g., disgorgement, equitable restitution, or an injunction directing the trustee to take action against third parties)." Id. at ¶ 43.

At issue in plaintiff's Court of Federal Claims complaint is the government's alleged "mismanagement of the . . . Community's trust property," including its 21,840 acres of land, funds, and assets. CFC Compl. ¶¶ 1, 9, 14-15. Just as in the District Court complaint, plaintiff asserts that its 21,840 acres "ha[ve] produced valuable natural resources and ha[ve] been leased to third parties and/or the federal and state governments for rights-of-way, business uses, and other purposes." Id. at ¶ 12. Plaintiff states that the land "is held in trust by the United States for the benefit of the . . . Community" and that "[a] substantial portion of the funds held by the United States in trust for the . . . Community is derived from income from tribal lands." Id. at ¶¶ 14-15. That income "is derived from . . . the sale of the natural resources and the conveyance of certain interests in the . . . Community's tribal trust land, including leases, easements, and rights of way." Id. at ¶ 16. Plaintiff states that "[t]hese assets, and the income they produce, form the core of the . . . Community's tribal trust assets." Id.

In its Court of Federal Claims complaint, plaintiff alleges breaches of trust by the government with respect to its management of plaintiff's trust property and trust funds. Id. at ¶¶ 22-39. Plaintiff contends that the government "consistently and egregiously failed to comply with . . . [the] fiduciary duties incumbent on a trustee, and it continues to violate the . . . Community's rights as beneficiary of the trust." Id. at ¶ 22. Plaintiff's specific allegations of failures to comply include the government's alleged failure "to keep and render clear and accurate accounts with respect to the administration of the trust," id. at ¶ 22(c); the government's alleged failure to properly collect, invest, and disburse trust funds belonging to the Community, id. at ¶ 22(h); the government's alleged failure to exercise the proper skill and care "to invest and deposit trust funds in such a way as to maximize the productivity of trust property," id. at ¶¶ 22(e), 22(j); and the government's alleged failure preserve and protect the trust property, id. at ¶ 22(f).

As in plaintiff's District Court complaint, plaintiff's Court of Federal Claims complaint also seeks "redress [of] gross breaches of trust by the United States." Id. at ¶ 1. Plaintiff alleges that the "United States has consistently and egregiously failed to comply with . . . fiduciary duties incumbent on a trusteee." Id. at ¶ 22. Plaintiff contends that defendant breached its trust duties by failing to administer properly the trust for the benefit of plaintiff. Id. Plaintiff seeks money damages resulting from the defendant's alleged breach of its fiduciary duties owed to plaintiff with respect to the management of plaintiff's land and natural resources, id. at ¶ 29, damages arising from defendant's "breach of fiduciary duty in its management and investment of trust funds," id. at ¶ 34, and damages arising from defendant's breach of fiduciary duty with respect to the management of judgment funds, id. at ¶¶ 35-39.

In sum, plaintiff's Court of Federal Claims complaint and District Court complaint involve the same parties, the same trust corpus, and the same allegations that the government breached its trust responsibilities. Compare Def.s Mot. Ex. 1 with CFC Compl. Plaintiff's District Court complaint states that the assets "[i]nvolved in this action are funds and other assets, including approximately 21,840 acres of land, held in trust by United States for the benefit of the Community" which "have produced valuable natural resources and have been leased to third parties and/or to the government for rights-of-way, business uses, and other purposes." Def.'s Mot Ex. 1, ¶¶ 2-3. Similarly, plaintiff's Court of Federal Claims complaint involves "[i]ncome . . . derived from, inter alia, the sale of the natural resources and the conveyance of certain interests in the Ak-Chin Indian Community's tribal trust land, including leases, easements, and rights-of-way." CFC Compl. ¶ 16.

It is apparent to the court that both plaintiff's Court of Federal Claims complaint and District Court complaint are based on the same operative facts. In each complaint, plaintiff alleges a breach of trust by the United States related to its alleged failure to manage properly the Community's trust funds and assets. The court agrees with defendant's assertion that "the same operative facts underlie both the District Court and CFC Complaints," including facts such as "what funds were collected and deposited, and whether those collections and deposits of funds or proceeds were in an appropriate amount." Def.'s Mot. 16.

