# In the United States Court of Federal Claims

No. 06-932 L

(E-Filed: January 14, 2009)

| | |
|---|---|
| AK-CHIN INDIAN COMMUNITY, | ) Motion to Compel; RCFC 34(b); |
| | ) RCFC 33(d); American Indian |
| | ) Records Repository (AIRR); |
| Plaintiff, | ) "Making Documents Available |
| | ) at the AIRR" Does Not Comply |
| v. | ) With RCFC 34(b)(2)(E)(i) and |
| | ) RCFC 33(d) Because |
| THE UNITED STATES, | ) Documents Maintained at the |
| | ) AIRR Are Not Kept in the |
| Defendant. | ) Usual Course of Business |
| | ) Pursuant to RCFC 34 |

Keith Harper, with whom were G. William Austin and Catherine F. Munson, Washington, DC, for plaintiff.

Alexandra K. Smith, with whom was Ronald J. Tenpas, Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.  Alison D. Garner and Kevin E. Regan, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, of counsel.  Elisabeth C. Brandon, James S. Stroud, and James Ferguson, Office of the Solicitor, United States Department of the Interior, Washington, DC, of counsel.  Teresa E. Dawson, Thomas Kearns, and Rebecca Saltiel, Office of the Chief Counsel, Financial Management Service, United States Department of the Treasury, Washington, DC, of counsel.

OPINION

HEWITT, Judge

   Before the court are Plaintiff's Motion to Compel and Memorandum in Support (plaintiff's Motion or Pl.'s Mot.), Defendant's Response in Opposition to Plaintiff's Motion to Compel Records from the American Indian Records Repository (defendant's Response or Def.'s Resp.), and Plaintiff's Reply in Support of Motion to Compel (plaintiff's Reply or Pl.'s Reply).

I.      Background

    A.      Procedural History

Following the parties' extensive briefing on plaintiff's Motion, the court issued an order GRANTING plaintiff's Motion.  Order of Dec. 5, 2008, dkt. no. 81.  The court held a telephonic status conference (TSC) with the parties on December 4, 2008 during which the court discussed its reasons for granting plaintiff's Motion, and stated its intention to supplement its December 5, 2008 Order with this opinion in order more thoroughly to discuss the most salient reasons for granting plaintiff's Motion.  Transcript of TSC, Dec. 4, 2008 (Tr.), 5:18-19.  Further to the TSC, this opinion supplements the court's December 5, 2008 Order granting plaintiff's Motion.

    B.      Factual History

The American Indian Records Repository (AIRR) is "a [f]ederal [r]ecords [c]enter . . . . built . . . to preserve and protect Indian trust records and to accommodate research of those records." Def.'s Resp. 2.  The AIRR is located in Lenexa, Kansas.  Id.  The boxes of documents stored at the AIRR are "indexed using the Box Index Search System ('BISS')," an "off-the-shelf commercial software package," that captures "information about the source, files, and documents in [each] box [which information is subsequently] entered into the BISS database." Def.'s Resp. 4.  Researchers at the AIRR run queries in the BISS database to search for documents stored at the AIRR.  Id.

On May 30, 2008 plaintiff "served two sets of production requests for document production . . . and its first set of interrogatories on Defendant."  Pl.'s Mot. 3.  The government served its responses on August 29, 2008.  Id.  Defendant responded to plaintiff's discovery requests by "making documents available for inspection at the AIRR."  Def.'s Resp. 1.  Specifically, defendant responded to plaintiff's requests for production, stating, in part, "Defendant will make potentially responsive, non-privileged documents available to Plaintiff for inspection at the AIRR."  See, e.g., Pl.'s Mot. Exhibit (Ex.) C (Defendant's Responses to Plaintiff Ak-Chin Indian Community's First Request for Production of Documents) 6 (defendant's response to Request No. 1).  Defendant responded to each of plaintiff's interrogatories stating, in part, "[A]s to records maintained at the AIRR, potentially relevant boxes of records from which the answer may be derived or ascertained are as set forth in the BISS query results that will be produced to Plaintiff."  See, e.g., Pl.'s Mot. Ex. C (Defendant's Responses to Plaintiff's First Set of Interrogatories) 51 (defendant's response to Interrogatory No. 8).  Plaintiff filed a motion to compel, contending that defendant's responses are insufficient and that defendant should be required to "produce . . . responsive documents to [plaintiff] and to organize

and label such documents to correspond to the categories in [plaintiff's] requests, as required by [Rule 34 of the Rules of the United States Court of Federal Claims (RCFC)]." Pl.'s Mot. 23.