Plaintiff contends that the breaches of trust it alleges in District Court and in the Court of Federal Claims arise from different duties of trust and that its two claims are, therefore, based on different operative facts. Pl.'s Resp. 19-24. Plaintiff makes two arguments in support of its contention that its complaints are not based on the same operative facts. Id. at 19-22. First, plaintiff argues that the term "operative facts" does not include every fact in the complaint, but "instead require[s] some link between the facts and the elements of the claim to be proved." Id. at 19 (citing Loveladies, 27 F.3d at

1551 n.17 ("Despite its lineage, it can be argued that there is a basic epistemological difficulty with the notion of legally operative facts independent of a legal theory. Insofar as a fact is 'operative' – i.e., relevant to a judicially imposed remedy – it is necessarily associated with an underlying legal theory, that is, the cause of cause of action. . . . ")). Plaintiff cites several cases which it regards as supportive of its contention that claims "involving similar background facts, but different operative facts, [do] not implicate § 1500's bar." Id. at 20-21 (citing, inter alia, Cooke v. United States (Cooke), 77 Fed. Cl. 173, 177-78 (2007); d'Abrera v. United States (d'Abrera), 78 Fed. Cl. 51 (2007); Heritage Minerals, Inc. v. United States (Heritage Minerals), 71 Fed. Cl. 710, 715 (2006); Williams v. United States (Williams), 71 Fed. Cl. 194, 199-200 (2006); Fire-Trol Holdings, LLC v. United States, 65 Fed. Cl. 32, 34-35 (2005)). Second, plaintiff argues that its complaints "do not present the same operative facts" because the government's duty to account for plaintiff's trust is at issue in plaintiff's District Court complaint and the government's duty to deposit and invest plaintiff's trust funds is at issue in plaintiff's Court of Federal Claims complaint. Pl.'s Resp. 21-22. Plaintiff argues that "the facts underlying the breaches of those duties" are "what is legally controlling," id. at 21. Plaintiff argues that "the specific duties [plaintiff] seeks to vindicate in each court, and the facts supporting the breaches of those duties, are different." Id. at 23. Plaintiff attempts to illustrate its argument by asserting that if the result of the district court action was an accounting that revealed the government's failure to invest funds, it would have an action for money damages in this court, and "[t]he facts presented in support of these claims would be different from the facts presented to support the equitable accounting claim in the District Court." Id. at 22.

The court notes that prior cases from this court appear to support plaintiff's first argument that claims with similar background facts, but different operative facts, do not implicate § 1500 jurisdictional bar. However, the court does not find that these cases support plaintiff's further argument that the similar facts in both actions are merely background facts. For example, in Heritage Minerals, the operative facts at issue in the district court complaint related to contamination of groundwater that began in 1958, 71 Fed. Cl. at 715, and the operative facts at issue in the claim before this court arose from a subsequent installation of monitoring wells and an Administrative Order requiring Heritage to permit the government to enter its land, id. The court found that § 1500 did not bar jurisdiction because the claims were based on different operative facts. Id. at 717. The differences between the operative facts in the two complaints at issue in Heritage cannot be found here. The similarities between plaintiff's Court of Federal Claims complaint and District Court complaint extend beyond mere background facts. The factual basis for plaintiff's allegation of the government's breach of trust responsibilities in each case is the same because, in both actions, the courts will have to analyze the same facts regarding the government's management and administration of the same trust funds and assets over the same time periods.

Plaintiff's reliance on Cooke, 77 Fed. Cl. 173, is similarly misplaced. In that case, plaintiff filed a complaint in district court alleging two causes of action: unequal pay in violation of the Equal Pay Act (EPA) and retaliatory action by the government under the Fair Labor Standards Act (FLSA). Cooke, 77 Fed. Cl. at 175. Plaintiff then amended that complaint to withdraw the FLSA count and moved to transfer her EPA claim to the Court of Federal Claims. Id. at 175-76. After the District Court granted the transfer and the Court of Federal Claims accepted the case for filing, plaintiff filed a new claim in the District Court alleging retaliatory action by the government in violation of the FLSA. Id. at 176. Defendant moved to dismiss the case in the Court of Federal Claims, stating that § 1500 bars the court's jurisdiction to adjudicate the case. Id. at 174. The court denied defendant's motion, holding that plaintiff "asserted a separate and distinct claim from her District Court case when she transferred her EPA claim to this Court." Id. at 176. Here, plaintiff's Court of Federal Claims complaint does not present "a separate and distinct claim" from that contained in plaintiff's District Court complaint. The allegations against the government in each complaint are very similar - and sometimes even identical - to one another. Whereas the Cooke court found "a material difference between the operative facts relevant to each claim," id. at 178, there is no such difference between the operative facts relevant to plaintiff's two complaints in this case.