II.   Discussion

Defendant responded to plaintiff's document production requests and interrogatories by "making documents available for inspection at the AIRR." Def.'s Resp. 1. For the following reasons, defendant's reliance on RCFC 34(b)(2)(E)(i)[1] and RCFC 33(d) in order to justify its response to plaintiff's discovery requests is improper. See id.

    A.    Documents at the AIRR Are Not Maintained in the Ordinary Course of Business Pursuant to RCFC 34

RCFC 34 requires that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." RCFC 34(b)(2)(E)(i). Under RCFC 34, the producing party has the option of electing one of the two options for production authorized by the Rule. See, e.g., In re Adelphia Comm. Corp. (In re Adelphia), 338 B.R. 546, 550-52 (Bankr. S.D.N.Y. 2005) (discussing the application of Federal Rule of Civil Procedure (FRCP) 34(b)).[2] Because documents stored at the AIRR are not maintained "in the usual course of business," RCFC 34(b)(2)(E)(i), defendant's reliance on the first clause of RCFC 34(b)(2)(E)(i) is improper. Defendant cannot comply with the requirements of RCFC 34(b)(2)(E)(i) by making documents at the AIRR available to plaintiff for inspection.

Before being shipped to the AIRR, plaintiff's records were maintained at the Pima Agency Office in Sacaton, Arizona, the Western Regional Office in Phoenix, Arizona, and the Land Title and Records Office in Albuquerque, New Mexico. Pl.'s Mot. 6. In

---

[1] The parties' briefing referred to Rule 34(b) of the Rules of the United States Court of Federal Claims (RCFC). The court notes that the language that previously appeared in RCFC 34(b) now appears in the text of RCFC 34(b)(2)(E)(i).

[2] In re Adelphia Comm. Corp., 338 B.R. 546, 550-52 (Bankr. S.D.N.Y. 2005), analyzes the application of Federal Rule of Civil Procedure (FRCP) 34(b). The pertinent language of RCFC 34(b)(2)(E)(i) is identical to the corresponding provision of FRCP 34(b), as amended in 1980. The Federal Circuit has stated that an examination of the "the general federal law interpreting the corresponding Federal Rule of Civil Procedure [is] persuasive" in the interpretation of the RCFC. Wheeler v. United States, 11 F.3d 156, 157 n.1 (Fed. Cir. 1993).

2007, the Office of Trust Records (OTR) moved plaintiff's records from the Pima Agency Office in Sacaton, Arizona, to the AIRR in Lenexa, Kansas.  Pl.'s Mot. Ex. F (Oct. 16, 2008 Abeita Declaration) ¶ 18.

In preparation for their transport to the AIRR, plaintiff's documents were substantially rearranged and co-mingled with the documents of at least one other Tribe.  See Pl.'s Mot. 6-8.  According to the Director of the OTR, defendant's procedures for transporting files include placing the transported files chronologically by year, separating trust records from non-trust records, and arranging the files by case number or alphabetically by name.  Pl.'s Mot. Ex. F (Oct. 16, 2008 Abeita Declaration) Attachment C (Indian Affairs Records Management Manual) 7-8.  In addition, file folders are organized by record series, a designation which "organize[s] records by program and subject matter."  Pl.'s Mot. Ex. K (May 8, 2008 Abeita Declaration) ¶ 6.  Representatives of the OTR re-order the files in local agency offices by record series "so records within the same record series are kept together when shipped to the AIRR."  Def's Resp. 10.  The Director of OTR further explains that, "[w]hen preparing records for shipment to and storage at the AIRR, if file folders from different record series have been co[-]mingled, [OTR's contractor] will sort the file folders in accordance with the record series [established by the Indian Affairs Records Schedule (IARS)]."  Pl.'s Mot. Ex. K (May 8, 2008 Abeita Declaration) ¶ 6.  Therefore, "[i]n the course of this sorting process, files from differing file cabinets [at the agency office] that fell within the same record series [established by IARS] could be combined, while files falling in different record series which may have been boxed together for storage would be sorted by record series, and could end up in different boxes."  Id.  As a result, "[I]t can be difficult to trace where a file folder was originally stored."  Id.