The same or a similar analysis may be made of the other cases that plaintiff cites in support of its argument that its District Court and Court of Federal Claims complaints do not arise out of the same operative facts. In d'Abrera v. United States, the court held that § 1500 did not bar the court's jurisdiction because the claims involved different conduct. d'Abrera, 78 Fed. Cl. at 60. That case concerned two claims by the plaintiff, a Lanham Act claim and a copyright infringement claim. Id. at 58. The court found that different conduct gave rise to each claim because the Lanham Act claim involved plaintiff's allegation that defendant had misrepresented plaintiff's photographs as his own, while the copyright infringement claim involved plaintiffs' allegation that defendant reproduced and distributed hundreds of plaintiff's photographs without permission. Id. Because different conduct formed the basis of the different claims, the court found that § 1500 did not bar the court's jurisdiction. Id. at 59. Here, plaintiff does not allege that different conduct by defendant gives rise to each of its complaints. Rather, the complaints concern the exact same conduct: the District Court complaint alleges that defendant "has consistently and egregiously failed to comply" with its fiduciary obligations, Def.'s Mot. Ex. 1, ¶ 20, and the Court of Federal Claims complaint alleges that defendant "has consistently and egregiously failed to comply" with its fiduciary duties, CFC Compl. ¶ 22. In Williams, the court held that § 1500 did not bar the court's jurisdiction because the operative facts alleged in the plaintiff's District Court and Court of Federal Claims complaints were "demonstrably different" and because plaintiff "specifically and successfully endeavored to plead different factual elements in each case." Williams, 71 Fed. Cl. at 200. That is not the case here; rather, in each action, the courts must consider

the government's management and administration of plaintiff's trust by reviewing the government's alleged failure to maintain records and account for plaintiff's trust property. Plaintiff has not pleaded different factual elements in each case because both courts will have to review the same factual elements when adjudicating plaintiff's claims.

Plaintiff's second argument that there are two different and separate trust duties at issue in its complaints is also unavailing. Notwithstanding plaintiff's attempt to distinguish the government's trust duties in each complaint, the operative facts, those facts upon which plaintiff's allegations of breaches of the government's trust responsibility are based, are the same in both the Court of Federal Claims complaint and the District Court complaint. In each action, the courts must consider the government's management and administration of plaintiff's trust. The court will be required to review the government's alleged failure to maintain records and account for plaintiff's trust property by considering any existing records related to the government's collection, handling, and investment of the Community's trust funds and property. The nature of Indian trust cases and the government's trust responsibility owed to Indian tribes does not lend itself to a simple delineation or separation of operative facts as they pertain to the government's various duties owed to Indian tribes. It is not apparent to the court how it could address facts related to the government's duty to invest and deposit plaintiff's trust funds without considering the facts related to the government's overall trust obligations owed to plaintiff, including its duty to account. It is simply not the case that there are two different and separate sets of trust duties described in plaintiff's District Court complaint and its Court of Federal Claims complaint. Therefore, the court finds that plaintiff's Court of Federal Claims complaint and District Court complaint contain the same operative facts for purposes of the § 1500 jurisdictional bar.

The court next turns to address the issue of whether plaintiff's complaints contain "some overlap" in relief, see Keene IV, 508 U.S. at 212, or if the relief sought in each complaint is "distinctly different," see Loveladies, 27 F.3d at 1549. Plaintiff's argument, in essence, is that its "District Court and Court of Federal Claims actions seek 'distinctly different types of relief in the two courts.'" Pl.'s Resp. 24 (citing Loveladies, 27 F.3d at 1554). Plaintiff contends that "[l]ike the plaintiff in Loveladies, Plaintiff-Beneficiary seeks strictly equitable relief in the District Court – a general accounting of all assets held in trust for the Tribe, and further equitable relief as appropriate – and strictly money damages in the CFC." Id. Plaintiff notes that it tailored its complaints according to the jurisdictional power of each court to grant the relief it seeks. Id. at 24-25. Plaintiff asserts that, for this reason, it does not seek to "obtain declaratory relief . . . or compel the government to comply with its duty to provide a general accounting of all of Plaintiff-Beneficiary's trust assets" in its Court of Federal Claims complaint. Id. at 25. Plaintiff contends that the equitable relief it seeks in its District Court complaint is not the same as money damages. Id. at 33 (relying on Bowen v. Massachusetts (Bowen), 487 U.S. 879,

893 (1988) (noting "the distinction between an action at law for damages – which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation – and an equitable action for specific relief – which may include an order providing for . . . 'the recovery of specific property or monies'" (emphasis omitted))).