Significantly, defendant's procedures for preparing documents for storage at the AIRR do not require that files from each agency office be separated and stored by Tribe.  Pl.'s Reply 6; see also Def.'s Resp. Attachment 1 (Nov. 14, 2008 Abeita Declaration) Ex. D (Indian Affairs Records Management Manual) passim.  Therefore, "[plaintiff's] records maintained at the Pima Agency – along with those of the Gila River Indian Community as well – may well have ended up being shipped to [the AIRR] in the same boxes."  Pl.'s Reply 6.  As a result of the significant reorganization of the files undertaken in preparation for transporting the files from the agency office to the AIRR, the documents are "irrevocably shuffled around and placed in a different order than they had been kept while being actively used by agency personnel."  Pl.'s Mot. 7.

Once the documents are disassembled from their filing system at the agency office and reorganized to comport with the filing system at the AIRR, they are no longer kept "in the usual course of business," RCFC 34(b)(2)(E)(i).  "[S]tored documents are not kept

4

in the usual course of business within the meaning of [Rule 34(b)]." In re Sulfuric Acid Antitrust Litig. (In Re Sulfuric Acid), 231 F.R.D. 351, 363 (N.D. Ill. 2005).  Documents in storage "are no longer kept in the 'usual course' of business, they are kept in the usual course of 'storage,' and the option granted by the first clause of Rule 34(b) no longer exists.  That leaves the producing party with the obligation to 'organize and label' the documents to correspond to the document requests." Id. (citation omitted).

Nevertheless, there are some circumstances in which production of documents as they are kept in storage is proper under RCFC 34(b).  In order to be proper, "the discovered party must . . . show that the way in which the documents are kept [in storage] has not changed from how they were kept in the usual course of business." Id.  These circumstances do not exist in this case.  As discussed above, the testimony of people familiar with the organization of documents as they were originally kept and how the documents are organized in storage, demonstrates that the documents undergo significant reorganization in preparation for their storage at the AIRR.  See id. (discussing that testimony of persons familiar with the manner in which documents are filed and stored is sufficient to evaluate whether the producing party has met the evidentiary burden of proving that production of documents as they are kept in storage is proper under Rule 34(b)).  Therefore, here, as in In re Sulfuric Acid, defendants have not made the requisite showing of consistency between the manner in which documents are maintained at the agency office and the filing system at the AIRR, a showing which is necessary in order properly to invoke the option of granting the discovering party access to documents under the first clause of RCFC 34(b)(2)(E)(i).  See id.

In its response, defendant relies on In re Adelphia which states that "in order to satisfy the requirements of Rule 34(b), any archived documents produced must be thoroughly indexed, the boxes accurately labeled and the depository kept in good order." In re Adelphia, 338 B.R. at 551; Def.'s Resp. 9.  Defendant argues that it meets the requirements outlined in In re Adelphia because the files are "indexed, clearly labeled, and well-organized" in accordance with the filing system in place at the AIRR, and are therefore kept in the "usual course of business" pursuant to RCFC 34.  Def.'s Resp. 11.

The court disagrees.