Defendant argues that both of plaintiff's complaints "seek monetary relief against the Defendant arising from the same breach that Plaintiff hopes the courts will find." Def.'s Mot. 17. Defendant argues that plaintiff's District Court complaint "requests more than an order for a simple equitable accounting," because plaintiff's District Court complaint requests "disgorgement" and "equitable restitution." Id. (citing Def.'s Mot. Ex. 1, ¶¶ 19, 20, 43, 44). Defendant emphasizes its argument that plaintiff seeks monetary relief in both courts by noting that plaintiff's District Court complaint seeks an accounting that will be "followed by an award of monetary relief." Def.'s Reply 12.

A comparison of plaintiff's District Court complaint and Court of Federal Claims complaint indicates that plaintiff has attempted to distinguish the types of relief it seeks in each court. Plaintiff describes the general nature of its Court of Federal Claims complaint as "an action for money damages against the United States, brought to redress gross breaches of trust by the United States." CFC Compl. ¶ 1. Specifically, Count I of plaintiff's Court of Federal Claims complaint requests "a money damage award against the United States arising from its mismanagement of the Ak-Chin Indian Community's land, agricultural and other resources in an amount to be proven at trial plus interest as allowed by law." Id. at ¶ 29. Count II of plaintiff's Court of Federal Claims complaint requests damages arising from the United States' failure "to maximize trust income by prudent investment." Id. at ¶ 33. In Count III of plaintiff's Court of Federal Claims complaint, plaintiff asserts that it is entitled to damages caused by the United States' failure "to invest . . . the principal and earnings of judgment funds held in trust, in a timely manner." Id. at ¶ 38.

Plaintiff describes the general nature of its District Court complaint as "an action to seek redress of breaches of trust by the United States, . . . in the management and accounting of trust assets, including funds and lands, belonging to the plaintiff, . . . and to compel the defendants to provide a full and complete accounting of all trust assets belonging to the Community and to correct the balances of the Community's trust fund accounts to reflect accurate balances." Def.'s Mot., Ex. 1, ¶ 1. In count one of its District Court complaint, plaintiff seeks "a complete, accurate, and adequate accounting of all property held in trust by the United States for [plaintiff's] benefit." Id. at ¶ 34. Count two of plaintiff's District Court complaint seeks "a restatement of [plaintiff's] trust fund account balances in conformity with the ultimate and complete accounting, and to any additional equitable relief that may be appropriate (e.g., disgorgement, equitable

restitution, or an injunction directing the trustee to take action against third parties)." Id. at ¶ 43.

Despite plaintiff's attempts to distinguish the types of relief it seeks in both courts, it is apparent to the court that the results sought in each action include overlapping relief. Plaintiff's argument that it "does not seek to recover any money damages in the District Court," Pl.'s Resp. 32 (emphasis omitted), controverts the plain language of its District Court complaint. The so-called equitable relief sought in the District Court complaint includes "disgorgement, equitable restitution, or an injunction directing the trustee to take action against third parties." Def.'s Mot. Ex. 1, ¶ 43. As has been thoroughly reviewed in a recent opinion also addressing § 1500, Tohono O'odham v. United States, No. 06-944, 2007 U.S. Claims LEXIS 399 (Fed. Cl. Dec. 19, 2007), relief that may be available for a breach of trust (and that is explicitly requested in plaintiff's District Court Complaint in this case, see Def.'s Mot. Ex. 1, ¶ 43) includes significant monetary aspects. For example, Judge Bruggink noted in Tohono O'odham that, "in addition to seeking purely injunctive or declaratory relief, the beneficiary can recover any loss or depreciation in value of the trust estate resulting from the breach of trust, any profit made by the trustee, or any profit which would have accrued to the trust estate if there had been no breach of trust." Tohono O'odham, 2007 U.S. Claims LEXIS 399, at *25-26 (citing Restatement (Second) of Trusts § 205 (1959)). Given the types of relief available under trust law, the court also agrees with Judge Bruggink's observation that plaintiff's reliance on Bowen to support plaintiff's argument that the relief it seeks in each court is different is "irrelevant." Tohono O'odham, 2007 U.S. Claims LEXIS 399, at *31-32 ("Although the Court held that the term 'money damages' found in 5 U.S.C. § 702 was distinct from the more general meaning of 'monetary relief,' section 1500 makes no such distinction." (citing Bowen, 487 U.S. at 896-901)).[8]