Even under the standard enunciated in In re Adelphia and advocated by defendant, the filing system at the AIRR, and the tools created to search for documents stored at the AIRR, do not facilitate a meaningful review by plaintiff of the documents produced.  A pivotal consideration in deciding discovery challenges under Rule 34(b), like plaintiff's in this case, where a large number of documents have been produced based on an "as they are kept in the usual course of business" election is whether the filing system for the

produced documents "is so disorganized that it is unreasonable for the [party to whom the documents have been produced] to make [its] own review." Natural Res. Def. Council, Inc. v. Fox, 1996 WL 497024, *5 n. 3 (S.D.N.Y. 1996); see Wagner v. Dryvit Sys., Inc., 208 F.R.D. 606, 610-11 (D. Neb. 2001) ("[P]roducing large amount of documents in no apparent order does not comply with a party's obligation under Rule 34."); Rowlin v. Ala. Dep't of Pub. Safety, 200 F.R.D. 459, 462 (M.D. Ala. 2001) (finding that producing party may elect how to produce its records "provided that the records have not been maintained in bad faith"); Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976) (stating that a party "may not excuse itself from compliance with Rule 34 . . . by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition"). Here, unlike the situation described in Renda Marine, Inc. v. United States (Renda Marine), the propounding party has in fact alleged that the producing party's filing system is "'so disorganized'" that the propounding party is unable meaningfully to review documents. Cf. Renda Marine, 58 Fed. Cl. 57, 64 (2003) (stating that "defendant has made no allegation that plaintiff's filing system is 'so disorganized' that defendant is unable to review the documents").

      The facts in this case are easily distinguished from the facts in In re Adelphia itself where the boxes of documents were "thoroughly indexed" and "organized by department and labeled as to content." In re Adelphia, 338 B.R. at 551. The documents at the AIRR are not indexed on a "document-by-document level." Def.'s Resp. Attachment 3 (Nov. 7, 2008 Dunne Declaration) ¶ 8. The BISS index does not provide for documents to be labeled by Tribe at the file level. Def.'s Resp. Attachment 2 (Nov. 14, 2008 Mills Declaration) Ex. A (OTR Box Indexing Manual) 10-12. As a result, search queries on the BISS database will be able to determine only "boxes most likely to contain responsive documents[,] . . . boxes least likely to contain responsive documents[,] . . . and . . . boxes requiring further analysis in order to make a determination about whether or not to search." Def.'s Resp. Attachment 3 (Nov. 7, 2008 Dunne Declaration) ¶ 8. Plaintiff's own searches using the BISS database have proven unwieldy and unhelpful. For example, each of plaintiff's searches on the BISS system, using plaintiff's Tribal Code and Tribal Name, have resulted in a different number of boxes identified as containing potentially responsive documents. See Pl.'s Reply 12 ("The search by [plaintiff's] Tribal Code rendered 237 boxes of documents . . . [and] by the term 'Ak-Chin' [rendered] 83 boxes . . . ."). Moreover, according to defendant, once boxes are identified, "the entire content of the box needs to be searched for potentially responsive documents." Def.'s Resp. Attachment 3 (Nov. 7, 2008 Dunne Declaration) ¶ 8. "Searching the content of a box can be a labor[-]intensive process . . . ." Id. Therefore, although defendant has indexed the documents according to the BISS, queries made on the BISS database effectively result in the precise type of "document dump" cautioned against by the In re

Adelphia court.  See In re Adelphia, 338 B.R. at 551 ("The Court does not endorse a method of document production that merely gives the requesting party access to a 'document dump,' with an instruction to the party to 'go fish.'") (citations omitted); see also In re Sulfuric Acid, 231 F.R.D. at 364 (discussing that mixing of responsive and non-responsive documents, "[w]hether intended or not, . . . result[s] [in] the proverbial 'needle in a haystack' . . . that Rule 34 . . . was intended to prevent.") (citation omitted).  The court agrees with plaintiff that defendant's indexing system is unreliable and therefore precludes plaintiff from identifying and reviewing responsive documents.  See Pl.'s Reply 1.

In addition, a significant factor in the court's analysis in In re Adelphia was that the producing party in that case organized its documents for storage in accordance with "official directives and document retention protocols."  In re Adelphia, 338 B.R. at 551.  Defendant's reliance on In re Adelphia is inapposite because in this case defendant did not comply with its own procedures for retention of Indian records stored at the AIRR.  On September 12, 2003 the United States Department of the Interior (Interior) and the National Archives and Records Administration (NARA) entered into a Memorandum of Understanding (MOU) "to consolidate all inactive Indian Records in the possession of the [Bureau of Indian Affairs] and the [Office of the Special Trustee for American Indians] and related Interior fiduciary trust records" at the AIRR in Lenexa, Kansas.  Pl.'s Mot. Ex. F (Oct. 16, 2008 Abeita Declaration) ¶ 3.

Pursuant to the MOU, NARA has the responsibility to:

> Preserve the integrity of the Tribal Records by maintaining separate collections for each Tribe within the AIRR records collection.  This includes storing the Tribal Records by Tribe with an identifier Tribe that distinguishes the Tribal Records from one another . . . .  This also includes storing the Tribal Records by Tribe in a separate physical location that, at a minimum, is cordoned off from any other record holdings and clearly marked as the records of that Tribe.

Def.'s Resp. Attachment 1 (Nov. 14, 2008 Abeita Declaration), Ex. A (MOU between Interior and NARA) Art. III, § A.3.  The court agrees with plaintiff that the procedures that have been implemented to store the records at the AIRR, and the corresponding BISS index, fail to comply with the MOU.  See Pl.'s Reply 10.  For example, the Tribal Code, a three-digit numeric code assigned by Interior to each tribe, is not a required field in the BISS.  Pl.'s Mot. Ex. G (BISS Box Selection Refinement Procedures) 2.  Similarly, the numeric code assigned to each agency office is also not a required field in the BISS.  Id.

7

"Therefore, . . . it frequently is not possible to tell which tribe or agency relates to the files." Pl.'s Mot. 9. Had the parties to the MOU, Interior and NARA, complied with the MOU, "the BISS would have captured [the information identifying records by Tribe] for [plaintiff] . . . [to] be able to locate boxes containing its trust records at the AIRR." Pl.'s Reply 10. The court agrees with plaintiff that this system "stands in stark contrast to how documents are generally held in the ordinary course of business, when the tribe and agency are easily discernable." See Pl.'s Mot. 9. Perhaps most importantly, defendant's deviation from the procedures delineated in the MOU is easily distinguishable from the conduct of the producing party in the case upon which defendant heavily relies, where the producing party in that case complied with official directives. See In re Adelphia, 338 B.R. at 551-52 (holding that defendant's stored documents were held in the usual course of business for purposes of Rule 34(b) where the records were kept "pursuant to official directives").

Once plaintiff's documents have been prepared for transfer to the AIRR, they are no longer kept in the usual course of business required by RCFC 34(b)(2)(E)(i). See In re Sulfuric Acid, 231 F.R.D. at 363. Moreover, the filing system at the AIRR, and the tools created to search for documents stored at the AIRR, do not facilitate a meaningful review by plaintiff of the documents produced. Therefore, defendant cannot meet its discovery obligations by electing to make the documents at the AIRR available to plaintiff. In order to comply with the discovery rules, defendant must produce the documents, "organize[d] and label[ed] . . . to correspond to the categories in [plaintiff's] requests." RCFC 34(b)(2)(E)(i).

      B.     Defendant Does Not Properly Invoke RCFC 33(d)

In lieu of providing a direct answer to an interrogatory, RCFC 33(d) gives the responding party the option to produce business records "if the burden of deriving or ascertaining the answer [from the business records produced] will be substantially the same for either party." RCFC 33(d). RCFC 33(d) further states that the responding party must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." RCFC 33(d)(1). Defendant does not meet the requirements properly to rely upon RCFC 33(d).

Defendant has not shown that "the burden of deriving or ascertaining the answer [from the business records produced] will be substantially the same for either party." RCFC 33(d). First, and perhaps most importantly in this case, it is inherently impossible for plaintiff to undergo discovery at the AIRR without defendant having first reviewed the potentially responsive documents for privilege or confidentiality. The court in In re

<u>Sulfuric Acid</u> found that the burden on the producing party to review the documents produced was "not as great [as the burden on the requesting party], since the [producing party was] more familiar with the documents than the [requesting party]." In re Sulfuric Acid, 231 F.R.D. at 366. Here, plaintiff has no familiarity with what documents defendant may or may not consider privileged or confidential. It would therefore be not only more burdensome, but impossible, for plaintiff to identify answers to interrogatories amongst documents that may be responsive but have not been first reviewed by defendant for privilege or confidentiality.

In addition, defendant is not only more familiar with the documents that it stores at the AIRR, defendant is also much more familiar with the tools used to identify potentially responsive documents. Defendant itself created the BISS database. Def.'s Resp. Attachment 3 (Nov. 7, 2008 Dunne Declaration) ¶ 5. Defendant employs research staff at the AIRR who have a working knowledge of the software associated with the BISS. Def.'s Resp. Attachment 4 (Nov. 14, 2008 Ramirez Declaration) ¶¶ 1, 4. Defendant also contracts with a public accounting firm which routinely performs searches for documents stored at the AIRR. Def.'s Resp. Attachment 3 (Nov. 7, 2008 Dunne Declaration) ¶¶ 2-3.

Even if defendant had made the threshold showing that the burden of deriving answers to plaintiff's interrogatories would be substantially the same for either party, defendant does not meet the specificity requirement of RCFC 33(d)(1). "Federal courts have strictly construed [RCFC 33(d)(1)] to require a responding party to specifically direct the requesting party to the documents which contain the answer to the interrogatory." <u>AAB Joint Venture v. United States</u> (<u>AAB Joint Venture</u>), 75 Fed. Cl. 448, 452 (2007). RCFC 33(d)(1) mirrors FRCP 33(d). The Advisory Committee Notes to FRCP 33(d) explain that responding to an interrogatory "by directing the interrogating party to a mass of business records or by offering to make all of [the producing party's] records available" is "an abuse of the option" authorized under FRCP 33. FRCP 33, Notes of Advisory Committee, 1980 Amendment. In this case, defendant has responded to plaintiff's interrogatories by stating, in part, "[A]s to records maintained at the AIRR, potentially relevant <u>boxes</u> of records from which the answer <u>may</u> be derived or ascertained are as set forth in the BISS query results that will be produced to plaintiff." <u>See, e.g.</u>, Pl.'s Mot. Ex. C (Defendant's Responses to Plaintiff's First Set of Interrogatories) 51 (defendant's response to Interrogatory No. 8) (emphasis added). It is well established under case law that a broad reference to a set of documents does not meet the specificity requirement of RCFC 33(d). <u>AAB Joint Venture</u>, 75 Fed. Cl. at 452 ( "A simple offer to produce unspecified documents or a general reference to a pile of documents will not suffice. Here, Defendant refers broadly to all documents produced in response to requests for production of documents by Plaintiff. Clearly, Defendant has not met its duty of specificity in order to rely on RCFC 33(d) in answering Plaintiff's

interrogatories.") (citation omitted); see also In re Sulfuric Acid, 231 F.R.D. at 366 ("[D]efendants have produced perhaps a million pages of documents and merely referred plaintiffs, generally, to them for the answers to their interrogatory. This is an 'abuse of the option.'") (citation omitted).

Therefore, in this case, where defendant has not identified documents but has simply provided an even broader reference to a list of boxes that may or may not contain responsive documents, defendant has clearly misused the option provided for in RCFC 33(d) to respond to plaintiff's interrogatories. Accordingly, in order to comply with the Rule, defendant must specify the documents from which answers to plaintiff's interrogatories may be ascertained or derived. See RCFC 33(d)(1).

III.   Conclusion

Further to the court's December 5, 2008 Order GRANTING plaintiff's Motion, and for the additional reasons specified in this Opinion, defendant shall COMPLY with the court's December 5, 2008 Order.

IT IS SO ORDERED.

s/ Emily C. Hewitt  
EMILY C. HEWITT  
Judge