---

[8]By Order of December 21, 2007, the court requested the parties to advise it of the distinctions, if any, between the complaints at issue in Tohono O'odham v. United States, No. 06-944L, and the complaints at issue in this case, and whether any aspects of the court's legal analysis in Tohono O'odham are inapplicable to this case. Order of Dec. 21, 2007. Now before the court are Plaintiff's Brief in Response to the Court's Request for Briefing Regarding the Opinion Issued in Tohono O'odham v. United States (Pl.'s Tohono Br.) and Defendant's Brief Pursuant to the Court's December 21, 2007 . . . Order (Def.'s Tohono Br.). Plaintiff argues that "the principal distinction between the complaints at issue in Tohono O'odham and the complaints at issue here is the Ak-Chin's claim in the District Court was not pending at the time it filed its complaint in the Court of Federal Claims." Pl.'s Tohono Br. 1. Plaintiff also contends that the Tohono O'odham court misconstrues § 1500 and erroneously concludes that there is an overlap between the relief requested in the Court of Federal Claims and the District Court. Id. at 3-6. Defendant argues that there are no material distinctions between the two sets of complaints

(continued...)

In both complaints plaintiff seeks to remedy its claims of breach of trust and both complaints seek monetary relief. Therefore, for purposes of § 1500, plaintiff's claims contain "overlapping relief," Keene IV, 508 U.S. at 212, that is not "distinctly different."[9] Loveladies, 27 F.3d at 1549. Because plaintiff's complaints are based on the same operative facts and seek overlapping relief that is not distinctly different, under either and/or both of the Keene test and the Loveladies test, § 1500 would preclude jurisdiction if plaintiff's Court of Federal Claims complaint had not been found to have been filed before plaintiff's District Court complaint.

IV. Conclusion

For the reasons stated above in Part III.A, defendant's motion is DENIED.

IT IS SO ORDERED.

---

[8](...continued)
in Tohono O'odham and in this case and asserts that the analysis conducted in that case applies to this case and warrants the same result. Def.'s Tohono O'odham Br. 4-12. The court is not persuaded by plaintiff's legal arguments but does agree that plaintiff's District Court complaint was not pending at the time that plaintiff filed its Court of Federal Claims complaint.

[9]Of course, there is far from a complete overlap between the relief available in the District Court and the Court of Federal Claims. If the court were analyzing this subject as a matter of first impression, and, in particular, without the guidance of the Supreme Court, see Keene IV, 508 U.S. at 212, the court would take into consideration the force of an argument for permitting a tribe to vindicate its entitlement to full performance of all aspects of the trust duties that are owed to it by the United States in the different forums afforded by the District Court and the Court of Federal Claims, see United States v. Mitchell, 463 U.S. 206, 226 (1983) ("This Court and several other federal court have consistently recognized that the existence of a trust relationship between the United States and an Indian or Indian tribe includes as a fundamental incident the right of an injured beneficiary to sue the trustee for damages resulting from a breach of trust."); United States v. Mason, 412 U.S. 391, 398 (1973) ("There is no doubt that the United States serves in a fiduciary capacity with respect to these Indians and that, as such, it is duty bound to exercise great care in administering its trust." (citing Seminole Nation v. United States, 316 U.S. 286, 296-97 (1942))); Shoshone Indian Tribe of the Wind River Reservation v. United States, 364 F.3d 1339, 1348 (Fed. Cir. 2004) ("Because of its treaty and statutory obligations to tribal nations, the United States must be held to the 'most exacting fiduciary standards' in its relationship with the Indian beneficiaries" (quoting Coast Indian Cmty. v. United States, 550 F.2d 639, 652 (Ct. Cl. 1977))). Militating against that consideration, however, is the fact that it is within a tribe's power by sequence of filing to avoid preclusion of Court of Federal Claims jurisdiction under § 1500.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge